UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BERNADETTE SKORUPSKA

Write the full name of each plaintiff.

20-cv-2831
(Include case number if one has been assigned)

-against-

**COMPLAINT**

525 West 52 Property Owner LLC
City of New York, Department of Housing
Preservation & Development, Phipps Housing
Development Corporation, Taconic Management LLC

Do you want a jury trial?
☑ Yes   ☐ No

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 1/9/17

## I. BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☑ **Federal Question**

☐ **Diversity of Citizenship**

### A. If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

Rehabilitation Act of 1973, Section 504, the Fair Housing Act, New York State Human Rights Law, New York City Human Rights Law, Civil Rights Act of 1964, Americans with Disability Act

### B. If you checked Diversity of Citizenship

#### 1. Citizenship of the parties

Of what State is each party a citizen?

The plaintiff, _____ , is a citizen of the State of
             (Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____.

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

Page 2

If the defendant is an individual:

The defendant, _____, is a citizen of the State of
                     (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____ .

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

BERNADETTE      M      SKORUPSKA
First Name      Middle Initial      Last Name

525 West 52nd Street     Apt 4BN
Street Address

New York      N.Y      10019
County, City      State      Zip Code

929-294-5304      bmskorupska@gmail.com
Telephone Number      Email Address (if available)

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1: 525 West 52 Property Owner LLC
First Name / Last Name

Current Job Title (or other identifying information)
525 West 52nd Street - Ground Floor Office
Current Work Address (or other address where defendant may be served)
New York       N.Y       10019
County, City       State       Zip Code

Defendant 2: Phipps Housing Development Corporation
First Name / Last Name

C/O Hancock Apt - Community Room
Current Job Title (or other identifying information)
350 West 124 Street
Current Work Address (or other address where defendant may be served)
New York       N.Y.       10027
County, City       State       Zip Code

Defendant 3: Taconic Managemen Company LLC
First Name / Last Name

Current Job Title (or other identifying information)
525 West 52 Street - Ground floor
Current Work Address (or other address where defendant may be served)
New York       N.Y       10019
County, City       State       Zip Code

Page 4

Defendant 4: <u>City of New York, Department of Housing Preservation & Development</u>
           First Name                    Last Name

Current Job Title (or other identifying information)

<u>100 Gold Street</u>
Current Work Address (or other address where defendant may be served)

<u>New York</u>              <u>N.Y</u>              <u>10038</u>
County, City                State              Zip Code

### III. STATEMENT OF CLAIM

Place(s) of occurrence: <u>Please see attached</u>

Date(s) of occurrence: <u>Please see attached</u>

### FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

<u>Please see attached</u>

## INJURIES:

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

To be determined

## IV. RELIEF

State briefly what money damages or other relief you want the court to order.

To be determined

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

Dated: 3/27/2020

Plaintiff's Signature: [signed]

First Name: BERNADETTE
Middle Initial: M
Last Name: SKORUPSKA

Street Address: 525 West 52nd Street Apt 4BX

County, City: N.Y
State: N.Y
Zip Code: 10019

Telephone Number: 929-294 5304
Email Address (if available): BMSKORUPSKA@GMAIL.COM

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☐ Yes  ☑ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.



**United States District Court**
**Southern District of New York**

# Pro Se (Nonprisoner) Consent to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1. Sign up for a PACER login and password by contacting PACER[1] at www.pacer.uscourts.gov or 1-800-676-6856;
2. Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.[2] Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1. You will no longer receive documents in the mail;
2. If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;
3. This service does *not* allow you to electronically file your documents;
4. It will be your duty to regularly review the docket sheet of the case.[3]

---

[1] Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] You must review the Court's actual order, decree, or judgment and not rely on the description in the email notice alone. *See* ECF Rule 4.3

[3] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.

