# EXHIBIT H



CONTRACT FOR CONSULTING SERVICES

This CONTRACT FOR CONSULTING SERVICES (the "Agreement") dated as of March 28, 2016 (the "date of this Agreement" or the "date hereof") by and between 525 West 52 Property Owner LLC, c/o Taconic Development Company LLC, 111 Eighth Avenue, Suite 1500 New York, NY 10011 ("Owner"), and Phipps Houses Services, Inc., having an address at 902 Broadway, 13th Floor, New York, NY 10010 ("Consultant").

<u>WITNESSETH:</u>

WHEREAS, Owner owns the property located at 525 West 52nd Street, New York, NY 10019 (the "Property");

WHEREAS, the Property has 79 affordable units (the "Units") and Owner wishes to engage Consultant to perform the marketing and lease-up of the Units in compliance with all regulatory agreements, including but not limited to the NYS HFA Regulatory Agreement and the NYC HPD Regulatory Agreement (the "Program") as per the proposal dated January 6, 2014 attached as "Exhibit A" (the "Proposal").

NOW, THEREFORE, in consideration of the foregoing and of the mutual promises, covenants and agreements set forth herein, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereby agree as follows:

1.     <u>Term</u>

The term of this Agreement shall commence on the date hereof and terminate upon successful completion of the lease-up of the Units in compliance with all regulatory agreements including but not limited to the NYS HFA Regulatory Agreement and the NYC HPD Regulatory Agreement as set forth in the Proposal, in each case satisfactory to Owner, or such other date upon which said term may be canceled or terminated by Owner pursuant to the provisions of this Agreement.

2.     <u>Representations and Warranties</u>

Owner represents and warrants to Consultant that (i) Owner has the power and authority to enter into this Agreement, (ii) such entry has been duly authorized by all necessary action on its part, (iii) such entry will not violate the terms or provisions of any agreement to which it is a party and (iv) this Agreement is a valid and binding agreement on its part enforceable in accordance with its terms.

Consultant represents and warrants that (i) Consultant has the power and authority to enter into this Agreement, (ii) such entry has been duly authorized by all necessary corporate action on its part, (iii) such entry will not violate the terms or provisions of any agreement to which it is a party, (iv) this Agreement is a valid and binding agreement on its part enforceable in accordance with its terms, (v) Consultant will

employ personnel with sufficient experience and skill to carry out its obligations hereunder, and (vi) Consultant is duly qualified and licensed in the State and City of New York to perform its obligations under this Agreement.

3.    Consultant Obligations

Consultant hereby agrees to implement the Program in its entirety throughout the term of this Agreement in a professional manner and in compliance with the Proposal and all applicable laws, rules, regulations and orders of all governmental authorities having jurisdiction over the Units or such work.

4.    Owner's Obligations

Owner shall pay to Consultant fees as per the Proposal dated January 6, 2014 for Consultant's performance and completion of the Program. Such sums shall be due and payable thirty (30) days following delivery of an invoice therefore and completion of the services to be provided under this Agreement to Owner's satisfaction. The total amount of fees due to the Consultant is not to exceed three hundred and sixteen thousand dollars ($316,000.00) unless approved in advance and in writing by Owner.

5.    Termination

If Owner determines in its sole and absolute discretion that Consultant is not implementing the Program in an adequate and/or timely fashion, or if Consultant defaults in the performance of its obligations under this Agreement, Owner shall have the right to terminate this Agreement and all the rights herein granted to Consultant by giving written notice of such breach and intent to terminate, in which event this Agreement and the rights granted herein to Consultant shall automatically terminate on the 30th day. Termination of this Agreement and the rights hereby granted to Consultant shall be without prejudice to any rights or remedies which Owner may otherwise have against Consultant. Upon termination of this Agreement due to a violation by Consultant, Owner shall have no further obligation under this Agreement to make additional payments to Consultant, and Owner will be deemed to have satisfied all of its payment obligations hereunder.

