**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2015050600577003001E4DC6

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 31 |
|---|---|---|
| Document ID: **2015050600577003** | Document Date: 04-30-2015 | Preparation Date: 05-06-2015 |

Document Type: DEED
Document Page Count: 30

| PRESENTER: | RETURN TO: |
|---|---|
| FIRST AMERICAN TITLE INSURANCE CO., NCS<br>666 THIRD AVENUE, 5TH FLOOR<br>3020-641692/IS<br>NEW YORK, NY 10017<br>212-551-9424<br>ISAVUNDRANAYAGAM@FIRSTAM.COM | DEPARTMENT OF HOUSING PRESERVATION &<br>DEVELOPMENT<br>OFFICE OF LEGAL AFFAIRS<br>100 GOLD STREET, ROOM 5-S4<br>NEW YORK, NY 10038 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1081 | 1 | Entire Lot | 555 WEST 52ND STREET |

**Property Type:** OTHER

### CROSS REFERENCE DATA

CRFN_____  *or*  DocumentID_____  *or*  _____ Year_____ Reel____ Page_____  *or*  File Number_____

### PARTIES

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| THE CITY OF NEW YORK<br>ACTING BY AND THROUGH DEPARTMENT OF HPD,<br>CITY HALL<br>NEW YORK, NY 10007 | CLINTON HOUSING DEVELOPMENT COMPANY, INC.<br>403 WEST 40TH STREET<br>NEW YORK, NY 10018 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 250.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 187.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**

Recorded/Filed        05-13-2015 12:11
City Register File No.(CRFN):
**2015000160244**

*Annette M. Hill*

***City Register Official Signature***

3020-641692

**THIS DEED** ("Deed"), entered into as of April 30, 2015, between **THE CITY OF NEW YORK**, a municipal corporation formed pursuant to the laws of the State of New York, having its principal office at City Hall, New York, New York   10007 ("City"), acting by and through its **DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT**, having its principal office at 100 Gold Street, New York, New York   10038 ("HPD"), as Grantor, and **CLINTON HOUSING DEVELOPMENT COMPANY, INC.**, a New York not-for-profit corporation, having its principal offices at 403 West 40th Street, New York, NY 10018 ("Grantee"), as Grantee.

**WHEREAS,** the City is the owner of certain real property, consisting of all those plots, pieces, or parcels of real property situated, lying, and being in the City and State of New York, which property is designated Block 1081, Lot 1 (formerly part of Lot 1) on the Tax Map of the City of New York, as more particularly described in Exhibit A annexed hereto and made a part hereof ("Land"), and all buildings and improvements situated on the Land ("Improvements"; the Land and the Improvements, collectively, the "Disposition Area"); and

**WHEREAS,** pursuant to a Zoning Lot Development & Easement Agreement ("ZLDA"), the City proposes the separate transfer of 1,540 square feet of unused zoning floor area appurtenant to the remaining portion of Block 1081, Lot 80 (formerly part of Lot 1), reserving and retaining such property and all other development rights appurtenant to Block 1081, Lot 80 (formerly part of Lot 1) for the use and benefit of the City; and

**WHEREAS,** the present condition of the Land and Improvements (collectively, "Disposition Area") tends to impair or arrest the sound growth and development of the municipality; and

**WHEREAS,** the City desires to encourage the redevelopment of deteriorated City-owned properties and to promote the development of affordable housing; and

**WHEREAS,** the Disposition Area is eligible as a municipally-owned area to be conveyed pursuant to Article 16 of the General Municipal Law ("GML"); and

**WHEREAS,** in furtherance of the objectives of Article 16 of the GML, the City has undertaken a program for the clearance, replanning, reconstruction, and neighborhood rehabilitation of slum and blighted areas in the City; and

**WHEREAS,** in furtherance of such program, the City is undertaking an Urban Development Action Area Project for the development of the Disposition Area ("Project"), as such Project is more fully described in that  certain Land Disposition Agreement (the "LDA") between the City and Grantee dated of even date herewith; and

**WHEREAS,** HPD has prepared the Project Summary ("Project Summary") annexed to the LDA and made a part thereof for the redevelopment of the Disposition Area as an Urban Development Action Area Project pursuant to Section 694 of the GML; and

**WHEREAS,** HPD has designated Clinton West 53rd Housing Development Fund Corporation ("HDFC") as a qualified and eligible sponsor of the Project pursuant to Section 695 of the GML; and

Regular UDAAP – generic form
Clinton Site 7 – Project 2

#2    LOT 1

1



**WHEREAS,** Grantee is an affiliate or successor of HDFC controlled by the same principal(s) that controlled HDFC; and
**WHEREAS,** Grantee shall immediately transfer the Disposition Area to 525 West 52 Property Owner LLC ("52nd Street Owner") for a purchase price of **$3,450,300**; and

**WHEREAS,** on June 24, 2014, by Resolution No. 333, a copy of which is annexed hereto as Exhibit B and made a part hereof, the Council, having held a public hearing following notice of the date, time, place, and purpose of such hearing, (i) found that the present status of the Disposition Area tends to impair or arrest the sound growth and development of the municipality and that the proposed Urban Development Action Area Project is consistent with the policy and purposes of Section 691 of the GML, (ii) approved the designation of an Urban Development Action Area pursuant to Section 693 of the GML, and (iii) approved the project as an Urban Development Action Area Project pursuant to Section 694 of the GML; and

**WHEREAS,** on April 29, 2015, by the document annexed hereto as Exhibit C and made a part hereof, the Mayor, having held a public hearing following notice of the date, time, place, and purpose of such hearing, (i) approved the designation of HDFC as a qualified and eligible sponsor pursuant to Section 695 of the GML, (ii) approved the sale of the Disposition Area by the City to HDFC pursuant to Section 695 of the GML, and (iii) approved the LDA; and

**WHEREAS,** Grantee proposes to purchase the Disposition Area from the City upon the terms and conditions set forth in the LDA and to undertake the redevelopment of the Disposition Area in accordance with the Project Summary, which redevelopment shall accomplish the construction and development of the Project.

**NOW THEREFORE,** the City, in consideration of the sum of ONE DOLLAR ($1.00 per tax lot) paid by Grantee, the receipt and sufficiency of which is hereby acknowledged, does hereby grant and release the Disposition Area unto Grantee, its successors and assigns forever, subject only to the restrictions set forth or referred to herein.

**TO HAVE AND TO HOLD** the Disposition Area herein granted unto Grantee, its successors and assigns forever, as follows:

1.    Conveyance.

    A.    Title.  The City hereby conveys to Grantee, and Grantee accepts from the City, all right, title, and interest of the City in and to the Disposition Area, subject to, without limitation, the trust fund provisions of Section 13 of the Lien Law and all terms, covenants, and conditions of this Deed, the LDA, and that certain Regulatory Agreement (the "Regulatory Agreement") between 52nd Street Owner, 525 West 52 LI Property Owner LLC ("AHO LLC") and Grantor dated as of the date hereof and intended to be submitted to the Office of the City Register of New York County simultaneously herewith for recording therein.

    B.    "As Is" Condition.  Grantee accepts the Disposition Area in its "as is" condition on the date ("Closing Date") of delivery of this Deed to Grantee ("Closing").  The City has not made any representations regarding the condition of the Disposition Area and neither has nor had any obligation to undertake demolition, site

Regular UDAAP -- generic form
Clinton Site 7 – Project 2

2

clearance, or site preparation. The City neither warrants nor represents the surface and subsurface conditions of the Disposition Area, that such conditions will be suitable for the Project, or that the Disposition Area is or will be level to grade. Grantee represents and warrants that it has inspected the Disposition Area and is fully familiar with its condition.

2.    Revesting.

    A.    Revesting.

        1.    Default. Until the issuance of a Certificate of Completion for the entire Project pursuant to Section 201.B of the LDA, the occurrence of any of the following shall constitute an event of default ("Default"):

            a.    Failure to commence Construction on or before the Commencement Date;

            b.    Failure to perform the Construction in accordance with the Approved Plans;

            c.    Abandonment or substantial suspension of Construction after the Commencement Date and before the Completion Date;

            d.    Failure to complete ninety five percent (95%) of the value of Construction in accordance with the Approved Plans, as such percentage and compliance are determined by HPD, on or before the Completion Date; and

            e.    Any Prohibited Transfer without the prior written consent of HPD.