500 PEARL STREET | NEW YORK, NY 10007
300 QUARROPAS STREET | WHITE PLAINS, NY 10601

PRO SE INTAKE UNIT: 212-805-0175

rev. 2/9/15

# CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2. I have established a PACER account;

3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5. I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6. I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

## Civil case(s) filed in the Southern District of New York:

**Note:** This consent will apply to all cases that you have filed in this court, so please list all of your pending and terminated cases. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234).

_____

_____

_____

Name (Last, First, MI)

_____

| Address | City | State | Zip Code |

_____

| Telephone Number | | E-mail Address | |

_____

| Date | | Signature | |

**Return completed form to:**
Pro Se Intake Unit (Room 200)
500 Pearl Street
New York, NY 10007

Statement of Facts in Support of Complaint

**Background regarding Disability**

1. I am a ___ year-old single mother of a 7-year-old boy named Natan. Natan has been diagnosed with a very rare genetic mutation called SCN2A. This genetic condition has left Natan with a range of severe disabilities, including epilepsy, muscle disorders, gastric abnormalities and severe developmental delays. Natan is non-ambulatory, non-verbal and suffers from peripheral vision loss. Natan's condition is not treatable, and medically labeled as a permanent disability.
2. Natan requires 24-hour care, including the administration of oxygen during episodes of seizures, frequent feedings, daily home-based therapies and regular intravenous infusion drug treatment lasting several hours. The demands of caring for Natan compel me to seek assistance from a home-health care professional. That assistance would ideally be from a live-in health care professional who could assist with the 24/7 care that Natan requires. We are entitled to such care, but are unable to accommodate a live-in health care aid at this time.
3. One of the overwhelming challenges we have faced is finding suitable and affordable housing to accommodate Natan, me and a live-in health care worker. Finding such housing in the New York City area is extremely difficult and rare. I have spent many frustrating hours exploring the resources that are available to find appropriate housing for Natan and me given that our annual income is well-below 50% of the Average Median Income for the New York City area.

**Background regarding Participation in New York City Affordable Housing Program**

4. I became aware of and applied for affordable housing through the New York City Affordable Housing Lottery. Through this program, developers of new housing projects receive favorable funding and other benefits through the New York City Department of Housing and Preservation & Development (HPD) and the New York City Housing Development Corporation (HDC), and in return the project must offer a certain percentage of the units to tenants who fall below certain NYC Area Median Income thresholds at stipulated, below-market rents.
5. Among the many requirements that developers must satisfy are HPD/HDC's marketing guidelines (Marketing Handbook) and lottery process. These guidelines and lottery process are meant to provide a completely transparent and extremely detailed process by which the public, and particularly, qualified tenant prospects, can rely, and in fact, do rely, on the fair and competent administration of the program so that it effectively serves its intended beneficiaries, including low-income disabled persons.
6. In 2017, I was selected through a lottery for affordable units being offered at a newly developed project under the HPD program located at 525 West 52nd Street through Phipps Housing Corporation developed and owned by 525 West 52 Property Owner LLC

1

(West 52 LLC) and managed by an affiliate, Taconic Management Company LLC (Taconic). West 52 LLC hired Phipps Housing Development Corporation (Phipps Corp) to provide marketing and rent-up services for the project's 79 affordable housing units. (West 52 LLC, Taconic and Phipps Corp are collectively referred to as "Management"). Upon information and belief, at all times relevant herein, West 52 LLc and Taconic directed or validated the decisions of Phipps Corp. in administering the affordable housing program as it applied to the project.

7. Of the 79 affordable units, 5% were to be set-aside with persons with mobility disabilities and 2% were to be set aside for persons with vision/hearing disabilities. At the time when my log number was being processed, I explicitly stated during my interview at Phipps Housing Corporation that I would need a 2-bedroom apartment given my son's special needs. Furthermore during the interview that took place on 8/21/17 I was told I am filing paperwork for a two-bedroom unit. The online application does not offer this option of choosing a specific unit size, and allocation for appropriate unit is discussed during an interview.