6.    Notices

Except as otherwise provided in this Agreement, any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Agreement shall be in writing, signed by the party giving the same or by its attorneys, and shall be deemed to have been properly given and shall be deemed effective upon being (i) personally delivered with receipt for delivery, or (ii) delivered to an overnight delivery service with receipt for delivery, (iii) deposited in the United States mail, postage prepaid, U. S. Express Mail with return receipt requested; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof by delivery pursuant to clause (i) above, the next business day following delivery pursuant to clause (ii) above and three (3) business days following delivery pursuant to clause (iii) above. Personal delivery to a party or to any officer, partner, member, agent or employee of such party at said

address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received shall also constitute receipt. Any such notice, election, demand, request or response shall be addressed as follows:

<u>If to Owner:</u>

525 West 52 Property Owner LLC
C/o Taconic Development Company LLC
111 Eighth Avenue suite 1500
New York, NY 10011
Attn: Dan McInerney

With a copy to:

Taconic Management Company
111 Eighth Avenue
New York, NY 10011
Attention: Peter Febo
Email: pfebo@tacon.com

If to Consultant:

Phipps Houses Services, Inc.
902 Broadway
13th Floor
New York, NY 10010
Attention: Josephine Perrella
Email: Jperrella@phippsny.org

7.    <u>Entire Agreement</u>

This Agreement constitutes the entire agreement between the parties pertaining to the subject matter hereof and supersedes all prior agreements and understandings between the parties hereto with respect to the subject matter hereof, whether oral or written. Changes in or additions to this Agreement may be made only upon the written consent of the parties hereto. Should any terms or conditions of this Agreement conflict with the attached exhibits, schedules, or proposals, this Agreement shall govern.

8.    <u>Severability</u>

This Agreement shall be deemed severable and the invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision hereof. Furthermore, in lieu of any such invalid or unenforceable provision, the parties hereto intend that there shall be added as a part of this Agreement a provision as similar in terms to such invalid or unenforceable provision as possible and be valid and enforceable.

9.     Successors and Assigns

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their permitted successors and assigns.  Neither party may assign its rights or obligations under this Agreement, in whole or in part without the prior written consent of the other party; except that Owner may assign this Agreement without Consultant's consent to (i) any lender providing financing for the Property and/or (ii) any purchaser or transferee of the Property (including, without limitation, any purchaser in a foreclosure of any mortgagee on the Property, or any transfer in lieu thereof), and Consultant will perform all of its obligations under this Agreement for the benefit of any such assignee (or its nominee) as long as all payments to Consultant thereafter accruing under this Agreement from and after the date of such assignment are timely made.

10.     Governing Law

This Agreement shall be deemed to have been made in the State of New York, United States of America, and shall be construed and governed in accordance with the laws of the State of New York, United States of America.

11.     Sections

The section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

12.     Counterparts

This Agreement may be executed in multiple counterparts, each of which when so executed and delivered shall be an original, but all of such counterparts shall together constitute one and the same instrument.

13.     Subordination

This Agreement is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect such leases or the Property and to all renewals, modifications, consolidations, replacements and extensions of any such underlying leases and mortgages, and to all matters to which such ground or underlying leases and/or such mortgages are subject and/or subordinate.  This Section shall be self-operative and no further instrument of subordination shall be required.  In confirmation of such subordination, however, Consultant shall execute promptly any certificate or agreement that Owner or any lender to Owner may reasonably request.

14.     Estoppels

From time to time, Consultant, within ten (10) days of the request of Owner, shall execute and deliver to Owner, without charge, a statement, duly acknowledged:  (a) confirming that this Agreement is in full force and effect and has not been assigned, modified, supplemented or amended, except by such writings

as shall be stated; (b) certifying that Owner has fulfilled all its obligations under this Agreement, except such as shall be stated; and (c) certifying as to such other matters concerning this Agreement as may be reasonably required by Owner. Consultant shall execute and deliver similar statements, from time to time, as and when requested by Owner, to any actual or prospective lenders to Owner and/or purchasers from Owner and each of such parties shall be entitled to rely upon any such written statement or certification made by Consultant.