        2.    Cure.

            a.    Upon the occurrence of any Default, HPD shall give written notice of such Default ("Default Notice") to Grantee, 52nd Street Owner and to any Holder which has previously requested such Default Notice in writing.

            b.    Grantee, 52nd Street Owner and any Holder shall be permitted thirty (30) days from the date of any Default Notice ("Cure Period") to cure such Default to the satisfaction of HPD ("Cure").

            c.    If HPD, in its sole discretion, determines in writing that the nature of the Default makes it impossible to complete a Cure within the Cure Period, Grantee, 52nd Street Owner or any Holder shall be permitted to commence the Cure of such Default during the Cure Period and to thereafter diligently and continuously pursue the Cure of such Default until such Default shall be completely Cured; provided, however, that such Default shall be completely Cured

not later than ninety (90) days after the Completion Date ("Extended Cure Period").

d. Any Default which is Cured within the Cure Period or, if applicable, any Extended Cure Period, shall be deemed to be a Cured Default ("Cured Default"). Any Default which is not Cured within the Cure Period or, if applicable, any Extended Cure Period, shall be deemed to be an uncured Default ("Uncured Default").

e. If, after the issuance of a Default Notice, such Default is Cured within the Cure Period or, if applicable, any Extended Cure Period, HPD shall issue, within thirty (30) days after receipt of a written request therefor by Grantee or any Holder, a written notice ("Cure Notice") (i) certifying that such Default is a Cured Default, (ii) certifying that such Cured Default will not result in an exercise of the City's rights pursuant to this Section 2, and (iii) reserving the right of the City to exercise its rights pursuant to this Section 2 for any other or future Default; provided, however, that the failure to explicitly reserve any right in the Cure Notice shall not result in the waiver of any such right.

f. In the event of any Uncured Default, the City may, at its sole option, exercise the City's rights pursuant to Section 2.A.3.

3. Revesting. If any Uncured Default shall occur prior to the issuance of a Certificate of Completion for the entire Project pursuant to Section 201.B of the LDA, the City may, subject to the laws of the State of New York, re-enter and take possession of the Disposition Area and terminate and revest in the City the estate conveyed to Grantee, in which event all right, title, and interest of Grantee in and to the Disposition Area shall revert to the City. Upon the issuance of a Certificate of Completion for the entire Project pursuant to Section 201.B of the LDA, the City's rights pursuant to this Section 2.A shall terminate. Upon the issuance of a Certificate of Completion for a portion of the Project pursuant to Section 201.B of the LDA, the City's right to revest that portion of the Project pursuant to this Section 2.A shall terminate.

4. Subordination.

a. Notwithstanding the provisions of this Section 2.A, any revesting of title in the City pursuant to the terms of this Deed or the LDA shall be subject to and limited by, and shall not defeat, render invalid, or limit in any way (i) the lien of any mortgage ("Mortgage") held by a Holder which is authorized by the LDA, or (ii) any rights or interests provided in the LDA for the protection of the Holder of such Mortgage.

b. Upon the request of Grantee, the City shall deliver to the Holder at the Closing an instrument in recordable form, whereby the City's

rights and interests and Grantee's covenants under this Deed and the LDA (except for the provisions of <u>Section 202</u> of the LDA and any provisions which would control by operation of law even in the absence of this Deed and the LDA) are subordinated to the lien of the Mortgage in the event that Grantee ceases to hold title to the Disposition Area as a result of the Holder's exercise of a remedy for the Grantee's default under the Loan Documents.

c.     If, after the issuance of any Default Notice, any Holder shall Cure the Default before the expiration of the Cure Period (or, if applicable, any Extended Cure Period), such Holder may add the cost of Curing such Default to the Mortgage debt and to the lien of its Mortgage.

B.     <u>Assignment of Surplus Money</u>. If title to the Disposition Area is revested in the City pursuant to this <u>Section 2</u>, and HPD thereafter determines to sell all or any portion of the Disposition Area, the proceeds thereof, if any, shall be retained by HPD. Grantee hereby assigns to HPD any surplus money paid into a court as the result of any foreclosure of any lien on any portion of the Disposition Area prior to the issuance of the Certificate of Completion for that portion. Grantee shall execute an assignment of surplus money in recordable form if the City, in its sole discretion, determines that such a document is necessary in order to effectuate such assignment.

C.     <u>Other Remedies</u>. Notwithstanding any provisions of this <u>Section 2</u> to the contrary, the remedies of the City pursuant to this <u>Section 2</u> shall not be exclusive. With respect to any Default, the remedies of the City pursuant to this <u>Section 2</u> shall be in addition to and concurrent with all other defenses, rights, and remedies which the City has, will have, or may have pursuant to this Deed, the LDA, or any other agreement between the City and Grantee or under law, equity, or otherwise. With respect to any violation of the LDA which is not a Default, the City shall retain each and every defense, right, and remedy which the City has, will have, or may have pursuant to this Deed, the LDA, or any other agreement between the City and Grantee or under law, equity, or otherwise.

3.     <u>No Transfer</u>. Prior to issuance of a Certificate of Completion for the entire Project by the City pursuant to <u>Section 201.B</u> of the LDA, there shall be no transfer of title to the Disposition Area or change of ownership interest in Grantee except in accordance with <u>Article III</u> of the LDA.

4.     <u>Program Compliance And Non-Discrimination</u>. Grantee, by its acceptance and execution of this Deed, covenants and agrees, for and on behalf of itself, its successors and assigns, and every successor in interest to the Disposition Area, or any part thereof, to be bound by the following covenants, which shall be binding for the benefit of the City and enforceable by the City against Grantee and its successors and assigns to the fullest extent permitted by law and equity:

A.   Grantee, its successors and assigns shall devote the Disposition Area to the uses specified in, and shall otherwise comply with, the LDA and Regulatory Agreement.

B.   Grantee, its successors and assigns, and any lessees of the Disposition Area or any improvements erected or to be erected thereon, or any part thereof, shall comply with all applicable federal, state, and local laws in effect from time to time prohibiting discrimination or segregation by reason of actual or perceived age, race, creed, religion, gender, sex, color, national origin, ancestry, sexual orientation, disability, marital, partnership or familial status, alienage or citizen status, lawful source of income, lawful occupation, military status, because children are, may be or would be residing with such person or persons, or any other class protected from discrimination in housing accommodations by federal, state or local law (collectively, "Prohibited Distinctions") in the sale, lease, or occupancy of the Disposition Area or any improvements erected or to be erected thereon, or any part thereof.

C.   Grantee, its successors and assigns, and any lessees of the Disposition Area or any improvements erected or to be erected thereon, or any part thereof, shall not effect or execute any agreement, lease, conveyance, or other instrument whereby the sale, lease, or occupancy of the Disposition Area or any improvements erected or to be erected thereon, or any part thereof, is restricted upon the basis of any Prohibited Distinction.

D.   Grantee, its successors and assigns, and any lessees of the Disposition Area or any improvements erected or to be erected thereon, or any part thereof, shall include the covenants of <u>Section 4.B</u> and <u>Section 4.C</u> in any agreement, lease, conveyance, or other instrument with respect to the sale, lease, or occupancy of the Disposition Area or any improvements erected or to be erected thereon, or any part thereof.

5.   <u>Grantee's Certification Pursuant to Section 695 of the GML</u>.  Grantee hereby represents, warrants, and certifies, pursuant to Section 695 of the GML, that Grantee is neither a former owner in fee nor the spouse of a former owner in fee of all or any part of the Disposition Area, or of any property acquired by the City through real property tax or other lien enforcement proceedings, nor is Grantee a business entity substantially controlled by such a former owner, nor is Grantee a successor in interest to any such former owner.  If such representation, warranty, and certification by Grantee is false in whole or in part, or if Grantee otherwise violates or has violated Section 695 of the GML, this Deed and the LDA shall be voidable by the City in accordance with Section 695 of the GML.