8. According to the program's Marketing Handbook, after all applications have been received, HPD randomly assigns each application a log number which essentially creates an order of priority by log number for the rest of the process. The applications are randomly selected and reviewed for program eligibility and the ineligible applications are eliminated from the remaining process. The affordable units are then assigned in the following order of priority and in order of log number within each category:
   a. People with disabilities (disability set-aside units)
      Mobility first
      Vision and hearing second
   b. Community Board residents
   c. NYC municipal employees.

Marketing Manual 4-4: Applicant Evaluation and Resident Selection

> Only after all set-asides and preferences have been fulfilled may non-set-aside or non-preference applications be submitted to the Agency for review. This is to prevent non-set-aside or non-preference applicants from being processed for units that are intended for applicants eligible for set-asides or preferences. With Agency approval, the screening of non-set-aside or non-preference applicants may begin prior to achieving all set-asides or preferences.
>
> If the Marketing Agent is unable to fulfill any set-aside or preference categories, it must contact the Agency for further instructions.
>
> The Marketing Agent must offer units only to applicants who meet eligibility requirements, and only in numbered order from the lottery log (after first processing applicants for set-asides and preferences), for whom units of appropriate size are available.

9. The Marketing Handbook Section 4.4.B.9 also provides that "if an applicant meets eligibility requirements for more than one available unit type in a project, the Marketing Agent must make the applicant aware of all available unit types for which the applicant is eligible, and offer to the applicant the opportunity to select the unit type."
10. On August 21, 2017, I was invited for a qualifying interview with Phipps. Among the documents I delivered that day, were a Voucher Approval Notice and a copy of Natan's Disability Certification. I inquired as to the availability of a 2-Bedroom unit and explained why we needed a 2-Bedroom unit. I was told that 2-bedroom units were available. I expressed a strong interest in a 2-Bedroom unit. I also significantly remember that on September 2, 2017 I emailed Nicky Natan's hospital discharge papers, as he suffered terrible seizures and had to be admitted, to further emphasize the extend of his disability.
11. Based on my income, I was eligible and received Section 8 rental assistance. At Phipps' request, I began the process of having my Section 8 rental subsidy approved for any unit I would rent at Phipps House. Phipps was informed that the rental subsidy would be in the amount of $1268, which exceeded the monthly rent for a 2-Bedroom affordable unit.
12. On September 18, 2017, I received a call from Phipps advising me that there were no longer any 2-Bedroom units available for our family and that the only unit available was a 1-Bedroom. I was not given any other explanation as to why there were no more 2-bedroom units available or how the units accommodating families with disabilities allocated. I was not informed that the unit assigned to me was a set-aside for a hearing disabled person. I did not ask for this type of accommodation. I was given a take-it-or-leave-it choice as to the 1-Bedroom. I was at a point where I could not afford to lose a roof over my head and I was in the process of transferring my section 8 voucher to the new address. As I communicated to Phipps Housing that it will be inadequate to serve Natan's needs and continued to ask for a two bedroom, I was told there were no options left. The Marketing Manual states "the Agency will not waive any preferences and/or set-asides until the updated log is received and reviewed". Phipps housing violated this rule, first by waiving the unit that was assign to our family over to a family whose log number was higher and moreover who had only one disability. It resulted in not giving our family an equal opportunity to choose the type of unit, which would truly accommodate Natan's needs and instead assigning a unit, based on their judgment.