15.    Exculpation

In the enforcement of its rights hereunder, Consultant agrees that it shall not seek, obtain or enforce a money judgment or exercise any other right or remedy against any of the members, general or limited partners, or disclosed or undisclosed principals, of Owner, nor any of its or their officers, directors, shareholders, employees, affiliates, managers, agents, or any of their respective successors or assigns. The rights and remedies of Consultant shall be enforceable and may be enforced, solely against any estate of Owner in or to the Property and no other property or assets of Owner, or any partner, member, principal, officer, shareholder, employee, manager, agent or director thereof, disclosed or undisclosed, shall be subject to levy, execution or other enforcement procedure for the satisfaction of consultant remedies in connection with this Agreement. In the event of any sale, assignment or other transfer of Owner's estate in the Property during the term of this Agreement, Consultant agrees to look solely to such purchaser, assignee or transferee, and its estate in the Property, and in no such event shall Consultant look to Owner or the proceeds of such sale, assignment or transfer, to enforce Consultant rights and remedies hereunder, it being agreed that from and after the execution of any such sale, assignment or transfer, Owner shall be automatically and without further agreement fully released and discharged of all obligations on Owner's part to be performed under this Agreement.

16.    Independent Contractor

The parties acknowledge and agree that Consultant shall act solely as an independent contractor and shall in no way be considered an employee, agent, partner, co-venturer or member of Owner. Neither Consultant, nor any of its employees, independent contractors or agents, shall be entitled to any benefits provided by Owner to its employees, including workers' compensation, disability insurance, retirement plans, vacation or sick pay. In addition, Owner may regularly report amounts paid to Contractor to the Internal Revenue Service as required by law. Because Consultant is an independent contractor, Owner shall not withhold or make payments for social security, make unemployment insurance or disability insurance contributions, or obtain worker's compensation insurance on Consultant (or its employees', contractors' or agents') behalf. Owner will make no deductions from any of the payments due to Contractor under this Agreement for state or federal tax purposes, and Consultant agrees that Consultant shall be personally responsible for any and all taxes and other payments due on payments received by Consultant from Owner hereunder.

17.    Books and Records

Consultant shall keep, or cause to be kept, true and complete books and records in respect of the Program. Such books and records shall be located or made available to Owner and/or its representatives in the City

of New York and shall be maintained as aforesaid for a period of not less than six (6) years after the expiration and/or earlier termination of this Agreement. Owner and its representatives shall have the right from time to time to inspect and make copies of Consultant's books and records relating to the Program. All such inspections shall occur during regular business hours and upon not less than three (3) business days prior notice. Upon the expiration or earlier termination of this Agreement, at the request of Owner, Consultant shall produce and deliver to or as directed by Owner all books, records, papers and accounts relating to Program.

All surveys, drawings, specifications, reports, renderings, photographs, models, and other material prepared or furnished pursuant to this Agreement including all documentation in an electronic format (i.e., CADD) ("Project Documents") shall be the property of Owner upon their acceptance by Owner or upon the suspension or termination of the Project or the termination of this Agreement. Reproducible copies of all surveys, drawings, specifications, reports and all other such materials shall, to the extent not previously delivered, be promptly delivered to Owner upon demand. All surveys, drawings, specifications and all other such materials may be used by the Owner in whole or in part or in modified form for such purposes as such party may deem advisable, provided the Consultant is compensated for the work previously performed ("as more fully provided herein"). If the Owner modifies the Project Documents without Consultant's consent, the Owner shall to the fullest extent permitted by law, defend and hold harmless the Consultant against liability for claims arising out of such modification.

Consultant shall keep confidential (and will require any of its employees, agents, Subcontractors and sub consultants to keep confidential), and shall not copy or disclose to any third party without Owner's prior approval, any information concerning (a) the business plans or business operations of Owner, and/or any of its affiliates and/or (b) any space planning or programming or intended use, of any portion of the subject project. Any information heard, obtained from observation or otherwise received, regarding any of the foregoing, is considered information obtained from Owner, and/or it's affiliated for purposes of this paragraph. Consultant further agrees not to publicly disclose any information with respect to the Project, or the participation of Owner, and/or any of its affiliates therein, including issuance of any public relations or press releases or other publicity, without the prior written consent of owner.