6.   <u>No Merger</u>.  Notwithstanding the specific recital in this Deed of certain of the covenants and agreements which are provided for in the LDA, the Regulatory Agreement, or any Loan Documents, each and every covenant, term, provision, and condition contained in the LDA, the Regulatory Agreement, or any Loan Documents shall survive this Deed and shall remain in full force and effect, and no covenant, term, provision, or condition contained in the LDA, the Regulatory Agreement, or any Loan Documents shall in any event or in any respect be merged with this Deed.

Regular UDAAP – generic form
Clinton Site 7 – Project 2

7.    <u>Covenants Running With Land</u>.  The agreements and covenants set forth in this Deed shall run with the land and shall be binding to the fullest extent permitted by law and equity.  Such covenants shall inure to the benefit of the City and shall bind and be enforceable against Grantee and its successors and assigns.

8.    <u>Severability</u>.  If any term or provision of this Deed shall be found to be void, voidable, or otherwise unenforceable, such term or provision shall be deemed severed from this Deed and shall have no further force or effect, and the remaining terms and provisions shall thereafter continue in full force and effect to accomplish the intent and purpose of this Deed to the fullest extent possible.

9.    <u>Waiver</u>.  To the extent permitted by law, Grantee hereby waives any and all rights it may have, at law or equity, to challenge, modify, set aside, extinguish, enjoin enforcement of, or seek relief from any of the terms, conditions, covenants, restrictions, or agreements in this Deed.

10.    <u>Cross-Default</u>.  A default pursuant to the LDA, the Regulatory Agreement, or any other document between 52nd Street Owner and/or AHO LLC and the City shall constitute a default pursuant to this Deed.

11.    <u>Defined Terms</u>.  Any capitalized terms not defined herein shall have the meanings ascribed to them in the LDA.

12.    <u>Compliance Audit – Petroleum Bulk Storage Regulations</u>    Grantee acknowledges that it has received a copy of the pamphlet issued by the New York State Department of Environmental Conservation dated January 6, 1997, entitled: "Compliance Audit -- Petroleum Bulk Storage Regulations -- 6 NYCRR 612-614."

13.    <u>Devotion of Disposition Area to Project.</u>   The Disposition Area shall be devoted solely to the Project.

14.    <u>Negative Declaration</u>.  Grantee shall comply with the Negative Declaration annexed hereto as **Exhibit D**.

**IN WITNESS WHEREOF,** the City has caused this Deed to be executed by the Commissioner of the Department of Housing Preservation and Development of the City of New York and by the City Clerk, and its corporate seal to be hereunto affixed and the Grantee has fully executed this Deed as of the date and year first above written.

ATTEST:

Michael McSweeney
City Clerk

Seal of The City of New York

**THE CITY OF NEW YORK**

**By:**    **DEPARTMENT OF HOUSING**
**PRESERVATION AND DEVELOPMENT**

By:

Vicki Been
Commissioner

**CLINTON HOUSING DEVELOPMENT**
**COMPANY, INC.**

By:

Joe Restuccia
Executive Director

APPROVED AS TO FORM
BY STANDARD TYPE OF CLASS
FOR USE UNTIL September 30, 2016
By:      /s/ Howard Friedman
         Acting Corporation Counsel

STATE OF NEW YORK     )

                              ) ss:

COUNTY OF NEW YORK   )

On the _30th_ day of April in the year 2015, before me, the undersigned, personally appeared **Vicki Been**, personally known to me or proved to me on the basis of satisfactory evidence to be the individuals whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individuals acted, executed the instrument.

NOTARY PUBLIC

BENJAMIN STEINER
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02ST6043316
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES JUNE 12, 2018

STATE OF NEW YORK     )

                              ) ss:

COUNTY OF NEW YORK   )

On the _30th_ day of April in the year 2015, before me, the undersigned, personally appeared **MICHAEL McSWEENEY**, personally known to me or proved to me on the basis of satisfactory evidence to be the individuals whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individuals acted, executed the instrument.

NOTARY PUBLIC

WENDY IRIZARRY-LOPEZ,
Commissioner of Deeds
City of New York No. 2-12331
Certificate Filed in New York County
Commission Expires Jan 30 ——

1/1/2016

Regular UDAAP – generic form
Clinton Site 7 – Project 2

9

STATE OF NEW YORK        )
                         ) ss:
COUNTY OF NEW YORK       )

On the 30th day of April  in the year 2015, before me, the undersigned, personally appeared **Joe Restuccia**, personally known to me or proved to me on the basis of satisfactory evidence to be the individuals whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individuals acted, executed the instrument.

_____
NOTARY PUBLIC

KENNETH R. WONG
Notary Public, State of New York
No. 01WO4967932
Qualified in New York County
Commission Expires 06-11-18

## EXHIBIT A

Property Description

All those certain plots, pieces and parcels of land, with the buildings and improvements thereon erected, situate, lying and being in the City and State of New York, designated on the Tax Map of the City of New York as of April 29, 2015, as:

| Block(s) | Lot(s) |
|----------|--------|
| 1081 | 1 (formerly part of Lot 1) |

| County: | New York |
|---------|----------|

Regular UDAAP – generic form
Clinton Site 7 – Project 2

## EXHIBIT B

City Council Resolution

(next page)

THE COUNCIL OF THE CITY OF NEW YORK
RESOLUTION NO. 333

**Resolution approving the application submitted by the New York City Department of Housing Preservation and Development ("HPD") and the decision of the City Planning Commission, ULURP No. C 140185 HAM, approving the designation of property located at 530-548 West 53rd Street (Block 1081, Part of Lot 1), 543-551 West 52nd Street (Block 1081, Part of Lot 1) and 556-560 West 52nd Street (Block 1080, Part of Lot 103), Borough of Manhattan, as an Urban Development Action Area, approving an Urban Development Action Area Project, and approving the disposition of city-owned property located at 530-548 West 53rd Street (Block 1081, Part of Lot 1), unused development rights at 543-551 West 52nd Street (Block 1081, Part of Lot 1) and property located at 556-560 West 52nd Street (Block 1080, Part of Lot 103) to a developer selected by HPD (L.U. No. 65; C 140185 HAM).**

**By Council Members Greenfield and Weprin**

WHEREAS, the City Planning Commission filed with the Council on May 12, 2014 its decision dated May 7, 2014 (the "Decision"), on the application submitted by the New York City Department of Housing Preservation and Development pursuant to Section 197-c of the New York City Charter and Article 16 of the General Municipal Law of New York State regarding:

a) the designation of property located at 530-548 West 53rd Street (Block 1081, Part of Lot 1), 543-551 West 52nd Street (Block 1081, Part of Lot 1) and 556-560 West 52nd Street (Block 1080, Part of Lot 103), as an Urban Development Action Area (the "Area");

b) an Urban Development Action Area Project for such Area (the "Project"); and

pursuant to Section 197-c of the New York City Charter for the disposition of city-owned property located at 530-548 West 53rd Street (Block 1081, Part of Lot 1), unused development rights at 543-551 West 52nd Street (Block 1081, Part of Lot 1) and property located at 556-560 West 52nd Street (Block 1080, Part of Lot 103), to a developer selected by the New York City Department of Housing Preservation and Development to facilitate development of two new buildings with a total of approximately 530 dwelling units, including approximately 206 affordable units, approximately 58,709 gross square feet of commercial floor area, and three community gardens on portions of two blocks bounded by West 51st Street and West 53rd Street between Tenth and Eleventh avenues in Community District 4 (the "Disposition"), (ULURP No. C 140185 HAM) Community District 4, Borough of Manhattan (the "Application");

WHEREAS, the Application is related to applications C 140181 ZMM (L.U. No. 62), an amendment of the Zoning Map, Section No. 8c to change M1-5 (CL) and R8 (CL) districts to R9/C2-

5 (CL), and R8 (CL) to R8A (CL) districts; N 140182 ZRM (L.U. No. 63), an amendment to Zoning Resolution Section 96-00 Appendix A to include portions of the Project area in the Other Area - Western Subarea C2; Appendix F to include portions of the Project area in the Inclusionary Housing designated area; Section 96-31 to amend IH program to include low-, moderate and middle-income bands within R8A districts in the CL; Section 96-32 to amend IH program to include low-, moderate- and middle-income bands within R9 districts in the CL, and permit certain commercial and manufacturing uses in the Project area; and C 140183 ZSM (L.U. No. 64), a special permit pursuant to Section 74-74, Large-Scale General Development, to permit the transfer of floor area and height and setback waivers in a new Large-Scale General Development;

WHEREAS, the Decision is subject to review and action by the Council pursuant to Section 197-d(b)(1) of the City Charter;

WHEREAS, the Application and Decision are subject to review and action by the Council pursuant to Article 16 of the General Municipal Law of New York State;

WHEREAS, by letter dated June 13, 2014 and submitted June 16, 2014, the New York City Department of Housing Preservation and Development (HPD) submitted its requests respecting the Application;

WHEREAS, upon due notice, the Council held a public hearing on the Application and Decision on June 17, 2014;

WHEREAS, the Council has considered the land use and financial implications and other policy issues relating to the Application;

WHEREAS, the Council has considered the relevant environmental issues including the revised negative declaration (CEQR No. 13HPD106M) dated April 29, 2014 (the "Revised Negative Declaration");

RESOLVED:

The Council finds that the action described herein will have no significant impact on the environment as set forth in the Revised Negative Declaration.