13. On November 4, 2017, Natan and I moved into the 1-Bedroom unit at 525 West 52 Street. Natan has a medical bed, gait trainer, adaptive stroller, which is considered a wheelchair, feeding chair, regular stroller, mats for daily home therapies that take up the entire living room, not to mention other exercise equipment. We also have an oxygen tank. There are at least four people in our apartment on daily bases and we are entitled to a get live in care, but we cannot. My son does not sleep through the night and cries; I do not get to sleep through the night either. I am not going to include details of how my life is influenced by this living arrangement because I think it is self-explanatory, but I will talk about how it influences his life and progress. He outgrew is

3

gait trainer and we cannot order a new one simply because it won't fit in our apartment. He needs a new feeding chair but there is no space for it, so his posture progressively worsens. Since he cannot attend regular school because his immune system is compromised, he receives his special education instructions at home and we are having a really hard time accommodating teachers and therapist in the living room because there are two beds in our bedroom. We have to share the bedroom, which is clearly not recommended by HUD. According to The HUD Handbook 4350.3: Occupancy Requirements of Subsidized Multifamily Housing Programs:

*The Handbook refers owners to the Federal Register adoption of the Keating Memo for guidance on HUD occupancy policy. The Handbook then provides that, for public housing owners, a two person per bedroom standard is generally acceptable, but they must also take into account the following factors "(1) the number of persons in the family; (2) the age, sex and relationship of family members; (3) the family's need for a larger unit as a reasonable accommodation; and (4) balancing the need to avoid overcrowding with the need to avoid underutilization of the space and unnecessary subsidy." The Handbook prohibits owners from making social judgments regarding occupancy, such as determining whether unmarried couples may share a bedroom or whether young children can sleep in a parent's bedroom. With its specific direction to consult the HUD occupancy guidelines in the Federal Register that incorporated the Keating Memo, coupled with its list of consideration factors for developing occupancy policies for public housing owners, the HUD Public Housing Handbook. The similarity is that while a two person per bedroom standard is acceptable, a totality of the circumstances factor analysis is necessary to examine occupancy policies on a factual case-by-case basis.*

14. Following the final award of affordable, disabled units at Phipps House, I requested more information about the process that had been applied to the award of disabled units. Based on conversation with various employees of Phipps Housing, Management and at HPD, on information and belief, I surmised that someone with a higher log number than mine had been awarded a 2-Bedroom unit before me in violation of the procedures set forth in the Marketing Handbook.

15. On May 2, 2019, I filed a verified complaint with the New York State Division of Human Rights(DHR) charging HPD, West 52 LLC, Taconic and Phipps with violating my rights and Natan's rights to affordable housing under the New York City's affordable housing program by failing to comply with the procedures required under federal law and local law for the award of such housing, including by unlawfully disqualifying my son and I from being awarded a 2-Bedroom unit (Case number # 10201220). On November 1, 2019, the DHR issued its Determination and Order after Investigation finding "the investigation did not reveal sufficient evidence to establish an inference of discrimination based on disability." There were numerous inaccuracies and misstatements of facts in the DHR's Determination, including that our rental voucher was insufficient to pay the rent for the 2-Bedroom unit, that our income was a valid

4

factor in our disqualification and that I never requested a 2-Bedroom unit at the time of the initial application.

16. I was also told for the first time that I was passed over for a 2/Bedroom unit because I did not qualify under the minimum income requirements for a 2-Bedroom. Phipps' denial of my application for a 2-Bedroom unit was a clear violation of the rules in the Marketing Handbook on which I had relied. HPD's lack of oversight in the procedure and allocation of my family further reinforced the discriminatory practice.
Specifically, in the Marketing Handbook in Exhibit A, page 68, it provides: "The Developer may not establish minimum income levels for applicants with tenant based Section 8 and other qualifying rental subsidies. Such applicants must be accepted provided they meet all other eligibility criteria outlined in the Marketing plan. If questions arise, the Agency will advise the Developer on the use of minimum income limits for forms of rental subsidy other than Section 8."