18.    Insurance

Prior to commencement of any of the Work, Consultant shall purchase and maintain insurance as per "Exhibit B" as it will protect it and Owner from the claims set forth below which may arise out of or as a result of Consultant's operations under this Agreement whether such operation be by Consultant itself, or any subcontractor or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable.

19.    Indemnity

Consultant shall indemnify and save harmless Owner. and its officers, directors, shareholders, partners, principals, affiliates, lenders, employees and agents (whether disclosed or undisclosed) (hereinafter collectively the "Owner Parties") from and against any and all actions, causes of action, lawsuits, administrative proceedings, violations, liens, claims, demands, liability, losses, damages, judgments, fines, penalties, costs and expenses (including reasonable attorneys' fees and disbursements, and

engineers', experts', investigatory and consulting fees) arising from or in connection with (i) any breach or default by Consultant in the full and prompt payment and performance of Consultant's obligations hereunder; (ii) the use or occupancy or manner of use or occupancy of the Property by Consultant or any person claiming under or through Consultant; (iii) any act, omission or negligence of Consultant or any of its subcontractors, sub-consultants, permitted assignees or invitees or its or their partners, principals, directors, officers, agents, invitees, employees, guests, customers or contractors; (iv) any accident, injury or damage occurring in or upon the Property during the term hereof; (v) the performance by Consultant of any work in the Property including Consultant's failure to obtain any permit, authorization or license or failure to pay in full any contractor, subcontractor or material men performing work on such work; (vi) mechanics' liens or violations filed, claimed or asserted in connection with any work, labor, services or materials done for or supplied to, or claimed to have been done by or for or supplied to, Consultant, or any person claiming through or under Consultant; (vii) any violation of any law, rule, regulation or order by Consultant or any person claiming through or under Consultant; and (viii) the existence or presence (or alleged existence or presence) on or about the Property of any hazardous substance or the release of any hazardous substance into the environment, and any personal injury or property damage resulting from any hazardous substance in the Property, in each case to the extent same was introduced or released by Consultant or any person claiming through or under Consultant. If any claim, action or proceeding is brought against any of the Owner Parties for a matter covered by this indemnity, Consultant, upon notice from the indemnified person or entity, shall defend such claim, action or proceeding with counsel reasonably satisfactory to Owner and the indemnified person or entity. The provisions of this Paragraph 19 shall survive the expiration or sooner termination of this Agreement.

[The rest of this page is left blank intentionally.]

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the day and year first above written.

CONSULTANT
**PHIPPS HOUSES SERVICES, INC.**

By: _PHIPPS HOUSES SERVICE INC_
Name: _Josephine Ferrella_
Title: _SUPY GM_

OWNER
**525 WEST 52 PROPERTY OWNER LLC**

By: _____
Name:    Peter Febo
Title:    Authorized Signatory

Exhibit A

Phipps Houses Services, Inc. Proposal dated January, 6 2014

T00358

## INTEROFFICE MEMORANDUM

**TO:**       DANIEL MCINERNEY, TACONIC INVESTMENT PARTNERS
**FROM:**    JOSEPHINE PERRELLA, PHIPPS HOUSES SERVICES GROUP
**SUBJECT:** SCOPE OF SERVICES FOR MARKETING AND RENT UP OF
             525 WEST 52ND STREET
**DATE:**    JANUARY 6, 2014

---

Dear Daniel,

Happy New Year! We are pleased to provide our scope of services for the marketing and rent-up of 525 West 52nd Street. It is our understanding that the property is scheduled to receive its initial TCO during the 1st quarter 2016 and will provide a total of 79 units of affordable housing (40% and 50% AMI) under the Low Income Tax Credit and Inclusionary Programs. PHSI provides our clients with a "turn-key" operation; from creating the marketing plan, obtaining agency approval, overseeing the advertisements and subsequent open-market period where interested individuals could obtain an application, managing the lottery process, providing experienced staff to qualify applicants, obtaining agency approval, showing assigned apts. to agency approved applicants, overseeing the lease signing process (creating the lease package, scheduling a lease signing with the tenant reviewing house rules, and collecting the rent and security deposit) and turning over the signed leases to the owner for signature. All that will be required from management is scheduling the move-in. It is our belief that your energies should be directed to marketing your property; it is our responsibility to provide you with qualified residents.