Pursuant to Section 197-d of the New York City Charter, based on the environmental determination and the consideration described in the report (C 140185 HAM) and incorporated by reference herein, the Council approves the Decision of the City Planning Commission.

Page 3 of 3
C 140185 HAM
Res. No. 333 (L.U. No. 65)

The Council finds that the present status of the Project Area tends to impair or arrest the sound growth and development of the City of New York and that a designation of the Project as an urban development action area project is consistent with the policy and purposes stated in Section 691 of the General Municipal Law.

The Council approves the designation of the Project Area as an urban development action area pursuant to Section 693 of the General Municipal Law.

The Council approves the Project as an urban development action area project pursuant to Section 694 of the General Municipal Law, subject to the terms and conditions of the Project Summaries.

The Project shall be developed in a manner consistent with the three Project Summaries submitted to the Council by HPD for Project Site 1 Clinton Site 7 (New Construction); Project Site 2 Clinton Site 7 (New Construction); and Clinton Site 7 (Rehabilitation)", copies of which is attached hereto.

The Council approves the disposition of city-owned property located at 530-548 West 53rd Street (Block 1081, Part of Lot 1), unused development rights at 543-551 West 52nd Street (Block 1081, Part of Lot 1) and property located at 556-560 West 52nd Street (Block 1080, Part of Lot 103) to a developer selected by the New York City Department of Housing Preservation and Development.

Adopted.

Office of the City Clerk, }
The City of New York, } ss.:

I hereby certify that the foregoing is a true copy of a Resolution passed by The Council of The City of New York on June 26, 2014, on file in this office.

City Clerk, Clerk of The Council

<u>EXHIBIT C</u>

Mayoral Approval Document

(next page)

**THE MAYOR**
**CITY OF NEW YORK**

**April 29, 2015**

**Cal. No.  11**

**WHEREAS**, The Department of Housing Preservation and Development ("HPD") of the City of New York ("City") has proposed to the Council the sale of certain City-owned real property located in the Borough of Manhattan, City and State of New York, known as:

| Block | Lots |
|-------|------|
| 1081 | 50 (formerly p/o Lot 1) |
| 1081 | 1 (formerly p/o Lot 1) |

on the Tax Map of the City and known as Clinton Site 7 and by the street addresses 538-548 West 53rd St ("Project Site 1") and 530-536 West 53rd St ("Project Site 2") (collectively, "Disposition Land") in HPD's Mixed Income Program; and

**WHEREAS**, HPD also proposed the transfer of unused development rights associated with adjacent City-owned property located on Block 1081, Lot 80 (formerly p/o Lot 1), known by the street address 543-551 West 52nd Street ("Disposition Development Rights" ) (the Disposition Land and Disposition Development Rights shall be collectively referred to as the "Disposition Area"); and

**WHEREAS**, the Disposition Development Rights consists of approximately 1,540 square feet of unused zoning floor area; and

**WHEREAS**, the Council, pursuant to Article 16 of the General Municipal Law, has held a public hearing upon due notice and has (i) approved the designation of the Disposition Area as an Urban Development Action Area, and (ii) approved the proposed project ("Project") as an Urban Development Action Area Project, and

**WHEREAS**, the City Planning Commission duly filed with the Council and the affected Borough President its approval (Report No. C 140185 HAM, dated May 7, 2014) of the use and disposition of the Disposition Area in conformity with the land use review procedures required by Sections 197-c and 197-d of the Charter, which have been adhered to; and

**WHEREAS**, the action of the City Planning Commission has been approved or deemed approved by the Council pursuant to Section 197-d of the Charter; and

**WHEREAS**, pursuant to Article 8 of the Environmental Conservation Law, Part 617 of Volume 6 of the Codes, Rules and Regulations of the State of New York, Chapter 5 of Title 62 of the Rules of the City of New York, and Mayoral Executive Order No. 91 of August 24, 1977, as amended, HPD has issued a Negative Declaration which has been duly considered by the Mayor; and

**WHEREAS**, this approval replaces the prior approval for the Project dated November 24, 2014 (Cal. No. 5): and

**WHEREAS**, HPD has designated **Clinton West 53rd Housing Development Fund Corporation** ("Sponsor") as a qualified and eligible sponsor; and

**WHEREAS**, proposed agreements ("Land Disposition Agreements") between the City and Sponsor providing for the sale of the Disposition Area to Sponsor for the price of $1.00 per tax lot ("Disposition Price") and setting forth the terms and conditions for the development of the Disposition Land has been submitted to the Mayor; and

WHEREAS, immediately upon acquisition of the Disposition Area, Sponsor will sell Project Site 2 together with the Disposition Development Rights to 525 West 52 Property Owner LLC (the "LLC") for a purchase price of not less than $3,097,200 and will retain Project Site 1; and

WHEREAS, Sponsor will develop a project on Project Site 1 ("Site 1 Project") and the LLC will develop a project on Project Site 2 ("Site 2 Project") (the Site 1 Project and the Site 2 Project shall be collectively referred to as the "Project"); and

WHEREAS, it is anticipated that the Site 1 Project will contain approximately one building containing approximately 103 dwelling units and approximately 23,707 square feet of commercial space (consisting of approximately 11,361 square feet of commercial space at the ground level and approximately 12,346 square feet of commercial space at the cellar level); and

WHEREAS, it is anticipated that the Site 2 Project will contain approximately one building containing approximately 392 dwelling units and approximately 30,700 square feet of commercial space (consisting of approximately 22,700 square feet of commercial space at the ground level and approximately 8,000 square feet of commercial space at the cellar level); and

WHEREAS, it is anticipated that the Site 1 Project will also include 2,510 square feet of open space; and

WHEREAS, the Mayor has held a public hearing upon due notice published in The City Record, as required by Section 1802(6)(j) of the Charter, and in a newspaper of general circulation in New York City, as required by Section 695(2)(b) of the General Municipal Law; and

WHEREAS, as certified below, a duly noticed public hearing in the matter of the disposition, pursuant to Section 1802(6)(j) of the Charter, was held and closed by the Mayor on April 29, 2015 (Cal. No. 11). At such public hearing, no amendments were made and no testimony was offered. The relevant portion of the calendar is annexed hereto.

CERTIFICATION by the Mayor's Office Of Contract Services/Public Hearings Unit of the actions at and final disposition of the Real Property Public Hearing held on April 29, 2015 (Cal. No. 11).

_Jacqueline Haley_     _Hearing Secretary_     _April 29 2015_
NAME       TITLE       DATE

NOW, THEREFORE:

1.    The Mayor hereby approves the designation of Sponsor as a qualified and eligible sponsor.

2.    The Mayor hereby authorizes and approves the sale of the Disposition Area at the Disposition Price by negotiated sale, without public auction or sealed bids.

3.    The Mayor hereby approves the Land Disposition Agreements in substantially the form submitted and authorizes the subordination of the Land Disposition Agreements to the lien of mortgages securing loans financing the Project.

4.    The Mayor hereby authorizes any Deputy Mayor or the Commissioner of HPD to execute Land Disposition Agreements in substantially the forms submitted, when approved as to form by the Corporation Counsel, and directs the City Clerk or acting City Clerk to attest the same and to affix the seal of the City thereto.