**Discriminatory Practice/ Impact.**

17. The guidelines in the HPD Marketing Handbook prohibit any discrimination against persons who rely on Section 8 vouchers or other rental assistance. By disqualifying me from consideration for a 2-Bedroom unit based on income, HPD and Phipps improperly discriminated against my son and I as low-income, disability-eligible tenant candidates.
18. I have subsequently learned that these types of material errors and failures to follow the process set out in the HPD's marketing Handbook have been reported as recurring on a disturbingly frequent basis in the administration of New York City's affordable housing program, depriving the very people who are the intended beneficiaries of its rigorously designed process of its protections and benefits. This systemic failure to strictly adhere to the process set out by HPD has a discriminatory impact on disabled persons who are intended to be among its main beneficiaries but are unfairly denied those benefits through cavalier administration of the program.
19. The Fair Housing Act makes it unlawful to refuse to make reasonable accommodation in rules, policies, practices and services, treating people with disability exactly the same way as everyone will sometimes deny them equal opportunity to use and enjoy a dwelling. At the time when I made the request there was no financial or administrative burned on the housing provider to grant us the appropriate accommodation and in fact we were entitled to take a full advantage of the opportunity offered by the lottery program. The final award of the affordable apartments refused our family that opportunity by awarding us a unit that does not accommodate my son's needs and prevented our family from choosing an appropriate unit, even though we qualified for a 2 bedroom. The housing provider may not treat an applicant differently based on his subjective perception of the applicant's disability. No one has asked us if in light of Natan's disability the hearing device in our apartment would be something we will benefit from.

## Breach of Duty

20. HPD and Management had a duty to tenant prospects, especially disabled tenant prospects, to faithfully follow the rules for awarding affordable housing to disabled persons. My denial for a 2-Bedroom unit at Phipps House was a breach of that duty.
21. The refusal of a larger unit based on income was also erroneous given that the rent for a 2-Bedroom unit was $1,166/ month at the time and my Section 8 rental voucher would have covered rent up to $1268/ month.
22. HPD and Management's negligent or reckless disregard for the faithful administration of those rules has resulted in a material degradation in our ability to manage Natan's disabilities and caused me an immeasurable degree of emotional distress.
23. Due to the breach of duty by Phipps Housing, HPD and Taconic Management my son has been suffering adversely due to lack of adequate and required accommodation.
24. The breach has resulted in proximate cause of injury resulting in lack of access to essential medical and community and educational services, hindering my health and my son's development.
25. Phipps Housing Corporation and Taconic Management failure to award affordable units at 525 West 52 Street with accordance with mandatory rules and procedures for NYCHPD'S 80/20 affordable housing program and failure to accommodate my son's needs in the process, deprived our family of full enjoyment of the dwelling and the full opportunity of the program.

## Failure to Accommodate

26. I have requested an accommodation from Management to help alleviate our need for more space; The only response I received was a notice that we had been placed on the waiting list for the next available 2-Bedroom unit (implicitly acknowledging my income should not be a factor). Given the availability of units in the building and the scarcity of such accommodations throughout the City, I have no expectation that an affordable unit in Phipps House will become available any time soon.
27. I have also asked HPD for an accommodation, to be moved to a different building participating in the program, I was told that I could only be accommodated if I get selected again. In fact on 10/2/2019 I have been selected for another two bedroom unit through the lottery program at a building on 222 E 44th Street, New York, NY, 10017, where I was deemed qualified, yet again placed on a waiting list. On 01/20/2020 I received another notification from 416 Kent Apartments in Brooklyn stating : *"We have received your application for residency in the project indicated above. Although we have reached your log number, upon further review of your file you do not meet the current guidelines for the only mobility-accessible units left as they are at 130% AMI"*. The 416 Kent apartments projects ran by HPDs affordable housing program has 26, 2 bedroom units out of which only 3 were at 130% AMI. The distribution of the 2 bedroom units for the needs of disabled individual does not add up. By allocating 1 out of the 3, 2 bedroom units at 130% AIM for people with disability, where there are 13, 2 bedrooms

6

unit at 60% AMI, is disproportional. HPD does not adequately oversee the fair distribution of the disability units, putting families like mine at a huge disadvantage and not allowing people with disability a fair chance.