PHSI has over 15+ years of marketing experience and has marketed well over 3000 units of housing for both our own portfolio, not-for-profit agencies and market-rate developers. We have developed enduring working relationships with supervisory agencies, (NYC HPD, HDC, and NYS HFA). Two of most recent marketing projects have been selected as city-wide test properties for NYC's latest on-line application offering, where applicants can apply for apts. via the internet. This is a point of pride for the Phipps' marketing team as we have been part of the user's discussion to formulate this latest attempt to provide assisted housing to those who qualify.

Your marketing program will be overseen by Alice Wong, PHSI's AVP of Marketing. Alice has well over 15 years' experience creating marketing and rent-up programs; interfacing with supervisory agencies, owners and applicants; and successfully completing rent-ups on time and on budget. Alice will assign a project manager who will oversee the office and manage staff and respond to applicant inquiries and complaints. Both Alice and your full-time project manager will respond to discrimination claims filed with the Human Rights Commission. The actual interview process will be conducted by our experienced staff stationed at your interview office and

will conduct interviews Monday through Friday's (with a possible late night depending on project need).

## Our Services:

- **Creating your marketing plan and obtaining agency approval.** PHSI will craft a marketing plan which will take into account the regulatory agreement(s) and the owner's need to balance both the assisted and market-rate rent-up. While the regulatory agreement is rigorous in its requirements regarding tenant selection (maximum incomes, maximum rents, utility allowances, etc.) the owner remains responsible for the consistent application of selection and credit criterion for both the assisted and market rate tenants. PHSI will recommend applicable rejection criteria which you as the owner will have final approval and will be part of the marketing plan. The marketing plan will contain the media plan, the advertisement, all correspondence needed to source qualified tenants (application, cover letters, outreach letters, 3rd party verification, etc.). While the regulatory agreement states the maximum rent for each size unit, we have been able to negotiate with the agency to obtain the latest regulatory rents.

- **Acting as the Development's Public Face.** PHSI will represent the owner at public meetings providing necessary information to both the meeting sponsor and the general public regarding the application process, the program and the deadline dates. We typically attend community planning boards, local not –for-profit and community groups meetings on the owner's behalf.

- **Managing the selection process post-lottery.** The lottery takes place approximately 70 days after the first advertisement debuts on the NYC application website or in the select newspapers. With agency supervision, PHSI conducts a lottery where all of the paper applications are sorted, opened and recorded on-line. The paper applications together with the on-line applications are randomly mixed and a number is assigned to each of the applications. The final log is sent to PHSI. At this point we can start reviewing applications and begin the qualification process. The owner provides PHSI with an office to conduct interviews reviewing and confirming the initial applicant eligibility. We will not need an office until we are ready to begin interviewing applicants. (Estimated size 1200-1400 sqft feet; outfitted with desks, chairs, copier, telephone, computers internet access; and must be handicapped accessible with handicapped bathroom.)

- **Staffing your project.** Your office will be staffed with 1 project manager, 3 interviewers and on 1 receptionist. PHSI has a roster of experienced interviewers who will conduct the initial eligibility review, confirming family size and income. If an applicant appears to be eligible for the program, the interviewer will request a credit, a criminal background check and a home visit (if appropriate).

2

- **Finding an eligible applicant.** Once the applicant appears to have met all of the regulatory and owner's selection criteria, the applicant's information will be sent for agency approval. It is the marketing team's responsibility to obtain written agency approval. The applicant file must be approved before the applicant can view their assigned unit and schedule a lease signing.