5.    The Mayor hereby authorizes the City, as more particularly described in the Land Disposition Agreements, to indemnify Sponsor and its successors or assigns, holders of mortgages securing loans financing the Project and their successors or assigns, and title companies against any claims of interest in the Disposition Land, or any portion thereof, by the holders of any mortgages of record against the Disposition Land, or any portion thereof, at the time the City acquired title.

6.    The Mayor hereby authorizes any Deputy Mayor or the Commissioner of HPD to execute and deliver to Sponsor, or to an affiliate or successor of Sponsor controlled by the same principal(s) that controlled Sponsor, a deed or deeds of conveyance of title to the Disposition Land and a Zoning Lot Development Agreement or equivalent document for the transfer of the Disposition Development Rights, when approved as to form by the Corporation Counsel, at the Disposition Price, without public auction or sealed bids, and upon the terms and conditions contained in the Land Disposition Agreements, and directs the City Clerk or acting City Clerk to attest said deed and to affix the seal of the City thereto.

Date: 4·29, 201 5

By:

Paul Prissel, General Counsel
Mayor's Office of Contract Services

EXHIBIT D

Negative Declaration

(next page)



**Department of
Housing Preservation
& Development**
nyc.gov/hpd

VICKI BEEN
Commissioner
ERIC ENDERLIN
Acting Deputy Commissioner
JOHN E. GEARRITY
Assistant Commissioner

Office of Development
Building & Land Development
Services
100 Gold Street
New York, N.Y. 10038

## REVISED NEGATIVE DECLARATION

### (Supersedes Negative Declaration issued on November 26, 2013)

**Project Identification**

Location:                  525 W. 52nd Street & 540 W. 53rd Street, Manhattan
                           (Block 1080, Lots 10 and p/o 103)
                           (Block 1081, Lots 7501 and p/o 1)
CEQR Number:               13HPD106M
SEQRA Classification:      Unlisted

## Name and Description of Proposed Action

<u>525 W. 52nd Street / 540 W. 53rd Street Rezoning</u>:
The proposal involves an application by HPD, on behalf of the project sponsor, Clinton Housing Development Company (CHDC), for several discretionary actions (collectively referred to as the "proposed action") subject to City Planning Commission (CPC) approval, including the disposition of City-owned property, project approval and designation as an Urban Development Action Area Project (UDAAP), zoning map and text amendments, and a zoning special permit for the establishment of a Large Scale General Development (LSGD). For the LSGD application, 525 West 52 Property Owner LLC is a co-applicant.

In addition to the CPC approvals, HPD is seeking an amendment to a previously approved Mayoral Zoning Override. HPD may also fund construction activities at one or more sites and may consider approval of Affordable Housing Plans in connection with the Inclusionary Housing Program (IHP). The proposed action is intended to facilitate the development of three proposed mixed-use developments (collectively referred to as the "proposed project"), including a total of 530 dwelling units (DUs) of which 205 would be affordable, retail and community facility space, and the creation of three community gardens in the Clinton neighborhood of Manhattan, Community District 4.

A Negative Declaration was originally issued for the proposal on November 26, 2013. As reflected in the project description below, subsequent to the issuance of the November 26, 2013 Negative Declaration, a modification was made to the certified ULURP application resulting in an increase of 1,609 gross square feet (gsf) in the amount of retail floor area to be provided on the ground floor of the shared base of Development Sites 1 and 2, changing the total projected gross retail area generated by the proposed action from 57,100 gsf to 58,709 gsf. The change is attributable to an applicant error that undercounted the proposed retail floor area by approximately 409 sf on the ULURP application and a reconfiguration of approximately 1,200 gsf of space adjacent to the residential lobby that is now proposed to be occupied by a coffee bar or similar type of local retail use. This local retail use would primarily serve as an amenity/convenience to building residents, but would also be accessible, by means of an exterior door to West 53rd Street, to passersby and local residents outside of the building. This area had been previously identified as a residential amenity space such as a lounge. The modified proposal was assessed in a Technical Memorandum dated April 25, 2014, which concludes that the modified program would not result in new or different significant adverse impacts than previously disclosed.

*Revised Negative Declaration*
*CEQR No. 13HPD106M*
*525 W. 52nd Street / 540 W. 53rd Street Rezoning*
*Page 2*

The proposed zoning map amendment affects an area covering portions of two blocks, including part of Block 1080, which is bounded by W. 52nd Street to the north, Tenth Avenue to the east, W. 51st Street to the south, and Eleventh Avenue to the west, and part of Block 1081, which is bounded by W. 53rd Street to the north, Tenth Avenue to the east, W. 52nd Street to the south, and Eleventh Avenue to the west. The zoning change would generate development on three sites (referred to in the Environmental Assessment Statement as Sites 1, 2, and 3). Sites 1 and 2 are located on Block 1081. Site 1 is located on an approximately 17,171-square-foot (sf) portion of Lot 1, which is currently City-owned. Site 2 is located on an approximately 38,058 sf portion of Lots 1 and 7501, of which approximately 30,125 sf is privately owned by the co-applicant, 525 West 52 Property Owner LLC (Lot 7501) and the remaining 7,933 sf is currently City-owned (p/o Lot 1). Site 1 would be conveyed to CHDC by HPD. The approximately 7,933 sf portion of Site 2 that is City-owned would also be conveyed to CHDC. 525 West 52 Property Owner LLC would then acquire this property from CHDC. Block 1081 also includes other parcels (p/o Lot 1, Lot 60) that are part of the LSGD, but would not be developed. These parcels would transfer available development rights to Sites 1 and 2.

Sites 3 and 4 are both City-owned and located on Block 1080, Lot 103. Site 3 is located on an approximately 7,531 sf portion of Lot 103 and Site 4 is located on an approximately 10,042 sf portion of Lot 103. Site 4 is identified in the EAS as a Potential Development Site that could be developed at some point in the future pursuant to the proposed zoning. However, this site is City-owned and would require additional discretionary actions in order to be redeveloped and is not currently the subject of a redevelopment proposal. Accordingly, consistent with CEQR methodologies, the EAS analyzes Site 4 as a potential development site by analyzing it for site-specific effects but not for density-related effects. The proposed action would also create three new community gardens (described below), all of which would be publicly accessible.

The proposed action would generate a total of 530 DUs (including 205 affordable DUs), approximately 58,709 gross square feet (gsf) of retail space, approximately 4,162 gsf of community facility space, and approximately 50 accessory parking spaces on Sites 1, 2, and 3; as well as approximately 7,530 sf of new publicly accessible community garden space. The proposed developments on Sites 1, 2, and 3 are considered the Reasonable Worst Case Development Scenario (RWCDS) under Build conditions. Absent the proposed action, the co-applicant has indicated that Site 2 (under its ownership) would be redeveloped with a new as-of-right hotel with retail uses. In recent years there has been a strong trend of hotel development in M1-5 districts in Midtown West and Hell's Kitchen. The RWCDS for the proposed action assumes that Site 2 would be redeveloped with a new building maximizing the M1-5 permitted 5.0 FAR with approximately 172 guest rooms, approximately 30,125 gsf of local retail space, and approximately 34 accessory parking spaces.

The proposed action would facilitate two separate mixed use buildings on Sites 1 and 2 that would share an integrated first floor and cellar base. The shared space would enable the sites to accommodate vested commercial tenants who had a lease at the time the property was acquired by the City, and other local retail uses. The vested commercial tenants are described below. The proposed building on Site 1 would be a single 12-story tower and the proposed adjoining building on Site 2 to the east would have two towers ranging from 14 to 22 stories tall. Combined these two developments would include approximately 508 dwelling units, of which approximately 183 would be affordable housing units for low, moderate, and middle income residents; approximately 58,709 gsf of retail space; and approximately 50 accessory parking spaces in a below-grade garage.



Printed on paper containing 30% post-consumer material.