28. Until our need for a 2-Bedroom affordable unit is resolved, I have requested permission to add a full-time live-in care worker to the lease, but I was told by Phipps Housing Corporation and Taconic Management that it would be considered overcrowding.
29. Management's failure to provide the requested accommodation has resulted in a material degradation in our ability to manage Natan's disabilities and caused me an immeasurable degree of emotional distress.
30. HPDs failure to adequately oversee the process of housing distribution and unit approval for the disabled and provide the requested accommodation has resulted in a material degradation in our ability to manage Natan's disabilities and caused me an immeasurable degree of emotional distress and regression in my son's development.
31. HPD, Taconic Management and Phipps Housing Corporation did not meet my child's needs or adhere to the existing local, state and federal laws protecting my child's rights as a disabled person.

**Failure to Provide Required Number of affordable units for Disabled Persons**

32. As a participant in HPD affordable housing program, 525 West 52 LLC was required to set aside that a minimum of five percent of units in the Project must be accessible and available to households with a person with a mobility disability and an additional minimum of two percent of units for households with a person with a hearing or vision disability." See Section 504 of the Rehabilitation Act of 1973 and Section 5-1. A.1, of the HPD Marketing Handbook.
33. Upon information and belief, only 3 disability mobility units were set aside at Phipps House for mobility disabled persons. Phipps House and West 52 LLC have not complied with Section 504 of the Rehabilitation Act of 1973 and Section 5-1 A.1 by failing to provide the required number of disabled set-aside units in the building.
34. Management's failure to provide the required number of mobility disability set-aside units, has led to a shortage of such units at the project, resulting in a material degradation in our ability to manage Natan's disabilities and caused me an immeasurable degree of emotional distress.
35. HPDs failure to oversee the provision of adequate number of units in the New York City's Affordable Housing Program for families with person's with disability is not compliant Section 504 of the Rehabilitation Act of 1973 and Section 5-1 of the HPD Marketing Handbook and consequently denies persons with disability an equal opportunity in participation in the lottery program violating the Civil Rights Act of 1964.

**ADA Violations**

36. Phipps Hosing Corporation and 525 West 52 Street LLC Owners have an obligation to comply with the accessibility requirements of the American with Disabilities Act, including failure to provide compliant accessibility at several of the building's public entrances.
37. The lack of compliant accessibility at Phipps House creates a burden of access for tenants and visitors who are mobility disabled.

Based on the foregoing, I am seeking compensatory and punitive damages against HPD, 52 West LLC, Taconic and Phipps Corp. for

i. discriminatory practices in violation of Section 504 of the Rehabilitation Act of 1973, the Fair Housing Act, New York State Human Rights Law and New York City Human Rights Law, Civil Rights Act of 1964.

ii. violations of the American with Disabilities Act and comparable New York State and New York City laws regarding accommodations for the disabled, and

iii. breach of duty by negligently or recklessly failing to follow the rules applicable to New York City's affordable housing program as it pertained to the process of awarding disabled, affordable housing units at Phipps Housing Corporation.

_____   3/27/2020
Bernadette Skorupska



7019 2280 0□□□ □□□□ 2366

# PRIORITY MAIL

- Date of delivery specified*
- USPS TRACKING™ included to many major international destinations.
- Limited international insurance.
- Pick up available.*
- Order supplies online.*
- When used internationally, a customs declaration label may be required.

* Domestic only



P S 0 0 0 0 1 0 0 0 0 1 4

EP14F Oct 2018
OD: 12 1/2 x 9 1/2



USM p3
SDNY

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

# PRIORITY
★ MAIL ★



UNITED STATES POSTAL SERVICE®
VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM: Bernadette Skorupska
525 West 52 st 4BN
N.Y N.Y 10019

TO: United States District Court
Southern District of New York
500 Pearl Street
New York, N.Y 10007
Pro Se Intake Clerk

Label 228, March 2016    FOR DOMESTIC AND INTERNATIONAL USE

* Domestic only.    × For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.