- **Completing the transaction.** The marketing team, together with the property manager will schedule a general meeting with the approved applicants to view their assigned units. Typically, 5-10 applicants are invited to attend. At this orientation meeting, applicants visit their apts., marketing explains the lease signing process and the house rules, and hopefully we schedule a lease signing date with the applicant. Marketing prepares the approved lease package (lease, addenda and house rules) which the owner provides to both the supervisory agency and PHSI. Marketing will have the applicant their lease and other required documentation and will turn the package over to the property manager to execute. The new tenant will call the manager to coordinate a move-in date.

## Our Fee Includes:

- Our consulting fee covers all of the pre-lottery activities: marketing and rent up plan, obtaining agency approval, and Josephine Perrella and Alice Wong time throughout the entire project. This fee is a calculation based on the number of assisted units and demand. This is a flat fee.

- The staff time for the project manager, interviewers and the receptionist begins when the project enters the interview phase. These are timesheet charges which will be billed directly to the owner on a monthly basis. The timesheet charges contain salary and benefits associated with each employee based on the actual hours working on your project. The site staff salaries range between $18-$25 per hour and benefits (estimated at 30% of hourly salary). This is a variable fee.

## Our Fee Doesn't Include:

- Site office rental
- Advertisements in newspapers
- Utilities (electricity, heat, air conditioning)
- Telephone equipment and service
- Computer and internet access
- Postage
- Office supplies and furniture

3

## How Much Will This Cost You (Estimated)?

It is premature to calculate the exact cost of this marketing and rent up. The Low Income Tax Credit Program guidelines are restrictive and onerous which makes the selection process daunting and time-consuming. We are faced with unknown variables such as demand and competition which could lengthen the rent-up process. We simply don't know what the response will be and thus are reluctant to give you an exact price for our services.

That said, our experience indicates that given the number of assisted units we estimate that our consulting fee plus interviewer/office/site manager staff time (estimated 40 weeks) to total approximately $316,000 of $4000 per unit. (Please note that the staff time is an estimate; you will pay based on actual hours worked which may be more or less than our estimate.)

## Why Select PHSI for This Project?

### PHSI background

It is critical that your organization select a consultant that understands the unique dynamics of a successful marketing and rent up program in this highly scrutinized atmosphere. The major components to the success of this rent up will be your consultant's ability to meet and satisfy local institutions requirements for consistent application of all rules pertaining to rent up and just as importantly have a reasonable dialogue with the Agency's Marketing and EHO departments. PHSI's 15+ years of experience with various governmental programs and agencies will assist your organization with the task of renting up your property in the most efficient and expeditious manner. As managers of over 8,500 housing units throughout the metropolitan area, PHSI understand that a successful building is based on locating and selecting qualified applicants that are an asset to your property.

We wish you success in the construction of such an exciting project. We hope to work with you to make such a formidable task seem less perplexing. If there are any questions, please feel free to call me at 212.243.9090 ext. 260.

Yours truly,


Josephine Perrella
SVP/GM
Phipps Houses Services Inc.

T00362

**EXHIBIT B**
**INSURANCE REQUIREMENTS**

1.1    Workers' Compensation/Employers Liability

    (a)    Claims under Workers' Compensation and other similar employee benefit acts which are applicable to the services to be performed by Consultant.

    (b)    Claims for damages because of bodily injury, occupational sickness or disease, or death of Consultant's employees under any applicable employer's liability law in an amount not less than $1,000,000.00.

1.2    Comprehensive Automobile Liability

    Claims for damages because of Bodily Injury or Death of any person or Property Damage arising out of ownership, maintenance or use of any vehicles you own, lease, rent or borrow in an amount not less than $1,000,000.00 Combined Single Limit of liability.

1.3    Commercial General Liability

    (a)    Claims for damages due to bodily injury or death of any person other than its employees.

    (b)    Claims for damages due to injury to, or destruction of, tangible property, including loss of use therefrom.

    (c)    Written on an occurrence form with limits of $1,000,000.00 combined single limit each occurrence and $2,000,000.00 in the aggregate of all occurrences within each policy year.