*Revised Negative Declaration*
*CEQR No. 13HPD106M*
*525 W. 52nd Street / 540 W. 53rd Street Rezoning*
*Page 3*

One of the commercial occupants in the Site 1/Site 2 integrated first floor base is expected to be LeNoble Lumber, a business formerly located in the area which relocated its lumber business to Long Island City, Queens approximately six years ago. While LeNoble would be permitted to operate a retail lumber store (Use Group 8) other retail uses are considered more likely given the area's growing residential population with demand for local retail services. In any event, lumber operations would be limited to a retail lumber store with operations consisting mainly of assembly and delivery of wood products purchased from suppliers. A lumber yard business with industrial uses such as wood processing would not be a permitted use under the proposed zoning. The other expected occupant in the Site 1/Site 2 commercial base would be Cybert Tire and Car Care, an existing auto repair business located at 726 Eleventh Avenue that would relocate to the new development.

Site 1 would also be located immediately east of an approximately 2,510 sf community garden expansion of Adam's Garden (referred to in the EAS as "Adam's Garden Expansion"). An approximately 2,510 sf community garden is also proposed to the south of Site 1 along the north side of W. 52nd Street (referred to in the EAS as the "W. 52nd Street Community Garden"). Both the Adam's Garden Expansion and the W. 52nd Street Community Garden would function as public open space. The site of the proposed W. 52nd Street Community Garden is currently used for construction staging (for an adjacent residential development at 533 W. 52nd Street) and will remain under City ownership following creation of the garden, which will be maintained by CHDC. The Adam's Garden Expansion site would be conveyed to CHDC or one of its affiliates as part of the proposed actions. Both of the proposed community gardens on Block 1081 would be maintained by CHDC (or its affiliated entities).

On Site 3, the proposed action would facilitate the conversion of an existing vacant, 5-story, approximately 30,000 gsf City-owned building (known as "Captain Post") into a mixed-use building with a sixth floor addition of approximately 2,000 gsf. This development would include approximately 4,162 gsf of community facility space on the first floor and cellar level and approximately 22 affordable dwelling units. Site 3 would not provide any accessory parking. Site 3 would also be located adjacent to an approximately 2,510-sf community garden (referred to in the EAS as the "Captain Post Community Garden") that would function as a public open space. Both Site 3 and the adjacent Captain Post Community Garden site would be conveyed to CHDC (or its affiliated entities) as part of the proposed action. The Captain Post Community Garden would be maintained by CHDC (or its affiliated entities).

The rezoning area is located within the Special Clinton District (CL). The proposed zoning map amendment would affect both blocks. On Block 1081, the midblock portion of the currently zoned M1-5 (CL) would be rezoned to R9/C2-5 (CL). In addition, the 25-foot wide westernmost portion of the existing R8A district on Block 1081 would be rezoned to R9/C2-5. Part of this area (encompassing Development Sites 1 and 2) would also be mapped with a C2-5 commercial overlay, extending the existing overlay located along Eleventh Avenue. With this change the existing M1-5 district on Block 1081 would be eliminated and the existing R8A would be reduced in size with a reduction of its frontage on W. 52nd Street from 150 feet to 125 feet. On Block 1080, the midblock portion of the block currently zoned R8 (CL) would be rezoned to R8A (CL). This would be located near, though not contiguous to the R8A district on the midblock portion of Block 1081 which would remain. The western boundary of this new R8A (CL) district on Block 1080 would be located 100



*Revised Negative Declaration*
*CEQR No. 13HPD106M*
*525 W. 52nd Street / 540 W. 53rd Street Rezoning*
*Page 4*

feet east of Eleventh Avenue. On the northern half of Block 1080, the eastern boundary of this new R8A (CL) district would be 225 feet east of Eleventh Avenue and on the southern half of Block 1080, the eastern boundary of this new R8A (CL) district would be 200 feet east of Eleventh Avenue.

The proposed zoning text amendments would include several changes to Article IX, Chapter 6 of the Zoning Resolution (ZR), which is the text for the Special Clinton District. In addition, portions of the rezoning area would be identified as Inclusionary Housing designated areas. The proposed zoning text amendments would:

> • Amend Appendix A, Special Clinton District Map in ZR Article IX, Chapter 6 to extend boundary of "Other Area – Western Subarea C2" to include part of the rezoning area on Block 1081. This would include a 400- foot long portion of Block 1081 bounded by a line 125 feet east of Eleventh Avenue and 275 west of Tenth Avenue. As such, this would apply to Block 1081, the portion of Lot 1 within the rezoning area and all of Lots 101 and 7501.

> • Amend Appendix F of the ZR to designate Inclusionary Housing areas. On Block 1080, the designated areas would include the portion of Lot 103 within the rezoning area and on Block 1081, the portion of Lot 1 within the rezoning area and all of Lots 101 and 7501.

> • Amend ZR §96-32 to allow the continuation of existing uses and previously approved expansion of specific uses related to certain title vested urban renewal uses and existing community facility and arts facilities within the new LSGD.

> • Amend ZR §96-31 and §96-32a to modify the Inclusionary Housing income bands to expand the definition of affordable housing to add eligibility of moderate and middle income floor area for the designated Inclusionary Housing area encompassing Block 1081, the portion of Lot 1 within the rezoning area and all of Lots 101 and 7501.

The proposed LSGD special permit would apply to proposed developments on Block 1081 (Sites 1 and 2). The LSGD special permit would allow for modification of certain bulk regulations. Pursuant to ZR §74-743(a)(1), this would permit distribution of total allowable floor area without regard for district boundaries and pursuant to ZR §74-743(a)(2) this would permit location of buildings without regard for applicable court and height and setback (including tower) regulations in ZR §23-62, §23 633, §35-24.

A Mayoral Zoning Override is being requested to accommodate the proposed density for Sites 1 and 2 in their shared zoning lot on Block 1081. The proposed override would modify a zoning override issued in 2011 that limited the use of floor area on the zoning lot containing Sites 1 and 2. The 2011 zoning override allowed the Park Clinton project (then known as Clinton Commons), to use 15,000 zoning square feet (zsf) in addition to the floor area generated by its zoning lot. The 2011 zoning override provided that, as HPD disposed of the remaining portions of the adjoining properties, i.e., the City-owned properties on Block 1081 that would be disposed as part of the proposed action, HPD would impose restrictions to ensure that those future projects contain approximately 15,000 zsf less floor area than what the zoning in effect would allow. The proposed modification would reduce this figure to 13,300 zsf, allowing an additional approximately 1,700 zsf of floor area to be used for Sites 1 and 2.



Printed on paper containing 30% post-consumer material.

*Revised Negative Declaration*
*CEQR No. 13HPD106M*
*525 W. 52nd Street / 540 W. 53rd Street Rezoning*
*Page 5*

According to the EAS, the project has a build year of 2016. Absent the proposed action, existing conditions on the City-owned sites would remain. As described above, the RWCDS for the proposed action assumes that privately owned Site 2 would be redeveloped with a new hotel building maximizing the M1-5 permitted 5.0 FAR with approximately 172 guest rooms, approximately 30,125 gsf of local retail space, and approximately 34 accessory parking spaces.

The proposed project would be implemented in conformance with the following provisions in order to ensure that there are no significant adverse impacts. The provisions are as follows:

Historic Architectural Resources
According to the Landmarks Preservation Commission (LPC) and the New York State Office of Parks, Recreation, and Historic Preservation (OPRHP), the existing integrated building located at 552 and 554 W. 53rd Street and known as "The Flats" and the "Old School", is eligible for listing on the State and National Register (S/NR) of Historic Places. This resource is located within 90 feet to the west of Development Site 1 (Block 1081, p/o Lot 1). In order to preclude construction-related impacts to this resource, CHDC would be responsible for implementing a Construction Protection Plan (CPP) during all excavation and construction activities at Development Site 1. The CPP would be developed in accordance with the requirements stipulated in the New York City Department of Buildings Technical Policy Procedure Notice #10/88 and LPC guidelines described in "Protection Programs for Landmarked Buildings." This measure would require consultation with and review and acceptance by LPC. In the event federal funding from HUD is utilized, approval from OPRHP, acting as the State Historic Preservation Officer (SHPO), would also be required. This measure would be required through the Land Disposition Agreement (LDA) between HPD and CHDC (or its affiliated entities).