    (d)    Coverage in this policy shall include, but not be limited to the following:

        (i)    Personal Injury Liability;

        (ii)    Blanket contractual liability covering contractual liability assumed under this Agreement;

        (iii)    Employees included as additional insureds;

        (iv)    Broad form property damage liability;

        (v)    Cross Liability;

        (vi)    Incidental medical malpractice coverage; and

        (vii)    Products and completed operations coverage with provisions for an additional three (3) years extension after issuance of a permanent certificate of occupancy for the Project.

DM1\6061561.1

    1.4     Excess (Umbrella) Liability with total limits of $5,000,000.00 each occurrence and in the aggregate in excess of the above noted insurances.

    1.5     Professional Liability Insurance covering the activities of Consultant (and its subconsultants) written on a claims made basis with limits of at least $2,000,000.00 per claim and $3,000,000.00 aggregate with a maximum deductible of $75,000.00. Coverage shall be maintained during the period of this Agreement and for not less than three (3) years after issuance of a permanent certificate of occupancy for the Project.

    1.6     Valuable Papers insurance in sum of $400,000.00, with Owner and Lender named as loss payees, insuring against loss or destruction of any design drawings, specifications or documents produced or used by Consultant or its subconsultants under this Agreement, including any documentation produced or any computer aided design system.

    1.7     The insurances enumerated in Sections 1.2 through 1.4, inclusive, shall without liability on the part of additional insureds for premiums therefor, include the following:

    (a)    Endorsement as additional insureds: Owner, Lender, and all entities on **Exhibit C** and their respective subsidiaries, affiliates, assigns, successors, officers, directors, shareholders, principals, members, partners, employees and representatives.

    (b)    Thirty (30) day prior notice of cancellation or non-renewal to each additional insured.

    (c)    Waiver of Subrogation in favor of Owner, Lender, all entities listed on **Exhibit C** and their respective subsidiaries, affiliates, assigns, successors, officers, directors, shareholders, principals, members, partners, employees and representatives.

    (d)    Policy language that states the insurance is primary to and not contributory with any insurance carried by Owner, Lender, all entities listed on **Exhibit C** and their respective subsidiaries, affiliates, assigns, successors, officers, directors, shareholders, principals, members, partners, employees and representatives.

    1.8     Consultant shall before commencing any work pursuant to this Agreement file certificates with Owner to show the existence of the insurance coverages required by this **Exhibit B**. Upon request, Consultant shall provide copies of its insurance policies to Owner. Consultant's insurance shall be placed with reputable insurance companies licensed to do business in the State of New York with a minimum Best's rating of A-IX and shall be subject to Owner's approval.

    1.9     Any type of insurance or any increase of its limits of liability not described above which Consultant requires for its own protection or required by statute shall be its own responsibility and at its own expense.

    1.10    The carrying of the insurance described shall in no way be interpreted as relieving Consultant of any responsibility of liability under this Agreement. In the event Consultant (or its subconsultants) fails to maintain the coverages or limits as required herein, Owner may effect such insurance as an agent of Consultant (or its subconsultants). Any premiums paid, therefore, by Owner to effect such coverage shall be payable by Consultant or offset by or against the fees herein provided or payable to Consultant.

DM1\4061561.1

**Exhibit C**
**Certificate Holder, Indemnities and Additional Insureds**

Certificate Holder
525 West 52 Property Owner LLC
C/o Taconic Investment Partners LLC
111 Eighth Avenue suite 1500
New York, NY 10011

Indemnities and Additional Insureds
Taconic 525 West 52 Street Principals LLC
Taconic 525 West 52 Street Investors LLC
Taconic 525 West 52 Street LLC
Taconic 525 West 52 Street GP LLC
525 West 52nd Street LLC
525 West 52 JV LLC
525 West 52nd Street Development LLC
525 West 52 Owner II LLC
525 West 52 Property Owner LLC
525 West 52 LI Property Owner LLC
Mitsui Fudosan America, Inc
MFA 525 W 52 Street LLC
525 West 52nd Street Development LP
Taconic Investment Partners LLC
Taconic Management Company LLC
Taconic Development Company LLC
LeNoble Properties LLC
LeNoble Lumber Co., Inc