Hazardous Materials
Blocks 1080 and 1081 currently include a mix of manufacturing and residential zoning districts and were historically zoned to allow light manufacturing uses. Due to historic uses of these and adjacent properties, HPD has determined that New York City Department of Environmental Protection (DEP)-approved Phase II testing and remediation (if warranted) would be required for Sites 1, 3, and the related community garden sites including Adam's Garden Expansion, the W. 52nd Street Garden, and the Captain Post Garden. Phase II testing would consist of soil, groundwater, and soil vapor sampling in accordance with a DEP-approved workplan and health and safety plan (HASP). The Phase II testing and remediation requirements for Site 2, which is privately owned by 525 West 52 Property Owner LLC, would be required through an (E) designation, as described below.

For the above referenced sites subject to disposition by HPD, the developer/sponsor would be responsible for providing a written report with findings and conclusions, and a summary of the subsurface investigation testing program and laboratory results to HPD. The report should clearly indicate if remediation is required and its extent. Upon completion of this review and if the document is acceptable to HPD, HPD will transmit these documents to DEP for review approval. If DEP determines that no further soil or groundwater testing or remediation is necessary, written notice shall be given by DEP that the site may be developed as proposed.



*Revised Negative Declaration*
*CEQR No. 13HPD106M*
*525 W. 52nd Street / 540 W. 53rd Street Rezoning*
*Page 6*

If DEP determines that remediation is warranted, the project sponsor is responsible to perform any and all remediation and construction activities in accordance with a Remedial Action Plan (RAP), Construction Health and Safety Plan (CHASP), and other necessary reports as approved by HPD and DEP. After completion of remediation, if required, the project sponsor shall provide a Site Closure report in accordance with DEP requirements to serve as proof that remediation is complete. If DEP accepts the closure report, DEP will notify HPD and the project sponsor that the proposed remediation work has been satisfactorily completed, and that the site is suitable for re-use/occupancy.

The New York State Department of Environmental Conservation (NYSDEC) may have jurisdiction over some or all activities. If it is determined that the NYSDEC has jurisdiction, the developer/sponsor is responsible to ensure a review of such plans is coordinated with the NYSDEC. If applicable, the developer/sponsor shall be responsible to provide copies of all correspondence with the State to HPD/DEP as it becomes available. If required, the developer shall provide any and all plans and reports generated in association with the requisite work to DEC. If applicable, the developer is responsible to ensure that a no further action determination is consistent with NYSDEC requirements.

For Sites 1, 3, the Adam's Garden Expansion, and the Captain Post Garden, the above measures would be required through provisions contained in the Land Disposition Agreements (LDA) between HPD and CHDC (or its affiliated entities). For the W. 52nd Street Garden, which would remain under City ownership but maintained by CHDC, the responsible party for ensuring compliance with these measures would be CHDC (or its affiliated entities).

For Site 2 (Block 1081, Lot 7501), which is privately owned by 525 West 52 Property Owner LLC, an (E) designation would be placed on the property in connection with the zoning map amendment to ensure that no significant adverse impacts associated with hazardous materials would result from the proposed project. The (E) designation program is administered by the NYC Office of Environmental Remediation (OER). The (E) designation mapped on Site 2 in connection with the proposed action indicates the presence of an environmental requirement which must be satisfied at OER prior to issuance of building permits from the Department of Buildings. The (E) designation number is E-326. The text for the (E) designation [E-326] for Site 2 is as follows:

### Task 1
**The applicant must submit to the NYC Office of Environmental Remediation (OER), for review and approval, a soil and groundwater testing protocol including a description of methods and a site map with all sampling locations clearly and precisely represented.**

**No sampling program may begin until written approval of a protocol is received from OER. The number and location of sample sites should be selected to adequately characterize site, the specific source of suspected contamination (i.e., petroleum based contamination and (i.e., petroleum based contamination and non-petroleum based contamination) and the remainder of the site's condition.**



Printed on paper containing 30% post-consumer material.

*Revised Negative Declaration*
*CEQR No. 13HPD106M*
*525 W. 52nd Street / 540 W. 53rd Street Rezoning*
*Page 7*

The characterization should be complete enough to determine what remediation strategy (if any) is necessary after review of the sampling data. Guidelines and criteria for choosing sampling sites and performing sampling will be provided by OER upon request.

Task 2
A written report with findings and a summary of the data must be presented to OER after completion of the testing phase and laboratory analysis for review and approval. After receiving such test results, a determination will be provided by OER if the results indicate that remediation is necessary. If OER determines that no remediation is necessary, written notice shall be given by OER.

If remediation is necessary according to test results, a proposed remediation plan must be submitted to OER for review and approval. The fee owner(s) of the lot(s) restricted by this (E) designation must perform such remediation as determined necessary by OER. After completing the remediation, the fee owner(s) of the lot restricted by this (E) designation should provide proof that the work has been satisfactorily completed.

An OER-approved construction-related health and safety plan would be implemented during excavation and construction activities to protect workers and the community from potentially significant adverse impacts associated with contaminated soil and/or groundwater. This Plan would be submitted to OER for review and approval prior to implementation.

Noise
Existing noise levels were obtained for each of three weekday noise analysis time periods – AM peak hour (8:00 AM to 10:00 AM), midday peak hour (12:00 PM to 2:00 PM), and PM peak hour (4:00 PM to 6:00 PM) on Wednesday, June 13, 2012 and Wednesday, July 25, 2012. The noise measurements were taken on both W. 52nd and W. 53rd streets at the approximate locations of future building facades for Sites 1, 2, and 3. Pursuant to Section 723 of the *2012 CEQR Technical Manual*, the measurement and reporting of noise levels was conducted in accordance with both CEQR and HUD noise guidelines.

Noise levels in the future with the proposed action (build year 2016) were calculated for the three peak analysis periods. The peak readings along W. 53rd Street and W. 52nd Street were calculated to be 77 dBA L10 (74 dB Ldn) and 74.6 dBA L10 (71.6 dB Ldn), respectively.

Based on these readings, and in order to maintain an interior noise level of 45 dBA under closed window conditions, the W. 53rd Street residential facade of Site 1 would be required to provide a minimum of 33 dBA of window-wall attenuation along with an alternate means of ventilation. For the ground floor retail uses on Site 1, the window-wall attenuation requirement would be 5 dBA less (28 dBA). For the W. 52nd Street residential and community facility facades of Site 3, the requirement would be a minimum of 31 dBA of window-wall attenuation along with an alternate means of ventilation.



Printed on paper containing 30% post-consumer material.

*Revised Negative Declaration*
*CEQR No. 13HPD106M*
*525 W. 52nd Street / 540 W. 53rd Street Rezoning*
*Page 8*

In the event federal funding from HUD (allocated through HPD) is sought in connection with construction activities on Sites 1 and 3, the window-wall attenuation requirements would be at least 31 dB for the W. 53rd Street residential facades of Site 1 (no requirement for ground floor retail) and at least 28 dB for the W. 52nd Street residential/community facility facades of Site 3.

Construction in accordance with the above specifications for Sites 1 and 3 would be required through the LDA between HPD and CHDC (or its affiliated entities) to ensure that no significant adverse noise impacts would occur.

For Site 2 (Block 1081, Lot 7501), which is privately owned by 525 West 52 Property Owner LLC, an (E) designation would be placed on the property in connection with the zoning map amendment to ensure that no significant adverse impacts associated with noise would occur. The (E) designation program is administered by the NYC Office of Environmental Remediation (OER). The (E) designation mapped on Site 2 in connection with the proposed action indicates the presence of an environmental requirement which must be satisfied at OER prior to issuance of building permits from the Department of Buildings. The (E) designation number is E-326. The text for the (E) designation [E-326] for Site 2 is as follows:

**In order to ensure an acceptable interior noise environment of 45 dBA under closed window conditions, future residential uses must provide a minimum of 33 dBA window-wall attenuation on the W. 53rd Street facade and a minimum of 31 dBA window-wall attenuation on the W. 52nd Street façade. If the project is federally assisted with funding from the U.S. Department of Housing and Urban Development (made available through HPD) the attenuation requirements would be 31 dB for the W. 53rd Street facade and 28 dB for the W. 52nd Street facade in order to satisfy HUD guidelines. In either instance, the attenuation requirements for ground floor commercial uses would be approximately 5 dB less than the residential requirement and an alternate means of ventilation would be required for the habitable space of all residential units along these facades.**

Stationary Source Air Quality

A screening analysis was performed pursuant to the *2012 CEQR Technical Manual* to assess the potential for air quality impacts from the boiler (heating and hot water systems) emissions from each development site. Based on the results of the screening analysis for Site 3 (Block 1080, p/o Lot 103), boiler equipment would be required to utilize natural gas fuel and the emission stack(s) must be located no more than 75 feet from the northern lot line facing West 52nd Street and no more than 30 feet from the eastern lot line facing Tenth Avenue. Construction in accordance with these specifications would be required through the Land Disposition Agreement between HPD and CHDC (or its affiliated entities) to ensure that no significant adverse stationary source air quality impacts would occur as a result of rehabilitation activities on Site 3.



Printed on paper containing 30% post-consumer material.

*Revised Negative Declaration*
*CEQR No. 13HPD106M*
*525 W. 52nd Street / 540 W. 53rd Street Rezoning*
*Page 9*

For Site 2 (Block 1081, Lot 7501), which is privately owned by 525 West 52 Property Owner LLC, an (E) designation would be placed on the property in connection with the zoning map amendment to ensure that no significant adverse impacts associated with stationary source air quality would occur. The (E) designation program is administered by the NYC Office of Environmental Remediation (OER). The (E) designation mapped on Site 2 in connection with the proposed action indicates the presence of an environmental requirement which must be satisfied at OER prior to issuance of building permits from the Department of Buildings. The (E) designation number is E-326. The text for the (E) designation [E-326] for Site 2 is as follows:

**Any new residential and/or commercial development must ensure that the fossil fuel-fired heating, ventilating and air conditioning equipment be fitted with low NOx (9 ppm) burners and fire only natural gas, and that the stack(s) shall be located no less than 15 feet from the eastern lot line facing Tenth Avenue and 43 feet from the northern lot line facing West 53rd Street, to avoid any potential significant adverse stationary source air quality impacts.**

**Statement of No Significant Effect:**
Pursuant to the CEQR rules adopted on June 6, 1991, Executive Order 91, HPD has completed its technical review of the Environmental Assessment Statement (EAS) dated November 25, 2013 and subsequent Technical Memorandum dated April 25, 2014 has determined that the proposed action will have no significant effect on the quality of the environment.

**Supporting Statement:**
The measures described above related to historic architectural resources, noise, stationary source air quality, and hazardous materials would be implemented as part of the proposed project on Sites 1, 3 and the community garden sites through the Land Disposition Agreement between HPD and the project sponsor, CHDC. Measures related to hazardous materials, noise, and stationary source air quality would be implemented as part of the proposed project on Site 2 (Block 1081, Lot 7501) through the mapping of an (E) designation [E-326] in connection with the proposed zoning changes.

The November 25, 2013 EAS and April 25, 2014 Technical Memorandum are on file with HPD and available for public review. This Revised Negative Declaration has been prepared in accordance with Article 8 of the Environmental Conservation Law 6NYCRR Part 617.

Patrick S. Blanchfield, AICP
Director of Environmental Planning
City of New York - HPD

April 29, 2014
Date

Printed on paper containing 30% post-consumer material.

**DEED**

**THE CITY OF NEW YORK**

**TO**

**CLINTON HOUSING DEVELOPMENT COMPANY, INC.**

Block(s)          Lot(s)
1081              1 (formerly part of Lot 1)

County:           New York

First American Title
Insurance Company
666 Third Avenue    5th fl
New York, N.Y. 10017
Phone: (212) 922-9700
Fax: (212) 922-0881

**RECORD AND RETURN TO:**

Department of Housing Preservation
    and Development
Office of Legal Affairs
100 Gold Street, Room 5-S4
New York, New York 10038

Regular UDAAP – generic form
Clinton Site 7 – Project 2

15

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2015050600577003001S8347

| **SUPPORTING DOCUMENT COVER PAGE** | | **PAGE 1 OF 1** |
|---|---|---|

**Document ID: 2015050600577003**   Document Date: 04-30-2015   Preparation Date: 05-06-2015
Document Type: DEED

**ASSOCIATED TAX FORM ID:**   2015043000031

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

RP - 5217 REAL PROPERTY TRANSFER REPORT                                2

**REAL PROPERTY TRANSFER REPORT**
STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES

# RP - 5217NYC

**FOR CITY USE ONLY**

| C1. County Code | | C2. Date Deed Recorded | / / |
|---|---|---|---|
| | | | Month  Day  Year |

C3. Book
OR
C5. CRFN | | | | | | | C4. Page | | |

## PROPERTY INFORMATION

**1. Property Location**   555   WEST 52ND  STREET          MANHATTAN          10019
STREET NUMBER    STREET NAME              BOROUGH           ZIP CODE

**2. Buyer Name**   CLINTON HOUSING DEVELOPMENT COMPANY, INC.
LAST NAME / COMPANY              FIRST NAME

LAST NAME / COMPANY              FIRST NAME

**3. Tax Billing Address**   Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
LAST NAME / COMPANY          FIRST NAME

STREET NUMBER AND STREET NAME          CITY OR TOWN          STATE   ZIP CODE

**4. Indicate the number of Assessment Roll parcels transferred on the deed**   1   # of Parcels OR ☐ Part of a Parcel

**4A.** Planning Board Approval - N/A for NYC
**4B.** Agricultural District Notice - N/A for NYC

Check the boxes below as they apply:
**6.** Ownership Type is Condominium   ☐
**7.** New Construction on Vacant Land   ☑

**5. Deed Property Size**   _____ FRONT FEET X _____ DEPTH   OR   _____ ACRES

**8. Seller Name**   THE CITY OF NEW YORK
LAST NAME / COMPANY              FIRST NAME

LAST NAME / COMPANY              FIRST NAME

**9. Check the box below which most accurately describes the use of the property at the time of sale:**

| A ☐ One Family Residential | C ☐ Residential Vacant Land | E ☑ Commercial | G ☐ Entertainment / Amusement | I ☐ Industrial |
|---|---|---|---|---|
| B ☐ 2 or 3 Family Residential | D ☐ Non-Residential Vacant Land | F ☐ Apartment | H ☐ Community Service | J ☐ Public Service |

## SALE INFORMATION

**14. Check one or more of these conditions as applicable to transfer:**

**10. Sale Contract Date**   4 / 30 / 2015
Month  Day  Year

**11. Date of Sale / Transfer**   4 / 30 / 2015
Month  Day  Year

**12. Full Sale Price** $ _____ 1

( Full Sale Price is the total amount paid for the property including personal property.
This payment may be in the form of cash, other property or goods, or the assumption of
mortgages or other obligations.)  *Please round to the nearest whole dollar amount.*

**13. Indicate the value of personal property included in the sale** $ _____

| A ☐ | Sale Between Relatives or Former Relatives |
|---|---|
| B ☐ | Sale Between Related Companies or Partners in Business |
| C ☐ | One of the Buyers is also a Seller |
| D ☑ | Buyer or Seller is Government Agency or Lending Institution |
| E ☐ | Deed Type not Warranty or Bargain and Sale (Specify Below ) |
| F ☐ | Sale of Fractional or Less than Fee Interest ( Specify Below ) |
| G ☐ | Significant Change in Property Between Taxable Status and Sale Dates |
| H ☐ | Sale of Business is Included in Sale Price |
| I ☐ | Other Unusual Factors Affecting Sale Price ( Specify Below ) |
| J ☐ | None |

## ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill

**15. Building Class**   D 9   **16. Total Assessed Value** (of all parcels in transfer)   1 3 1 8 1 4 0 0

**17. Borough, Block and Lot / Roll Identifier(s)** ( If more than three, attach sheet with additional identifier(s) )

MANHATTAN 1081 1

**CERTIFICATION**  I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

Clinton Housing Development Company, Inc

**BUYER'S ATTORNEY**

BUYER SIGNATURE                                    DATE

403 WEST 40TH STREET    Joe Restuccia.                    LAST NAME              FIRST NAME

STREET NUMBER        STREET NAME (AFTER SALE)        AREA CODE    TELEPHONE NUMBER

NEW YORK                                            City of New York **SELLER**
                                                    By: Housing Preservation + Development

CITY OR TOWN        STATE    ZIP CODE              SELLER SIGNATURE                    DATE
                    NY      10018                  Attorney for HPD

2015043000031201