# REGULATORY AGREEMENT

**AGREEMENT** made this 4th day of May, 2015, between **525 West 52 Property Owner LLC,** ("Owner LLC"), **525 West 52 LI Property Owner LLC,** ("AHO LLC"; Owner LLC and AHO LLC sometimes collectively referred to as "Applicant") each a New York limited liability company formed pursuant to the laws of the State of New York,  and each having an office at c/o Taconic Investment Partners, 111 Eighth Avenue, Suite 1500, New York, New York 10011, and the **City of New York** (the "City"), a municipal corporation acting by and through its **Department of Housing Preservation and Development** ("Department"), having an office at 100 Gold Street, Ninth Floor, New York, NY 10038.

**WHEREAS,** Owner LLC is the owner in fee simple of the premises located in the County of New York, City and State of New York, known as and by the street address 525 West 52nd Street, New York, NY, identified as Block 1081, Lot 1 (formerly known as part of lot 1) and Lot 16 (formerly known as Lots 1001-1008) on the Tax Map of the City (as improved pursuant to this Regulatory Agreement; collectively the "Premises"), more particularly described in Exhibit A attached hereto and made a part hereof, and intends to construct improvements on such Premises, some of which improvements will constitute Affordable Housing within the meaning of Section 23-911 of the New York City Zoning Resolution (the "Resolution") and the Inclusionary Housing Program Guidelines (the "Guidelines") (the Guidelines and Resolution are collectively referred to as the "Program"); and

**WHEREAS,** the Department has been duly authorized to administer the Program, including the execution of a Regulatory Agreement between the Department and Applicant for Floor Area Compensation under the Program (the "Agreement"); and

**WHEREAS,** Applicant has filed with the Department an Affordable Housing Plan (the "Plan") pursuant to Section 23-961(d) of the Resolution, attached hereto and made a part hereof as Exhibit B (the "Plan"), and the Department has evaluated and approved the Plan as such terms and requirements of the Plan are reflected in this Agreement; and

**WHEREAS,** Applicant intends to provide Low Income Floor Area  (as defined in Section 23-911 of the Resolution (the "Affordable Housing Units") to be affordable to and occupied by families having incomes equal to the Low Income Limit in order to enable one or more new multiple dwellings (the "Compensated Development(s)"), to be eligible under the Program for Floor Area Compensation pursuant to Section 23-952 (Inclusionary Housing designated areas) and 96-32 (i.e. Special Clinton  District) of the Resolution; and

**WHEREAS,** Owner LLC intends to enter into a lease, dated of even date herewith, to lease the Affordable Housing Units to AHO LLC ("AHO Lease"); and

**WHEREAS,** within eighteen (18) months of the date of this Agreement (the "Condominium Formation Date"), the AHO Lease shall be terminated, and Owner LLC shall record a declaration of condominium, (together with by-laws and other schedules attached thereto, as the same may be amended from time to time, (the "Declaration") with the Office of the City Register, which shall establish the building to be constructed on the Premises as a condominium (the "Condominium"); and

IH Agreement - R10 and Designated Areas

**WHEREAS**, the Condominium will consist of four (4) condominium units, including: (a) Residential Unit 1 which will contain seventy nine (79) Affordable Housing Units; (b) Residential Unit 2 which will contain three hundred twelve (312) market rate residential rental apartment units and one (1) superintendent's apartment unit and approximately 1,000 sq. ft. of commercial space (c) Commercial Unit 1 containing approximately 16,000 sq. ft. of retail and storage space, and (d) Commercial Unit 2 containing approximately 13,700 sq. ft. of retail and storage space.

**WHEREAS**, on the Condominium Formation Date, AHO LLC intends to own Residential Unit 1 and Owner LLC intends to own Residential Unit 2, Commercial Unit 1 and 2; and

**WHEREAS**, Residential Unit 1 will constitute Affordable Housing within the meaning of the Program;

**WHEREAS**, the parties hereto wish to enter into this Agreement to set forth the rights and obligations hereunder.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements herein contained, it is hereby agreed as follows:

1.      Capitalized terms not specifically defined herein shall have the meaning set forth in the Program.

2.      (i)      Applicant will create, in Residential Unit 1, through new construction seventy nine (79) Affordable Housing Units pursuant to the building plans submitted to and approved by the Department ("Building Plans"), located at the Premises (the "Building"). Attached hereto as part of Exhibit D, is list identifying each Affordable Housing Unit.

        (ii)     Owner LLC shall provide in the Declaration that the Owner LLC shall pay any and all carrying charges, including but not limited to tax obligations, for Residential Unit 1 that exceed the net rental income (rental income less operating expenses) allocable to such unit. Such payment may be in the form of a loan to the owner of Residential Unit 1, but may not encumber Residential Unit 1 nor give rise to any lien against any interest therein. Notwithstanding the foregoing, Owner LLC may enforce the aforesaid loan against the owner of Residential Unit 1, to the extent advances have been made under such loan or loans; provided however that such enforcement shall not be undertaken without the prior written consent of the Department. The Department's consent shall not be unreasonably withheld where the enforcement of the loan is being undertaken to facilitate the acquisition by Owner LLC of all or some of the interest in Residential Unit 1 and where such enforcement of the loan will not give rise to a lien or encumbrance against Residential Unit 1.

        (iii)    Prior to the recording of the Declaration with the Office of the City Register, Applicant shall submit the Declaration to the Department for its review and approval with respect to those provisions of the Declaration affecting Residential Unit 1, including, but not limited to, the provisions concerning carrying charges (collectively, the "Inclusionary Provisions"). Once so approved by the Department, Applicant shall not permit modification of the Inclusionary Provisions without the prior written consent of the Department. Upon Completion and after the Condominium has been established as approved by the Department, provided Owner LLC no longer owns the fee interest in Residential Unit 1, Owner LLC shall be subject only to Sections 2(ii), 5, 10, 12 and 18 of this Agreement.

IH Agreement - R10 and Designated Areas

> (iv)    In the event that the Declaration has not been recorded on or before the Condominium Formation Date, so long as the Department determines that Owner LLC is diligently pursuing the recording of the Declaration, the Department agrees that the Condominium Formation Date shall be extended for an additional six (6) month period.

3.    Residential Unit 1 will consist of seventy nine (79) Affordable Housing Units to be occupied by Low Income Households, as defined in the Resolution which will permit Floor Area Compensation in conformance with the Resolution.

4.    The authority pursuant to the Resolution to create additional Floor Area in Compensated Development(s), granted in accordance with this Agreement, may be transferred by Applicant or by whomever Applicant directs the Department, in writing, to receive such transfer authority, subject to the geographic and zoning limitations set forth in the Resolution and subject to the requirements of the Program.

5.    The parties hereto agree that the site of the subject Affordable Housing Units is eligible for the construction of Low Income Floor Area pursuant to the Program and the requirements of Sections 23-90 (Inclusionary Housing), inclusive of the Resolution and based on an opinion of counsel, the site meets the requirements of RPTL §421-a.  The parties also agree that Applicant shall complete the subject Affordable Housing Units application for tax exemption under the RPTL §421-a, unless the Department has waived, in writing, the necessity for such exemption.  The parties hereto further agree that (a) Applicant shall not permit the Building Plans to be professionally certified to the City of New York Department of Buildings ("DOB") and (b) Applicant shall submit such Building Plans to a DOB plan examiner for review, and (c) applicable zoning calculations also shall be approved by a DOB plan examiner, and (d) construction of Affordable Housing Units, as described in the request, is in accordance with the Guidelines, the Department's design guidelines and construction guidelines issued in conjunction with such design guidelines, and with the Building Plans, (which design and construction guidelines and Building Plans are collectively defined as "Construction Requirements").

Applicant shall complete the construction of the Affordable Housing Units within three (3) years from the date of this Agreement ("Completion Deadline").  The construction of the Affordable Housing Units shall be deemed complete upon the Department's issuance, for presentation to the DOB, of a Certificate of Completion of Affordable Housing Units in accordance with Section 9 of this Agreement ("Completion").

6.    This Agreement is subject to the Applicant's compliance with the requirements set forth in the Program.  The Department acknowledges that, as of the date of this Agreement, Applicant has satisfied applicable requirements set forth in Sections 23-90 (Inclusionary Housing), inclusive of the Resolution.

7.    Affordable Housing Units created pursuant to this Agreement will be occupied solely by tenants who are Low Income Households at the time of such tenant's Initial Occupancy of such housing and shall be operated as Affordable Housing for Low Income Households for the life of the increased Floor Area of the Compensated Development(s).  Such obligation shall run with the tax lot(s) within the zoning lot containing such Affordable Housing Units.

8.    (i)    The rents charged by AHO LLC for the Affordable Housing Units upon Rent-up of such units shall (a) not exceed the rents set forth in the schedule attached hereto as

Exhibit C, which have been established by the Department pursuant to Sections 23-961(b) of the Resolution, (b) be registered with the New York State Division of Housing and Community Renewal or any successor agency ("DHCR") and (c) thereafter shall be subject to Rent Stabilization for the term of this Agreement and upon termination of this Agreement in accordance with this Section 8(v).  AHO LLC shall register all Affordable Housing Units with DHCR upon the earlier to occur of: (A) the occupancy of the last remaining unit, or (B) one year from Completion Deadline, hereinafter (the "Rent-up Date").  If rents at Initial Occupancy and are tax credit rents, AHO LLC may register at Initial Occupancy, the Maximum Monthly Rent as the Rent Stabilization rent and the tax credit rents as a preferential rent.  Tenant leases must reflect that tenants will be charged the preferential rent in the manner required by the government body that issued the tax credits.

(ii)    Rents for existing tenants of Affordable Housing Units upon renewal of leases for such units or at any time during the term of the lease shall be the lesser of (a) the rent allowed by Rent Stabilization, or (b) the Maximum Monthly Rent for Low Income Households, or (c) for units rented to households with incomes, at Initial Occupancy, below the Low Income Limit, the last rent charged for such unit plus the percentage increase established by the Rent Guidelines Board or its successor entity at the time of such renewal or at any time during the lease.

(iii)   Upon rental of an Affordable Housing Unit that becomes vacant after Initial Occupancy, to a new tenant, the rent shall be the lesser of the rent allowed by Rent Stabilization or the Maximum Monthly Rent.

(iv)   Notwithstanding anything to the contrary contained herein, AHO LLC shall not utilize any exemption or exclusion from any requirement of Rent Stabilization to which AHO LLC might otherwise be or become entitled with respect to one or more Affordable Housing Units, including, but not limited to, any exemption or exclusion from the rent limits, renewal lease requirements, registration requirements, or other provisions of Rent Stabilization due to (i) the vacancy of a unit where the rent exceeds a prescribed maximum amount, (ii) the fact that tenant income and/or a unit's rent exceeds prescribed maximum amounts, (iii) the nature of the tenant, or (iv) any other factor.

(v)    In the event that the Affordable Housing Units are not located in the Compensated Development and the increased Floor Area of the Compensated Development generated by such Affordable Housing Units ceases to exist, the Affordable Housing Units shall continue to remain subject to Rent Stabilization so long as the existing tenants in occupancy remain tenants pursuant to the provisions of Rent Stabilization.

(vi)   AHO LLC shall grant all tenants the same rights that they would be entitled pursuant to Rent Stabilization.  In addition, AHO LLC shall register the Affordable Housing Units with DHCR pursuant to Rent Stabilization, and such units shall be subject to Rent Stabilization without regard to whether such Affordable Housing Units are statutorily subject to Rent Stabilization.  AHO LLC shall ensure that these rights are stated in each lease for an Affordable Housing Unit.  If any court declares that Rent Stabilization is statutorily inapplicable to an Affordable Housing Unit, such unit shall remain in Rent Stabilization in accordance with this Agreement and the lease for such Affordable Housing Unit for the remainder of the Regulatory Period.

IH Agreement - R10 and Designated Areas

9.    Applicant agrees not to request or accept a Certificate of Occupancy ("C of O") or a Temporary Certificate of Occupancy ("T C of O") for any portion of the Compensated Development that utilizes Floor Area Compensation until the Department issues a Certificate of Completion of Affordable Housing Units to such Compensated Development.

The Department shall issue a Certificate of Completion of Affordable Housing Units upon Applicant's compliance with the following requirements (a) though (n) of this Section (9):

(a)    (1) submission of proof that each Affordable Housing Unit that is not located in the portion of the Compensated Development that utilizes Floor Area Compensation, has received a C of O or a T C of O, and (2) where applicable each Affordable Housing Unit that is located in the portion of the Compensated Development that utilizes Floor Area Compensation has received certification from DOB that such Affordable Housing Unit is eligible to receive its C of O or T C of O upon the Department's issuance of Certificate of Completion of Affordable Housing Units;

(b)    at the discretion of the Department, performance by the Department of a site inspection which establishes to the satisfaction of the Department that (i) the Affordable Housing Units meet the requirements of Sections 23-96(b), (c) and (d) of the Resolution and (ii) the Building meets the requirements of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) and implementing regulations at 24 CFR part 8; and

(c)    funding of the Special Reserve Fund in accordance with Section 15 of this Agreement; and

(d)    submission of proof, satisfactory to the Department, that the Affordable Housing Units are being rented in accordance with Sections 8, 21 and 22 of this Agreement and that has entered into leases with tenants for at least 10% of the Affordable Housing Units in accordance with the Program, pursuant to which the tenants may begin occupancy upon the issuance of a C of O or T C of O; and

(e)    submission of certificates of insurance required by Section 12 of this Agreement with all premiums for the current year fully paid; and

(f)    submission on or after the date that DOB either certifies to the Department that DOB is prepared to issue the C of O or the T C of O for all of the Affordable Housing Units or that DOB has issued the C of O or the T C of O for all of the Affordable Housing Units, as the case may be, of (i) a policy of fee title insurance dated as of the date Owner LLC acquired title to the Building, or a title policy insuring the lien of mortgage of the primary Lender for the Building and/or the Premises or such Lender's credit enhancer, dated as of the date of the closing of the financing of such mortgage, will satisfy the foregoing, where such policy (a) has been issued by a title company in good standing licensed to issue title insurance in New York State and contains the Standard New York Endorsement (Owner's Policy) in substantially the form that appears as Exhibit E hereto, (b) such policy evidences fee simple ownership in Owner LLC and the absence of liens and other encumbrances on the Premises other than those approved by the

IH Agreement - R10 and Designated Areas

      Department, (ii) proof of payment of premiums therefor, and (iii) title continuations run by the title company from the date of the fee title policy to the date of submission of such title policy together with a letter from the title company confirming the absence of liens and encumbrances on the Premises other than those previously approved by the Department and mechanics liens which have been bonded; and

(g)     submission of an executed contract between the Department and the Administering Agent in accordance with <u>Section 11</u> of this Agreement; and

(h)     submission of a Memorandum of Regulatory Agreement, where applicable, and the Agreement stamped as recorded separately in the Office of the City Register in accordance with <u>Section 24</u> and <u>Section 29</u> respectively, of this Agreement; and

(i)     submission of proof that any required subordination and non-disturbance agreement ("Affordable Housing Subordination Agreement") was recorded immediately following execution thereof and that Applicant fully complied with the requirements of <u>Section 19</u> of this Agreement; and

(j)     submission of, (1) proof of registration of the building on the Premises that contains the Affordable Housing units and all occupied Affordable Housing Units with the DHCR, and, if the building is not fully occupied, an affidavit stating that Applicant shall register all remaining units as they become occupied; (2) proof that such building is entirely free of violations of record issued by any City or State agency pursuant to the Multiple Dwelling Law, the Building Code, the Housing Maintenance Code and the Program and (3) submission of an affidavit stating that Applicant shall complete multiple dwelling registration of the building on the Premises, that contains the Affordable Housing, in accordance with the New York City Housing Maintenance Code; and

(k)     certification that the representations, warranties and statements made by the Applicant that are contained in this Agreement and in any other documents executed in connection with this Agreement remain true and correct as of the date on which the foregoing conditions have been satisfied; and

(l)     submission of proof that the Building Plans were reviewed by a DOB plan examiner and submission of a zoning sheet with zoning calculations for the Affordable Housing Units approved by DOB after the issuance of one or more temporary certificates of occupancy for the Affordable Housing Units; the Department's issuance of the Certificate of Completion of the Affordable Housing Units shall be based upon such DOB approved calculations; and

(m)     where applicable, submission of proof of completion of all applications for tax exemptions and that Applicant has fully complied with <u>Section 5</u> of this Agreementl; and

(n)     compliance with all terms of this Agreement and the Program.

10.    <u>Warranties.</u> Applicant shall obtain and retain commercially reasonable warranties of the work on the Affordable Housing Units from the general contractor and all subcontractors

performing such work and, at the Department's request, shall submit such warranties for inspection.

11.  <u>Renting Affordable Housing Units.</u>  Owner LLC has contracted with Phipps Affordable Housing Administering Agent Corporation, a not-for profit organization qualified by the Department to participate in the Program, to act as Administering Agent for the Affordable Housing Units ("Administering Agent").  The Administering Agent shall ensure that Affordable Housing Units are rented at Rent-up and each subsequent vacancy, in compliance with the Plan and all of the requirements of the Program.  Within (60) sixty days of the Rent-up Date, the Administering Agent shall submit an affidavit to the Department attesting that the Monthly Rent registered and charged for each Affordable Housing Unit, complied with the Monthly Rent requirements for such unit, at Initial Occupancy.  Each year after Rent-up, in the month of March, the Administering Agent shall submit an affidavit to the Department attesting that each lease or sublease of an Affordable Housing Unit or renewal thereof, during the preceding year, complied with the applicable Monthly Rent requirements of the Program.  A contract between the Administering Agent and the Department ("Administering Agent Agreement") is attached and made a part hereof as <u>Exhibit F</u>.  The Department reserves the right to replace the Administering Agent in the event that the Affordable Housing Units are not managed and operated in compliance with the Program.

12.  <u>Insurance</u>.

    (a)  <u>Insurance</u>.

        (i)  Applicant shall obtain and maintain in force all-risk casualty insurance, including broad form extended coverage that, in the event of a casualty to the Building containing the Affordable Housing Units, will pay an amount of insurance equal to full replacement value of the Building containing the Affordable Housing Units.

        (ii)  Applicant shall obtain and maintain in force commercial general liability insurance and other insurance of commercially reasonable types and amounts with respect to the Building containing the Affordable Housing Units.

    (b)  <u>Casualty.</u>

        (i)  In the event of a casualty, Applicant and/or the Administering Agent shall promptly notify the Department thereof.  The Department agrees that, subject to the terms and conditions set forth in this <u>Section 12</u>, the proceeds of the insurance on the Premises may be utilized as determined by the lender or lenders participating in the financing of the Building (the "Financiers") in accordance with the documents governing such Financiers' loan(s), copies of which have been provided to the Department (the "Loan Documents").  Applicant shall promptly inform the Department of the disposition of such insurance proceeds.

        (ii)  (A) In the event of a partial casualty, to the extent that any additional Floor Area created pursuant to this Agreement continues to exist or is reconstructed after such casualty, the Affordable Housing Units shall be

IH Agreement - R10 and Designated Areas

reconstructed so as to maintain in the Building the same ratio of Affordable Housing to the additional Floor Area as existed prior to such casualty, notwithstanding the availability of, or priority of payment of, insurance proceeds, and the terms of this Agreement shall remain in full force and effect.

(B) If the Applicant and Financiers determine that due to the nature of the casualty and the condition of the remaining structure, it is not practicable to include the Affordable Housing Units as originally configured in the replacement building, the Affordable Housing Units may be reconstructed in a location other than the Premises in accordance with the requirements of this Agreement and the Program.

(iii)    In the event of a total casualty, where all additional Floor Area created pursuant to this Agreement ceases to exist and the Applicant elects not to utilize the additional Floor Area in the restored building, if any, then all proceeds shall be applied in accordance with the Loan Documents.

(iv)    Applicant agrees that if the Building containing the Affordable Housing Units is reconstructed as provided in Section 12(ii), then: (A) at such time as the restored portion of the Building or any new building is ready for occupancy, the Affordable Housing Units on each restored floor shall be made available for occupancy and re-rented concurrently with the market rate units on the same floor; (B) Applicant shall restore, repair, replace rebuild, alter or otherwise improve the Affordable Housing Units in accordance with this Agreement and the Program in effect as of the date hereof; (C) such construction shall be free of all violations under the New York City Building Code, the New York State Multiple Dwelling Law and the New York City Housing Maintenance Code and (D) Applicant shall, upon request of the Department, amend this Agreement to reflect any changes to the number, configuration or location of the Affordable Housing Units in any replacement building or off site location for the Affordable Housing Units made in accordance with this Section 12.

(v)    The Department acknowledges and agrees that Applicant has the right to require the Financiers under any current or future Mortgage to use the insurance proceeds for the rebuilding of the Premises (with certain protective procedures).

13.    Construction Monitoring.    The Department may monitor the construction of the Affordable Housing Units in any reasonable manner, including inspection of the Premises.  Upon request (a) Applicant shall give the Department notice of planning and construction progress meetings by telephone or in writing and (b) the Department may (i) participate in planning and construction progress meetings, (ii) review construction contracts, plans, specifications and materials samples and (iii) review proposed changes to the foregoing.  Applicant shall give to the Department (x) following the Department's request for any documents or materials pursuant to the preceding sentence, notice of proposed changes to such documents or materials, and (y) notice of any casualty to or other material event concerning the work on the Affordable Housing Units.

IH Agreement - R10 and Designated Areas

14.   Disclosure of Financial Arrangements.  Upon the request of the Department, Applicant shall fully disclose the financial terms and arrangements relating to the Affordable Housing Units and sale or use by Applicant of the Certificate of Completion of Affordable Housing Units.  In the event that the Department obtains information pursuant to this Section 14, the Department shall thereafter disclose such information to third parties only as required by law, except that such data may be used and disclosed without attribution to Applicant as part of an analysis of the Program.

15.   Special Reserve Fund.  Simultaneous with or prior to the issuance of a Certificate of Completion of Affordable Housing Units, AHO LLC will fund a special operating reserve fund (the "Special Reserve Fund") in the amount of either: (1) seventy-two thousand four hundred three dollars ($72,403) which represents $1.15 per square foot of Affordable Housing as stated in the architect self-certification submitted to the Department on December 8, 2014 (the "Architect Certification") or (2) if, in accordance with Section 9 (I), the DOB approves zoning calculations that differ from the Architect Certification, then $1.15 per square foot of Affordable Housing as stated in such DOB approved zoning calculations, which shall be placed in a blocked reserve account to be administered by the Department or its designee.  The Special Reserve Fund and the interest accrued thereon shall belong to the Affordable Housing Units and the owner of the Affordable Housing Units and shall be used solely for the benefit of the Affordable Housing Units.  The Special Reserve Fund is separate from the Building reserve fund built into the rent roll that will accumulate over time.  The proceeds of the Special Reserve Fund shall be available to pay for unanticipated increases in the cost of operating and maintaining the Affordable Housing Units (including, but not limited to, escalating real estate taxes), or for capital repairs or improvements, the cost of which cannot be covered by the Building's capital reserve fund.  Expenditures from the Special Reserve Fund shall be made solely at the discretion of the Department and may be made by the Department on behalf of Applicant.

On the last day of the New York State Housing Finance Agency ("HFA") regulatory restriction period, the Applicant shall deposit into the Special Reserve Fund an additional amount equal to $1.10 per square foot of the Affordable Housing plus interest, compounded from the date of the issuance of the Certificate of Completion of Affordable Housing Units until the date that is the last day of the HFA regulatory restriction period at a rate equal to the rate at which the initial deposit to the Special Reserve Fund earned interest.

If, the Department authorizes any expenditures to be made from the Special Reserve Fund, AHO LLC shall replenish the Special Reserve Fund in the amount of the total sum of all such authorized expenditures by applying the excess of collected rents over actual operating expenses until all such repayments have been made.  Such repayments into the Special Reserve Fund shall be made prior to the payment of any unpaid developer, syndication or partnership fees.  In addition, such repayments shall be supported by the most recent financial statements, an independent auditor's report and a rent roll for the Premises.  AHO LLC may choose to replenish such Special Reserve Fund on a calendar year basis or on a fiscal year basis.  In addition, upon sale, transfer or other disposition of the Affordable Housing Units or any interest therein, AHO LLC or owner as applicable, shall repay, in full, all amounts withdrawn from and owed to the Special Reserve Fund.

16.   Inspection.

525 West 52nd Street                                  9
Taconic

IH Agreement - R10 and Designated Areas

(a)    The Department shall have full authority to inspect the Premises without prior notice during business hours and AHO LLC and the Administering Agent shall cooperate fully with the Department in any such inspection. The Department shall have authority to inspect the Premises other than during business hours on three (3) days prior notice.

(b)    The Department shall have full authority to inspect the books and records of AHO LLC and the Administering Agent without prior notice during business hours and Applicant and the Administering Agent shall cooperate fully with the Department in any such inspection. Applicant and the Administering Agent shall furnish copies of all books and records to the Department, without cost to the Department, upon five (5) days prior written request.

17.    Operating Accounts.  AHO LLC shall provide the Department with the names and locations of all bank accounts established with respect to the management and operation of the Premises by AHO LLC (the "Operating Accounts"). All such accounts shall confer plenary authority on the Department to freeze such accounts, which authority the Department shall exercise subject to Section 18 of this Agreement. Furthermore, Applicant shall provide the Department with annual operating statements for the Affordable Housing Units.

18.    Remedies of the Department.

(a)    If Applicant violates any of the terms of this Agreement, or if any of the representations and warranties by Applicant set forth in Section 9(k) of this Agreement are determined to be false, then the Department may declare a default under this Agreement.

(b)    Upon declaration of a default under this Agreement, the Department shall give Applicant and the Administering Agent, as applicable, notice thereof by facsimile, hand delivery or reputable overnight courier and a reasonable opportunity to cure (if such default can be cured). If at the end of the cure period (if any) the default has not been cured, then the Department shall provide Applicant and the Administering Agent, as applicable, notice thereof and shall provide Applicant and the Administering Agent an opportunity to be heard on not less than three (3) days prior written notice. Following such hearing, upon probable cause to believe that a default has occurred under this Agreement, the Department may (i) assume responsibility for management of the Premises directly or through a third party designated by it, (ii) freeze the Operating Accounts, (iii) seek specific performance of this Agreement or an injunction against its violation, (iv) have a receiver of its choice appointed during the pendency of any litigation, (v) seek monetary damages against Applicant and/or (vi) terminate this Agreement with respect to any portion of the Affordable Housing for which a Certificate of Completion of Affordable Housing Units pursuant to Section 9 has not been issued. In the event that the Department exercises its rights under clause (ii) of this Section 18(b) and provided that there are sufficient funds in the Operating Accounts then the Department shall use the funds in such Operating Accounts to make payments due under the Loan Documents for previously approved mortgage loans of the Applicant and to pay for reasonable and customary operating expenses for the Premises.

IH Agreement - R10 and Designated Areas

(c)     If an Affordable Housing Subordination Agreement has been entered into by a lender ("Financier") in accordance with Section 19 of this Agreement, the Department shall terminate this Agreement at anytime prior to the issuance of the Certificate of Completion of Affordable Housing Units at the request of such Financier, or its successors or assigns, if such Financier, its successors or assigns, commences foreclosure proceedings or receives a deed in lieu of foreclosure with respect to the mortgage loan that is the subject of such Affordable Housing Subordination Agreement. If the Department terminates this Agreement pursuant to this Section 18(c): (1) all benefits granted pursuant to this Agreement to any project will be revoked and (2) this Agreement shall become null and void. The Department shall provide written confirmation of termination in recordable form upon the written request of Applicant and/or Financier.

(d)     The remedies set forth in Section 18(b) shall be cumulative with any other remedies available to the Department at law or in equity and exercise of one or more remedies set forth in Section 18(b) shall not limit the Department in the exercise of one or more other remedies set forth therein or otherwise available to the Department at law or in equity.

(e)     The Department may exercise the remedies set forth in Section 18(b) without the notice, opportunity to cure or hearing provided therein if the Department determines that exigent circumstances require immediate action to protect the Premises or the tenants thereof. The Department will provide notice and a hearing as provided in Section 18(b) promptly following exercise of its remedies as set forth therein.

(f)     If the Department elects to assume responsibility for management of the Premises pursuant to this Section 18, Applicant shall (and shall cause the Administering Agent to immediately deliver possession of the Premises and all books and records kept in connection therewith to the Department or the person designated by the Department and shall cooperate fully in effectuating the smooth transfer of management and control of the Premises, including execution of written instruments and provision of notice to third parties.

(g)     Applicant hereby grants the Department and its designees an irrevocable license to enter and remain on the Premises for the purpose of managing such Premises as provided in this Section 18.

19.    Debt Restrictions.

(a)     Initial Debt: In accordance with Section 23-93 of the Resolution, Applicant shall not mortgage or otherwise encumber the Affordable Housing Units or this Agreement without the prior written consent of the Department. Furthermore, in the event that the Department consents to a mortgage loan, the lender must enter into an Affordable Housing Subordination Agreement with the Department in form and substance satisfactory to the Department, that subordinates the loan to all of the terms and conditions of this Agreement, substantially in the form annexed hereto as Exhibit K (the "Affordable Housing Subordination Agreement"). Immediately following execution of the Affordable Housing Subordination Agreement, applicant shall cause such Agreement to be recorded

against the Affordable Housing Units in the Office of the City Register for the county in which the Premises are located, and shall pay all required fees and taxes in connection therewith.

Attached hereto as Exhibit J is the development budget approved by the Department setting forth the sources and uses of financing for the construction of the Affordable Housing. Provided the lender holding a mortgage that secures such debt enters into the Affordable Housing Subordination Agreement in form and substance satisfactory to the Department and the Department receives proof of recordation of such Agreement immediately following execution thereof, the Department approves such debt ("Initial Debt").

(b)     Subsequent Debt: Notwithstanding anything to the contrary contained herein, on or after the date of issuance of the Certificate of Completion of Affordable Housing Units in accordance with Section 9 of this Agreement, (or, if more than one Certificate of Completion of Affordable Housing Units is issued, on or after the date of the final Certificate of Completion of Affordable Housing Units) Applicant shall not mortgage or otherwise encumber the Affordable Housing Units or this Agreement with debt other than any Initial Debt approved by the Department and any modifications of same unless, (1) AHO LLC has notified the Department of such debt; (2) the lender is a local, state, or federal agency, savings bank, commercial bank, life insurance company, public real estate investment company, pension fund, Federal National Mortgage Association ("Fannie Mae"), Federal Home Loan Mortgage Corporation ("Freddie Mac"), or other lender approved by the Department, (3) if the debt service coverage ratio is less than 1.1, AHO LLC has obtained the prior written consent of the Department, and (4) if such debt is a new indebtedness and/or a new mortgage, the lender enters into a Affordable Housing Subordination Agreement with the Department which AHO LLC shall cause to be recorded against the Affordable Housing Units immediately following execution thereof in the Office of the City Register for the county in which the Premises are located.

20.    Plan Certification. Following the execution of this Agreement, the Department will, upon the request of Applicant, certify that the Plan has been submitted and approved, and is in compliance with the Program.

21.    Marketing of Affordable Housing Units. The Administering Agent shall be required to market the Affordable Housing Units in accordance with the Program. Furthermore, each lease for a Affordable Housing Unit shall provide that such lease may be terminated and such tenant may be evicted if such tenant falsely or fraudulently certifies income or household composition to the Administering Agent.

22.    Initial Occupancy Certification. Within sixty (60) days following the Rent-up Date, the Administering Agent shall submit to the Department an affidavit attesting that each Household occupying an Affordable Housing Unit complied, at Initial Occupancy, with the annual income eligibility requirements of the Program and that the Monthly Rent registered and charged for each Affordable Housing Unit, complied with the Monthly Rent requirements for such unit, at Initial Occupancy. In accordance with C.F.R. 5.609 or any successor regulations, "Annual Income" shall mean the anticipated total income from all sources to be received by the household head and spouse and by each additional member of the household, including all net income derived from assets, for the

twelve (12) month period following the initial determination of income. The Administering Agent also shall retain all records and documents relating to income determination for a minimum of three (3) years after the date a tenant commences occupancy in a Affordable Housing Unit.

23.  Successors and Assigns.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assignees.  Prior to issuance of the Certificate of Completion of Affordable Housing Units Applicant shall not sell, transfer or otherwise dispose of the Affordable Housing Units without prior approval from the Department.  Before any sale, transfer, or other disposition of the Affordable Housing Units, the Applicant shall require the subsequent purchaser or transferee to assume in writing, Applicant's obligations and duties under this Agreement, pursuant to an Assignment and Assumption Agreement in form and substance satisfactory to the Department, which shall be in recordable form and shall provide the Department with a executed copy of such assumption agreement and proof of recordation thereof.

24.  Condominium Conversion.  Nothing in this Agreement shall prohibit the Applicant from subdividing  the Building on the Premises into condominium units (the" Condominium Units"'), so long as (a) the Department approves any condominium documents, including, but not limited to, the condominium declaration and by-laws, necessary to effectuate such subdivision of the Building, (b)  the Condominium Units meet the requirements of Section 339-m of the Real Property Law, (c) the Department determines that the Affordable Housing Units will be operated pursuant to the requirements set forth in the Agreement and the Program, and (d) the Memorandum of Regulatory Agreement in the form attached hereto as Exhibit L has been recorded against the Affordable Housing Unit prior to receipt of a Certificate of Completion of Affordable Housing Units in accordance with Section 9 of this Agreement.

25.  Investigation Clause.  Applicant and Administering Agent shall be bound by and comply with the provisions of the Investigation Clause annexed hereto as Exhibit I.

26.  Modifications.

(a)  No provision of this Agreement may be extended, modified, waived or terminated orally, but only by an instrument in writing signed by the party against whom enforcement is sought.

(b)  Applicant and/or the Administering Agent, as applicable, shall comply with all modifications to Program reporting requirements as set forth in the Guidelines, of which the Applicant shall be deemed to have constructive notice, concerning: (i) the type of documents to be retained; (ii) the length of time for which such documents must be retained; and (iii) the form and method of submitting such documents to the Department.

27.  Counterparts.  This Regulatory Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall be deemed one and the same instrument.

28.  Notices.  All notices, approvals, requests, waivers, consents or other communications given or required to be given under this Agreement shall be in writing and sent or transmitted as follows:

IH Agreement - R10 and Designated Areas

If to Applicant:           Taconic Investment Partners
111 Eighth Avenue, Suite 1500
New York, New York 10011
Attention: Charles Bendit and Andrew Zlotnick

with a copy to:

Katten Muchin Rosenman LLP
575 Madison Avenue
New York, New York 10022
Attention: Martin Siroka, Esq.

If to the Department:         Department of Housing Preservation and Development
100 Gold Street
New York, NY 10038
Attn: Assistant Commissioner for Housing Incentives
Facsimile (212) 863-5899

with a copy to:          Department of Housing Preservation and Development
100 Gold Street
New York, NY 10038
Attn: General Counsel
Facsimile (212) 863-8375

Notices must be hand delivered, transmitted via facsimile or sent by certified or registered U.S. mail, return receipt requested or overnight delivery by a reputable national carrier. Notice shall be deemed to have been given upon (i) delivery if sent by hand delivery or U.S. mail, and (ii) confirmed receipt, if sent by facsimile, to both the addressee and the person entitled to receive a copy thereof. Each party named above may designate a change of address by written notice to all of the other parties

29.    <u>Recordation.</u>

(a)     Applicant shall cause this Agreement to be recorded against the Premises prior to commencement of construction, in the Office of the City Register for the County in which the Premises are located and shall pay all required fees and taxes in connection therewith.

(b)     If the conversion of the Building to Condominium Units, including without limitation the filing of the Declaration and other actions required to complete such conversion of the Building have not occurred prior to the time when this Agreement is required to be recorded against the Premises, or any other document required hereunder to be recorded against the Premises, then, notwithstanding anything contained herein to the contrary, this Agreement and such other documents shall be recorded against the entire Premises. In such event, at the time of condominium conversion, provided that the Memorandum of Regulatory Agreement referred to in <u>Section 24</u> is recorded simultaneously therewith, the Department will release the Condominium Units other than the Condominium Unit containing the Affordable Housing.

525 West 52nd Street
Taconic

IH Agreement - R10 and Designated Areas

30.    <u>More Restrictive Provisions Govern.</u> If the Affordable Housing Units are also subject to that certain Regulatory Agreement between Applicant and HFA, dated as of the date hereof and intended to be submitted to the Office of the City Register simultaneously herewith for recording therein (the "HFA Regulatory Agreement"), then (a) in the event of any conflict or ambiguity between the provisions of this Agreement and the HFA Regulatory Agreement, the more restrictive the applicable provisions of the Agreement and the HFA Regulatory Agreement shall govern and (b) nothing herein, including but not limited to, <u>Sections 7, 8 and 11</u> hereunder, shall limit, reduce or affect in any way the duration of any restrictions imposed on the operation or occupancy of the Affordable Housing Units by this Agreement.

31.    <u>Owner/Lessor's Consent and Agreement.</u>

(a)    The AHO Lease provides that Applicant's interest in the Premises, and any and all mortgages, whether now or in the future encumbering the Premises, shall be subject and subordinate to the terms of this Agreement during the term of this Agreement.

(b)    Owner LLC, as landlord under the AHO Lease, consents to the execution and delivery of this Agreement by AHO LLC and to all of the terms and conditions of this Agreement.

(c)    If the AHO Lease is terminated prior to the Condominium Formation Date and prior to the expiration of this Agreement and Owner LLC then leases the property to a third party (the "New Lease"), the New Lease and any amendments thereto shall also be subject to and subordinate to this Agreement and the tenant under the New Lease shall be required to assume the ongoing obligations of Owner LLC under the AHO Lease pursuant to this Agreement for the balance of the term of this Agreement.

(d)    If, prior to the Condominium Formation Date and prior to the expiration of this Agreement the AHO Lease or the New Lease is terminated and Owner LLC does not enter into a New Lease, Owner LLC shall assume all of the ongoing obligations of AHO LLC, as applicable, pursuant to this Agreement for the balance of the term of this Agreement.

(e)    In the event of any conflict between the terms of the Agreement and the AHO Lease, the terms of this Agreement shall govern.

(f)    Owner LLC agrees that it will promptly execute and deliver to the Department such documents as the Department may reasonably request to effectuate the terms of this Agreement, including but not limited to, a subordination, non-disturbance and attornment agreement(s) subordinating the Owner LLC's interest under the Lease to this Agreement.

32.    <u>Choice of Law.</u> The covenants, provisions and terms of this Agreement and the rights and obligations of the parties hereunder shall be governed by and construed and interpreted in accordance with the laws of the State of New York, and shall be binding upon and inure to the benefit of Applicant, the Department, and their respective successors, transferees, and assigns.

33.    <u>Termination</u>

IH Agreement - R10 and Designated Areas

(a)  The Department reserves the right to terminate this Agreement with notice, in accordance with <u>Section 28</u>, to Applicant if Applicant does not complete the Affordable Housing Units by the Completion Deadline.

(b)  Applicant may terminate this Agreement with notice, in accordance with <u>Section 28</u>, to the Department at any time prior to the issuance of the Certificate of Completion of Affordable Housing Units.

[SIGNATURES FOLLOW]

525 West 52nd Street
Taconic

IH Agreement - R10 and Designated Areas

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

**DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT OF THE CITY OF NEW YORK**

By: _____

Louise Carroll
Assistant Commissioner, Inclusionary Housing

**525 WEST 52 PROPERTY OWNER LLC**,
By:    525 West 52nd Street Development LP,
its sole member

By:    Taconic 525 West 52 Street GP LLC,
its general partner

By: _____
Name:
Title:

**525 WEST 52 PROPERTY LI OWNER LLC**,

By:    525 West 52nd Street Development LP,
its sole member

By:    Taconic 525 West 52 Street GP LLC,
its general partner

By: _____
Name:
Title:

APPROVED AS TO
FORM BY STANDARD
TYPE OF CLASS FOR USE
UNTIL   April 30, 2015

/s/ Howard Friedman
Howard Friedman
Acting Corporation Counsel

525 West 52nd Street                 17
Taconic

IH Agreement - R10 and Designated Areas

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

**DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT OF THE CITY OF NEW YORK**

By: _____
　　　Louise Carroll
　　　Assistant Commissioner, Inclusionary Housing

**525 WEST 52 PROPERTY OWNER LLC,**
By:　525 West 52nd Street Development LP,
　　　its sole member

By:　Taconic 525 West 52 Street GP LLC,
　　　its general partner

By: _____
　　　Name: Andrew Zlotnick
　　　Title: Authorized Signatory

**525 WEST 52 PROPERTY LI OWNER LLC,**

By:　525 West 52nd Street Development LP,
　　　its sole member

By:　Taconic 525 West 52 Street GP LLC,
　　　its general partner

By: _____
　　　Name: Andrew Zlotnick
　　　Title: Authorized Signatory

APPROVED AS TO
FORM BY STANDARD
TYPE OF CLASS FOR USE
UNTIL　April 30, 2015

/s/ Howard Friedman
Howard Friedman
Acting Corporation Counsel

525 West 52nd Street
Taconic

IH Agreement - R10 and Designated Areas

STATE OF NEW YORK   )
                    ) SS:
COUNTY OF NEW YORK)


On this 23rd day of April, 2015, before me, the undersigned, a Notary Public in and for said State, personally appeared **Louise Carroll**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to in the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

Olga Friedman
Notary Public, State of New York
Reg. No. 02FR6214194 New York County
Comm. Exp. 11-30-20___ 17


STATE OF NEW YORK)
                 ) SS:
COUNTY OF         )


On this _____ day of _____, 2015, before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to in the within instrument and acknowledged to me that [s]he executed the same in [her]his capacity, and that by [her]his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC


STATE OF NEW YORK)
                 ) SS:
COUNTY OF         )


On this _____ day of _____, 2015, before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to in the within instrument and acknowledged to me that [s]he executed the same in [her]his capacity, and that by [her]his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC


525 West 52nd Street
Taconic

IH Agreement - R10 and Designated Areas

STATE OF NEW YORK    )
                     ) SS:
COUNTY OF NEW YORK)

On this _____ day of _____, 2015, before me, the undersigned, a Notary Public in and for said State, personally appeared **Louise Carroll**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to in the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

STATE OF NEW YORK)
                 ) SS:
COUNTY OF New York

On this 30 day of April, 2015, before me, the undersigned, a Notary Public in and for said State, personally appeared Andrew Zlotnick personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to in the within instrument and acknowledged to me that [s]he executed the same in [her]his capacity, and that by [her]his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC
STEPHANIE LYNN TUMSUDEN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01TU6252488
Qualified in Suffolk County
My Commission Expires December 05, 20 15

STATE OF NEW YORK)
                 ) SS:
COUNTY OF New York)

On this 30 day of April, 2015, before me, the undersigned, a Notary Public in and for said State, personally appeared Andrew Zlotnick, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to in the within instrument and acknowledged to me that [s]he executed the same in [her]his capacity, and that by [her]his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC
STEPHANIE LYNN TUMSUDEN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01TU6252488
Qualified in Suffolk County
My Commission Expires December 05, 20 15

## EXHIBIT A

### Property Description

All those certain plots, pieces and parcels of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, in the City and State of New York, designated as:

| Block(s) | Lot(s) |
|----------|--------|
| 1081 | 1 * |
|  | 16 ** |

\* formerly known as part of lot 1
\*\* formerly known as Lots 1001-1008

County:    New York

Block 1081, Lot 16 is also described as:

ALL THAT PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF MANHATTAN, COUNTY, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF WEST 52ND STREET, DISTANT 275 FEET WESTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE NORTHERLY SIDE OF WEST 52ND STREET WITH THE WESTERLY SIDE OF TENTH AVENUE;

RUNNING THENCE NORTHERLY PARALLEL WITH THE WESTERLY SIDE OF TENTH AVENUE, 200 FEET 10 INCHES TO THE SOUTHERLY SIDE OF WEST 53RD STREET;

THENCE WESTERLY ALONG THE SOUTHERLY SIDE OF WEST 53RD STREET, 150 FEET;

THENCE SOUTHERLY AND PARALLEL WITH TENTH AVENUE, 200 FEET 10 INCHES TO THE NORTHERLY SIDE OF WEST 52ND STREET; AND

THENCE EASTERLY ALONG THE NORTHERLY SIDE OF WEST 52ND STREET, 150 FEET TO THE POINT OR PLACE OF BEGINNING.

Block 1081, Lot 16 and Lot 1 are also described as:

OVERALL DESCRIPTION OF BLOCK 1081 OF LOT 1 AND LOT 16 (FOR TRANSACTION PURPOSES
ONLY (PARCELS G & F1) (FOR INFORMATION ONLY - LOT 1 AND LOT 16)

ALL THAT PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH
OF MANHATTAN, COUNTY, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS
FOLLOWS:

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF WEST 52ND STREET, DISTANT
275 FEET

WESTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE NORTHERLY SIDE OF
WEST 52ND STREET WITH THE WESTERLY SIDE OF TENTH AVENUE;

RUNNING THENCE NORTHERLY PARALLEL WITH THE WESTERLY SIDE OF TENTH AVENUE, 200
FEET 10 INCHES (200.83 FEET) TO THE SOUTHERLY SIDE OF WEST 53RD STREET;

THENCE WESTERLY ALONG THE SOUTHERLY SIDE OF WEST 53RD STREET, 229 FEET;

THENCE SOUTHERLY AND PARALLEL WITH WESTERLY SIDE OF TENTH AVENUE, 100 FEET 5
INCHES (100.42 FEET) TO THE CENTERL LINE OF THE BLOCK BETWEEN THE NORTHERLY SIDE
OF WEST 52ND STREET AND THE SOUTHERLY SIDE OF WEST 53RD STREET;

THENCE EASTERLY ALONG SAID CENTER LINE OF THE BLOCK AND PARALLEL WITH THE
NORTHERLY SIDE OF WEST 52ND STREET, 79 FEET;

THENCE SOUTHERLY AGAIN PARALLEL WITH WESTERLY SIDE OF TENTH AVENUE, 100 FEET 5
INCHES (100.42 FEET) TO THE NORTHERLY SIDE OF WEST 52ND STREET;

THENCE EASTERLY, ALONG THE NORTHERLY SIDE OF WEST 52ND STREET, 150 FEET TO THE
POINT OR PLACE OF BEGINNING.

Together with the benefits of that certain Light and Air Easement Agreement made by and between Clinton Housing Development Company, Inc. and 525 West 52nd Property Owner LLC dated 4/30/3015 and being duly recorded in the Office of the City Register, New York County.

IH Agreement - R10 and Designated Areas

# EXHIBIT B
# AFFORDABLE HOUSING PLAN

**THE CITY OF NEW YORK**
**DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT**
OFFICE OF NEIGHBORHOOD STRATEGIES
100 GOLD STREET, NINTH FLOOR
NEW YORK, NEW YORK 10038
(212) 863-8228

**AFFORDABLE HOUSING PLAN APPLICATION PURSUANT**
**TO THE INCLUSIONARY HOUSING PROGRAM**

1.  **Name of Applicant:** 525 West 52 Property Owner LLC & 525 West 52 LI Property Owner LLC

     Address: c/o Taconic Investment Partners
     111 Eighth Avenue, Suite 1500
     New York, NY 10011
     Phone: 212-220-9945
     Fax: 212-220-9949
     Email: cbendit@tacon.com

2.  **Name of Owner (if different):** Same as Applicant

     Address: _____
     _____
     _____
     Phone: _____
     Fax: _____
     Email: _____

3.  **Name of Administering Agent:** Phipps Affordable Housing Administering Agent Corporation

     Address: 445 East 68th Street
     New York, NY 10065

     Phone: 212-249-3797
     Fax: _____
     Email: jperrella@phippsny.org

4.  **Name of General Contractor:** Gilbane Building Company

1

Address: Wall Street Plaza 88 Pine Street, 27th Floor

New York, NY 10005

Phone: 212-312-1600

Fax:

Email: WJGIII@GilbaneCo.com

5. **Name of Architect:** Gary Handel

Firm: Handel Architects LLP

Address: 120 Broadway

6th Floor

New York, NY 10271

Phone: 212-595-4112

Fax:

Email: ghandel@handelarchitects.com

6. **Name of Attorney:** Albert Fredericks

Firm: Kramer Levin Naftalis & Frankel LLP

Address: 1777 Avenue of the Americas

New York, NY 10036

Phone: 212-715-7835

Fax: 212-715-8159

Email: afredericks@kramerlevin.com

7. **Address of the Affordable Housing Units:**

Street Address: 525 West 52nd Street

Borough: Manhattan

Block(s): 1081          Lot(s): Lot 16 and p/o Lot 1    (to become Lot 1)

2

CB: 4 _____

8. **Inclusionary Housing District of Affordable Housing Units:**

☐ R10 Inclusionary     ■ IH Designated Area (insert ZR section reference): Special Clinton

(e.g., §23-952, §98-26, §62-352, etc.)

■ Special District     Yes (insert name): Special Clinton     ☐ No
☐ Other (please explain): _____

*If R10 Inclusionary, is project privately financed?*

☐ Yes   ☐ No

9. **If publicly financed, list all sources of governmental assistance, including lower income housing tax credits, bond financing, and land disposition programs:**

HFA tax exempt bond financing _____

Low income housing tax credits _____

10. **Type of Project (check all that apply):**

A.

| |
|---|
| ☒ NEW CONSTRUCTION |
| ☐ PRESERVATION |
| ☐ SUBSTANTIAL REHABILITATION |

B.

| |
|---|
| ☒ ON-SITE |
| ☐ OFF-SITE |

C. Inclusionary Units

| |
|---|
| ☒ RENTAL |
| ☐ HOMEOWNERSHIP |

D. Non-Inclusionary Units

| |
|---|
| ☒ RENTAL |
| ☐ HOMEOWNERSHIP |

E.

| | |
|---|---|
| TOTAL # OF UNITS: | 392 |
| TOTAL # OF IH UNITS: | 79 |
| TOTAL # OF SUPER'S UNITS: | 1 |

3

**11. Income Distribution of Affordable Housing Units**

79 _____ Number of low-income units (equal to or less than 80% AMI)

_____ Number of moderate-income units (equal to or less than 125% AMI), if any

_____ Number of middle-income units (equal to or less than 175% AMI), if any

**12.    Tax Exemption To Be Requested:** Section 421-a

**13.    Authorized Signature of Applicant:** _____    Date: 4/17/15

**Print Name:** Chris Balestra

4

IH Agreement - R10 and Designated Areas

**EXHIBIT C
SCHEDULE OF RENTS**

525 West 52nd Street (aka Taconic Site 7)                    Exhibit C

**Inclusionary Housing Units --Rents\***

| | # Units | AMI Level | Preferential Rent\*\* | Legal Regulated Rent\*\*\* |
|---|---|---|---|---|
| Studio | 19 | 60% AMI | $816 | $1,109 |
| 1 Bdrm | 39 | 60% AMI | $877 | $1,190 |
| 2 Bdrm | 21 | 60% AMI | $1,065 | $1,440 |
| **Total** | **79** | | | |

\*Tenants are responsible for paying gas and electricity.

\*\*Initial Preferential Rents may increase or decrease as determined by HFA; however, Preferential Rents shall not exceed the Legal Regulated Rent.

\*\*\*The maximum Legal Regulated Rent is 30% of 80% of the Income Index as defined in the New York City Zoning Resolution.

**525 West 52nd Street (aka Taconic Site 7)**

Total Units: 392
Inclusionary Housing Units: 79

Exhibit C

| Expenses* | Total Expenses |
|---|---|
| Toal Payroll & Benefits | $1,247,000 |
| Total Utility Expenses | $841,000 |
| Total Maintenance Expenses | $541,000 |
| Total Insurance Expenses | $196,000 |
| Total Marketing Expenses | $119,000 |
| Total Administrative Expenses | $98,000 |
| Management Fee | $570,400 |
| Capital Reserves | $98,000 |
| Real Estate Taxes** | $600,000 |
| **Total Expenses** | **$4,310,400** |

*The expenses reflect the overall 525 West 52nd Street project underwriting submitted by the applicant.

** Taxes and RPTL Section 421-a tax exemption are based on estimates provided by Applicant.

IH Agreement - R10 and Designated Areas

# EXHIBIT D
## LIST OF AFFORDABLE HOUSING UNITS

**525 West 52nd Street (aka Taconic Site 7)**                              **Exhibit D**

**Apartments***

### North Tower

| Apt # | Bdrms |
|-------|-------|
| 205N | 0BR |
| 207N | 1BR |
| 210N | 0BR |
| 213N | 2BR |
| 302N | 1BR |
| 305N | 0BR |
| 307N | 1BR |
| 310N | 0BR |
| 313N | 2BR |
| 316N | 1BR |
| 402N | 1BR |
| 405N | 0BR |
| 407N | 1BR |
| 410N | 0BR |
| 413N | 2BR |
| 416N | 1BR |
| 502N | 1BR |
| 505N | 0BR |
| 507N | 1BR |
| 510N | 0BR |
| 513N | 2BR |
| 516N | 1BR |
| 602N | 1BR |
| 605N | 0BR |
| 607N | 1BR |
| 610N | 0BR |
| 613N | 2BR |
| 616N | 1BR |

| Apt # | Bdrms |
|-------|-------|
| 702N | 1BR |
| 707N | 1BR |
| 710N | 0BR |
| 713N | 2BR |
| 716N | 1BR |
| 802N | 1BR |
| 807N | 1BR |
| 813N | 2BR |
| 816N | 1BR |
| 902N | 1BR |
| 907N | 1BR |
| 913N | 2BR |
| 916N | 1BR |
| 1007N | 1BR |
| 1013N | 2BR |
| 1016N | 1BR |
| 1113N | 2BR |
| 1116N | 1BR |
| 1213N | 2BR |
| 1216N | 1BR |
| 1408N | 2BR |
| 1411N | 1BR |
| 1510N | 1BR |
| 1610N | 1BR |
| 1709N | 1BR |
| 1803N | 0BR |
| 1903N | 0BR |
| 2003N | 0BR |

### South Tower

| Apt # | Bdrms |
|-------|-------|
| 301S | 2BR |
| 302S | 0BR |
| 310S | 1BR |
| 401S | 2BR |
| 402S | 0BR |
| 410S | 1BR |
| 501S | 2BR |
| 502S | 0BR |
| 510S | 1BR |
| 601S | 2BR |
| 602S | 0BR |
| 610S | 1BR |
| 701S | 2BR |
| 702S | 0BR |
| 710S | 1BR |
| 801S | 2BR |
| 810S | 1BR |
| 901S | 2BR |
| 910S | 1BR |
| 1001S | 2BR |
| 1010S | 1BR |
| 1101S | 2BR |
| 1110S | 1BR |

### IH Unit Summary

| Unit Type | Units |
|-----------|-------|
| Studio | 19 |
| 1 Bdrm | 39 |
| 2 Bdrm | 21 |
| Total | 79 |

### Super's Unit

| Apt # | Bdrms |
|-------|-------|
| 308S | 2BR |

*Note: Location of units shown by marketing floors: There is no 13th floor for marketing purposes.*

IH Agreement - R10 and Designated Areas

**EXHIBIT E**
**STANDARD NEW YORK ENDORSEMENT**
**(OWNER'S POLICY)**

1. The following is added to the insuring provisions on the face page of this policy:

"___. Any statutory lien for services, labor or materials furnished prior to the date hereof, and which has now gained or which may hereafter gain priority over the estate or interest of the insured as shown in Schedule A of this policy."

2. Exclusion Number 5 is deleted, and the following is substituted:

5. Any lien on the Title for real estate taxes, assessments, water charges or sewer rents imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as Shown in Schedule A.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.
IN WITNESS WHEREOF, _____Insurance Company of New York has caused this Endorsement to be signed and sealed on its date of issue set forth herein.

DATED:


COUNTERSIGNED_____
                    Authorized Signatory


                                        _____Insurance Company

                    BY:_____


525 West 52nd Street                    23
Taconic

IH Agreement - R10 and Designated Areas

**EXHIBIT F**
**ADMINISTERING AGENT AGREEMENT**
**INCLUSIONARY HOUSING PROGRAM**

IH Agreement - R10 and Designated Areas

## Administering Agent Agreement
## Inclusionary Housing Program

AGREEMENT made as of May 4, 2015, between the **Phipps Affordable Housing Administering Agent Corporation** ("Administering Agent"), having an office at 445 East 68th Street, New York NY 10065, and the **Department of Housing Preservation and Development** ("Department"), having an office at 100 Gold Street, Ninth Floor, New York, NY 10038.

WHEREAS, **525 West 52 Property Owner LLC**, ("Owner LLC"), **525 West 52 LI Property Owner LLC** ("AHO LLC"; together with Owner, LLC, collectively, "Owner") has executed a Regulatory Agreement with the Department, to create seventy nine (79) Affordable Housing Units of located at 525 West 52nd Street, New York, NY, in Manhattan (the "Affordable Housing Units") in accordance with <u>Section 23-90</u> (Inclusionary Housing), inclusive of the Zoning Resolution ("Resolution") and with the Inclusionary Housing Guidelines ("Guidelines"); and

WHEREAS, Administering Agent has agreed to ensure that the Affordable Housing Units are rented in compliance with the Agreement at Rent-up and each subsequent vacancy and has signed an agreement with the Applicant to that effect; and

WHEREAS, Administering Agent has been qualified to act as an Administering Agent by the Department;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, it is hereby agreed that Administering Agent will assume the ongoing responsibility for insuring that each Affordable Housing Unit is rented and upon vacancy re-rented in compliance with the Regulatory Agreement. In addition, the Administering Agent shall (1) maintain records setting forth the facts that form the basis of any affidavit submitted to the Department; (2) maintain such records as the Department may require at the Administering Agent's office or other location approved by the Department; and (3) make all records and facts of the operation of the Administering Agent available for the Department's inspection.

Notwithstanding any other remedy contained herein, the Department may commence an action against Administering Agent to require specific performance of Administering Agent's obligations herein. Department reserves the right to replace Administering Agent in the event that the Affordable Housing Units are not rented at the Rent-up Date and each subsequent vacancy thereafter in compliance with the Program.

This Administering Agent Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall be deemed one and the same instrument.

[NO FURTHER TEXT APPEARS ON THIS PAGE]

525 West 52nd Street
Taconic

IH Agreement - R10 and Designated Areas

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

**Department of Housing Preservation and Development of the City of New York**

BY: _____
    Louise Carroll
    Assistant Commissioner,
    Inclusionary Housing

**Phipps Affordable Housing Administering Agent Corporation**

BY: _____
    Name:
    Title:

525 West 52nd Street
Taconic

IH Agreement - R10 and Designated Areas

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

**Department of Housing Preservation and Development of the City of New York**

BY: _____

Louise Carroll
Assistant Commissioner,
Inclusionary Housing

**Phipps Affordable Housing Administering Agent Corporation**

BY: _____

Name: Robert Pigott
Title: VP/General Counsel

525 West 52ⁿᵈ Street
Taconic

26

IH Agreement - R10 and Designated Areas

STATE OF NEW YORK   )
                    ) SS:
COUNTY OF NEW YORK)


On this 30th day of April, 2015, before me, the undersigned, a Notary Public in and for said State, personally appeared **Louise Carroll**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to in the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

Olga Friedman
Notary Public, State of New York
Reg. No. 02FR6214194 New York County
Comm. Exp. 11-30-20


STATE OF NEW YORK)
                 ) SS:
COUNTY OF        )


On this _____ day of _____, 201_, before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to in the within instrument and acknowledged to me that [s]he executed the same in [her]his capacity, and that by [her]his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.


_____
NOTARY PUBLIC

525 West 52nd Street
Taconic

IH Agreement - R10 and Designated Areas

STATE OF NEW YORK   )
                    ) SS:
COUNTY OF NEW YORK)

On this _____ day of _____, 2015, before me, the undersigned, a Notary Public in and for said State, personally appeared **Louise Carroll**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to in the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

STATE OF NEW YORK)
                 ) SS:
COUNTY OF New York)

On this _6_ day of _March_, 2015 before me, the undersigned, a Notary Public in and for said State, personally appeared _James Pigott_ (personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to in the within instrument and acknowledged to me that [s]he executed the same in [her]his capacity, and that by [her]his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

LOIS P.H. GROSVENOR
Notary Public State of New York
ID NO. 01GR6131294
Qualified in Manhattan County
Commission Expires August 1, 2017

525 West 52nd Street
Taconic                    27

IH Agreement - R10 and Designated Areas

# EXHIBIT G
## INTENTIONALLY OMITTED

IH Agreement - R10 and Designated Areas

# EXHIBIT H
## MEMORANDUM OF REGULATORY AGREEMENT

**THIS MEMORANDUM OF REGULATORY AGREEMENT** made this _____ day of _____, 2015, by **525 West 52 Property Owner LLC**, ("Owner LLC"), **525 West 52 LI Property Owner LLC**, ("AHO LLC"; Owner LLC and AHO LLC sometimes collectively referred to as "Applicant") each a New York limited liability company formed pursuant to the laws of the State of New York, and each having an office at c/o Taconic Investment Partners, 111 Eighth Avenue, Suite 1500, New York, New York 10011

WITNESSETH THAT:

1. Owner LLC is the owner in fee simple of the premises located in the County of New York, City and State of New York, known as and by the street address 525 West 52nd Street, New York, NY, identified as Block 1081, Lot 1 (formerly known as part of lot 1) and Lot 16 (formerly known as Lots 1001-1008) on the Tax Map of the City (the "Premises"), more particularly described in <u>Exhibit A</u> attached hereto and made a part hereof,

2. The Applicant has covenanted and agreed for and on behalf of itself, its successors, assigns, heirs, grantees and lessees, which covenants shall be covenants running with the land to provide Affordable Housing on the Premises in accordance with the Regulatory Agreement ("Regulatory Agreement"), dated as of May 4, 2015 among Owner LLC and AHO LLC and the City of New York, a municipal corporation acting through its Department of Housing Preservation and Development ("HPD") and recorded in the Office of the City Register for New York County on _____ as CFRN _____, the provisions of which are by this reference made a part hereof and <u>Section 23-90</u> (Inclusionary Housing), inclusive of the Resolution.

3. The Regulatory Agreement and the covenants therein, shall run with the land that constitutes the Premises in accordance with the terms therein.

4. This Memorandum of Regulatory Agreement is intended to provide constructive notice of the existence and terms of the Regulatory Agreement and in no way modifies or amends the Regulatory Agreement.  If any provisions of this Memorandum of Regulatory Agreement conflict with the Regulatory Agreement, the terms of the Regulatory Agreement shall prevail**.** The Applicant at its sole cost and expense shall cause this Memorandum of Regulatory Agreement to be recorded against each tax lot within the zoning lot containing the Affordable Housing whether or not such tax lot existed at the time the Regulatory Agreement was recorded.

NO FURTHER TEXT

IN WITNESS WHEREOF, this Memorandum of Regulatory Agreement has been executed as of the date first set forth above.

IH Agreement - R10 and Designated Areas

UNIFORM ACKNOWLEDGEMENTS

STATE OF NEW YORK   )
                    ) SS:
COUNTY OF NEW YORK)

On this _____ day of _____, 201_, before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to in the within instrument and acknowledged to me that [s]he executed the same in [her]his capacity, and that by [her]his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

525 West 52nd Street                    30
Taconic

IH Agreement - R10 and Designated Areas

# EXHIBIT I
# INVESTIGATION CLAUSE

(a) The parties to this Agreement agree to cooperate fully and faithfully with any investigation, audit or inquiry conducted by a State of New York (State) or City of New York (City) governmental agency or authority that is empowered directly or by designation to compel the attendance of witnesses and to examine witnesses under oath, or conducted by the Inspector General of a governmental agency that is a party in interest to the transaction, submitted bid, submitted proposal, contracts, lease, permit, or license that is the subject of the investigation, audit or inquiry.

(b) If any person who has been advised that his or her statement, and any information from such statement, will not be used against him or her in any subsequent criminal proceeding refuses to testify before a grand jury or other governmental agency or authority empowered directly or by designation to compel the attendance of witness and to examine witnesses under oath concerning the award of or performance under any transaction, agreement, lease, permit, contract, or license entered into with the City, the State or any political subdivision or public authority thereof, or the Port Authority of New York and New Jersey, or any local development corporation within the City, or any public benefit corporation organized under the laws of the State of New York, or;

(c) If any person refuses to testify for a reason other than the assertion of his or her privilege against self-incrimination in an investigation, audit or inquiry conducted by a City or State governmental agency or authority empowered directly or by designation to compel the attendance of witness and to take testimony under oath, or by the Inspector General of the governmental agency that is a party in interest in, and is seeking testimony concerning the award of, or performance under, any transaction, agreement, lease, permit, contract, or license entered into with the City, the State, or any political subdivision thereof or any local development corporation within the City, then;

(d) The commissioner or agency head whose agency is a party in interest to the transaction, submitted bid, submitted proposal, contract, lease, permit, or license shall convene a hearing upon not less than five (5) days written notice to the parties involved to determine if any penalties should attach for the failure of a person to testify.

(e) If any non-governmental party to the hearing requests an adjournment, the commissioner or agency head who convened the hearing may, upon granting the adjournment, suspend any contract, lease, permit, or license pending the final determination pursuant to paragraph (g) below without the City incurring any penalty or damages for delay or otherwise.

(f) The penalties which may attach after a final determination by the commissioner or agency head may include but shall not exceed:

   (1) The disqualification for a period not to exceed five (5) years from the date of an adverse determination for any person, or any entity of

525 West 52nd Street
Taconic

which such person was a member at the time the testimony was sought, from submitting bids for, or transacting business with, or entering into or obtaining any contract, lease, permit or license with or from the City; and /or

(2) The cancellation or termination of any and all such existing City contracts, leases, permit, or licenses that the refusal to testify concerns and that have not been assigned as permitted under this agreement, nor the proceeds of which pledged, to an unaffiliated and unrelated institutional lender for fair value prior to the issuance of the notice scheduling the hearing, without the City incurring any penalty or damages on account of such cancellation or termination; moneys lawfully due for goods delivered, work done, rentals, or fees accrued prior to the cancellation or termination shall be paid by the City.

(g) The commissioner or agency head shall consider and address in reaching his or her determination and in assessing an appropriate penalty the factors in paragraphs (1) and (2) below.  He or she may also consider, if relevant and appropriate, the criteria established in paragraphs (3) and (4) below in addition to any other information which may be relevant and appropriate:

(1) The party's good faith endeavors or lack thereof to cooperate fully and faithfully with any governmental investigation or audit, including but not limited to the discipline, discharge, or disassociation of any person failing to testify, the production of accurate and complete books and records, and the forthcoming testimony of all other members, agents, assignees or fiduciaries whose testimony is sought.

(2) The relationship of the person who refuses to testify to any entity that is a party to the hearing, including, but not limited to, whether the person whose testimony is sought has an ownership interest in the entity and/or the degree of authority and responsibility the person has within the entity.

(3) The nexus of the testimony sought to the subject entity and its contracts, leases, permits or licenses with the City.

(4) The effect a penalty may have on an unaffiliated and unrelated party or entity that has a significant interest in an entity subject to penalties under (f) above, provided that the party or entity has given actual notice to the commissioner or agency head upon the acquisition of the interest, or at the hearing called for in (d) above gives notice and proves that such interest was previously acquired.  Under either circumstance the party or entity must present evidence at the hearing demonstrating the potential adverse impact a penalty will have on such person or entity.

525 West 52nd Street
Taconic

32

IH Agreement - R10 and Designated Areas

(h)

    (1) The term "license" or "permit" as used herein shall be defined as a license, permit, franchise or concession not granted as a matter of right.

    (2) The term "person" as used herein shall be defined as any natural person doing business alone or associated with another person or entity as a partner, director, officer, principal or employee.

    (3) The term "entity" as used herein shall be defined as any firm, partnership, corporation, association, or person that receives moneys, benefits, licenses, leases, or permits from or through the city or otherwise transacts business with the City.

    (4) The term "member" as used herein shall be defined as any person in association with another person or entity as a partner, officer, principal or employee.

(i) In addition to and notwithstanding any other provisions of this Agreement the Commissioner or agency head may in his or her sole discretion terminate this Agreement upon not less than three (3) days written notice in the event the contractor fails to promptly report in writing to the Commissioner of Investigation of the City of New York any solicitation of money, goods, requests for future employment or other benefit or thing of value, by or on behalf of any employee of the City or other person, firm, corporation or entity for any purpose which may be related to the procurement or obtaining of this Agreement by the Contractor, or affecting the performance of this Agreement.

525 West 52nd Street
Taconic

IH Agreement - R10 and Designated Areas

**EXHIBIT J**
**DEVELOPMENT BUDGET**

**525 West 52nd Street (aka Taconic Site 7)**                    Exhibit J

Total Units: 392
Inclusionary Housing Units: 79

**Sources & Uses\***

| Construction & Permanent Sources | Amount | Per Unit |
|---|---|---|
| Tax-Exempt Bonds | $66,400,000 | $169,388 |
| Taxable Bonds | $133,600,000 | $340,816 |
| Developer Equity | $132,195,177 | $337,233 |
| **Total Sources** | **$332,195,177** | **$847,437** |

| Uses | Amount | Per Unit |
|---|---|---|
| Land Cost | $89,046,725 | $227,160 |
| Other Acquisition Cost | $14,078,275 | $35,914 |
| Hard Costs | $188,109,235 | $479,870 |
| Soft Costs | $25,824,520 | $65,879 |
| Financing Fees | $15,136,422 | $38,613 |
| **Total Uses** | **$332,195,177** | **$847,437** |

\*The expenses reflect the overall 525 West 52nd Street project underwriting submitted by the applicant.

IH Agreement - R10 and Designated Areas

**EXHIBIT K**
**FORM OF AFFORDABLE SNDA**

**THIS SUBORDINATION AND NON-DISTURBANCE AGREEMENT** ("Agreement"), made as of this __ day of_____, 20__, by and among **NEW YORK STATE HOUSING FINANCE AGENCY**, a corporate governmental agency established pursuant to Article III of the New York State Private Housing Finance Law, constituting a public benefit corporation, having an office at 641 Lexington Avenue, New York, NY 10022 ("HFA), , [_____], _____, banking corporation, having an office at_____,("Bank") *or* [acting in its capacity as administrative agent for the equal and ratable benefit of itself, acting in its individual capacity, and any other lender which after the date hereof becomes a "Co-Lender" (together, the "Co-Lenders") pursuant to that certain *[Letter of Credit, Reimbursement, Disbursement and Security Agreement]* of even date herewith (the "Administrative Agent")**]**, [_____], a _____ having an office at _____ ("Trustee")**]** (HFA, Bank and Trustee, are collectively sometimes hereinafter referred to as the "Mortgagees" or "Lenders"), in favor of **THE CITY OF NEW YORK**, (the "City") a municipal corporation acting by and through its **DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT**, having an office at 100 Gold Street, New York, New York 10038 ("HPD").

**WHEREAS**, HFA holds a certain mortgage or mortgages dated of even date herewith, as follows: (a) [Construction Loan Mortgage, Assignment of Leases and Rents and Security Agreement, dated of even date herewith], in the principal amount of $_____ the "Mortgage"); (b) [describe all subordinate mortgages, if any], in the principal amount of $_____ and each made by [Borrower], a _____ ("Applicant" or "Borrower") [and describe Owner if other than Applicant ("Owner")] in favor of Lender to secure, among other things, the aggregate principal sum of _____ DOLLARS AND _____ CENTS ($_____) or so much thereof as may be advanced pursuant thereto, and interest, (the "Mortgage(s)") covering the premises described in **Schedule A** annexed hereto and incorporated herein ("Premises");

*[Where applicant and owner are different add the appropriate choice:*

*WHEREAS, Owner is the owner of the legal interest and Applicant is owner of the beneficial interest, pursuant to the [Declaration of Interest and Nominee Agreement], dated as of_____, between Owner and Applicant, in the Premises, [add recording information if appropriate];*
*OR*

*WHEREAS, Owner, as lessor, and Applicant, as lessee, have entered into that certain [Ground Lease] of the Premises for a term of _____years, dated as of_____, and recorded in the office of the City Register for the County of _____ on _____ as CFRN_____, as the same may have been or may be further amended or modified as hereinafter provided ("Ground Lease"); and]*

**WHEREAS**, HPD, [*Owner*] and Applicant have entered into a certain Affordable Housing Plan Regulatory Agreement ("HPD Regulatory Agreement") dated _____, 20___, which Regulatory Agreement is intended to be recorded against the Premises immediately following execution and delivery thereof;

**WHEREAS,** Applicant [*and/or Owner*] have mortgaged their respective interests in the Premises to the Mortgagees under the Mortgage;

**WHEREAS**, Applicant plans to construct new mixed use improvements upon the Premises (the "Project")

**WHEREAS**, the HPD Regulatory Agreement was entered into under the Inclusionary Housing Program, which is governed by Sections 23-90 (Inclusionary Housing), inclusive of the New York City Zoning Resolution (the

525 West 52nd Street
Taconic

35

IH Agreement - R10 and Designated Areas

"Resolution") and the Inclusionary Housing Program Guidelines (the "Guidelines") (the Guidelines and the Resolution are collectively referred to as the "Program");

**WHEREAS**, the HPD Regulatory Agreement provides that [*Applicant shall not] or [neither Applicant nor Owner shall]* mortgage or otherwise encumber [*its interest in*] the Premises or the HPD Regulatory Agreement without the prior written consent of HPD and that, if HPD consents to a mortgage loan, the lender must subordinate the loan to all of the terms and conditions of the HPD Regulatory Agreement;

**WHEREAS**, Applicant [and Owner] ha[s] [ve] entered into the Mortgage with HFA and other instruments, including but not limited to that certain Regulatory Agreement, dated of even date herewith (the "HFA Regulatory Agreement"), evidencing or securing obligations on the Premises with the Mortgagees, (collectively, the "Other Loan Documents" the Mortgage and the Other Loan Documents are referred to collectively as the "Loan Documents"); and

**WHEREAS**, HPD has consented to the Loan Documents on the condition that the Mortgagees subordinate the Loan Documents to all the terms and conditions of the HPD Regulatory Agreement in the manner hereinafter described.

**NOW THEREFORE**, for good and valuable consideration, the receipt whereof is hereby acknowledged, the Mortgagees hereby represent to and agree with HPD, notwithstanding any contrary term, provision, agreement, covenant, warranty, and/or representation contained or implied in any Loan Documents or other document executed in connection with the Premises, that:

1.      The Loan Documents are and shall continue to be subject and subordinate to the terms, covenants, agreements, and conditions of the HPD Regulatory Agreement.

2.      As used in this Agreement (a) the term "Mortgage" shall refer to any amendments, replacements, substitutions, extensions, modifications, or renewals thereof, and (b) the term "Mortgagee" shall include any of the Mortgagees' successors and assigns.

3.      As used in this Agreement, the phrase "subject and subordinate" means that:

(a)      to the extent there are any inconsistencies between the provisions of the HPD Regulatory Agreement and any provisions of the Loan Documents, the provisions of the HPD Regulatory Agreement shall take priority over the inconsistent provisions of the Loan Documents, except as provided herein, provided however, that during such time as the Affordable Units (as defined in the HPD Regulatory Agreement) are also subject to the HFA Regulatory Agreement then, (a) in the event of any conflict or ambiguity between the provisions of the HPD Regulatory Agreement and the HFA Regulatory Agreement, the more restrictive of the applicable provisions of the HPD Regulatory Agreement and the HFA Regulatory Agreement shall govern, and (b) nothing hereunder, shall limit, reduce or affect in any way any restrictions imposed on the operation or occupancy of the Affordable Units, including, but not limited to, Sections 7, 8 and 11 of the HPD Regulatory Agreement; and

(b)      if any of the Mortgagees or if any person or entity becomes the owner of the Premises (including, if the Premises is defined as a leasehold interest as well as a fee interest, the owner of such leasehold interest) by foreclosure, conveyance in lieu of foreclosure, or otherwise ("New Owner"), (i) the HPD Regulatory Agreement shall continue in full force and effect and any such Mortgage and New Owner shall have no right to disturb the rights of HPD under the HPD Regulatory

525 West 52nd Street
Taconic

IH Agreement - R10 and Designated Areas

Agreement, (ii) HPD shall not be named as a defendant in any action or proceeding to foreclose the Mortgage or otherwise enforce any such Mortgagees' or New Owner's rights thereunder, except as set forth below, and (iii) the Premises shall be subject to the HPD Regulatory Agreement in accordance with the provisions thereof; provided, however, that any such Mortgagee and New Owner shall not be liable for any act or omission of Applicant or bound by any subsequent amendment of or modification to the HPD Regulatory Agreement without its written consent. Subject to the foregoing, nothing contained herein shall prevent any of the Mortgagees or New Owner from naming HPD in any foreclosure or other action or proceeding initiated by any of the Mortgagees or New Owner pursuant to the Mortgage to the extent necessary under applicable law in order for any of the Mortgagees or New Owner to avail itself of and complete the foreclosure or other remedy.

4.    Upon a declaration of default under the HPD Regulatory Agreement, HPD shall give each of the Mortgagees notice thereof by facsimile, hand delivery or reputable overnight courier and a period of sixty (60) days or other such reasonable opportunity to cure (if such default can be cured), provided, however, that Mortgagees shall have no obligation to cure any such default.  If any Mortgagee cures the default during such cure period (if any) or has commenced to cure the specified default within such period and is diligently pursuing completion of such cure, or has commenced the exercise of remedies under the Loan Documents within such period, HPD shall not exercise any of the remedies under Section 18(b) of the HPD Regulatory Agreement by reason of such default. Nothing herein shall limit HPD's right to consent to a replacement manager pursuant to Paragraph 6 herein.

5.        (a)    If HPD elects to freeze the Operating Account(s) pursuant to Paragraph 18(b) of the HPD Regulatory Agreement, then HPD will provide Mortgagees 10 business days notice of its intention to freeze the Operating Account(s) and Mortgagees (i) may notify HPD within 10 business days from the date of the receipt of such notice that Mortgagees have elected to freeze the Operating Account(s) in lieu of HPD exercising its rights under this Section 5 and under Section 18(b) of the HPD Regulatory Agreement and (ii) shall freeze such Operating Account(s) within 10 business days after giving notice thereof to HPD. Such Operating Account(s) shall remain frozen until HPD notifies the Mortgagees that the default is cured. During such time as the Operating Account(s) are frozen pursuant to this section 5(a), Mortgagees shall determine the sufficiency of funds in the Operating Accounts for purposes of approving any withdrawal therefrom as herein provided and may approve any withdrawal from the Operating Account(s) for reasonable and customary operating and maintenance expenses and shall not approve distributions to be made to the Applicant from the Operating Account(s).  Mortgagees hereby acknowledge that they have no interest in or rights to any funds held in the Special Reserve Fund Account(s) pursuant to the HPD Regulatory Agreement.

        (b)    In the event that the Mortgagees do not elect to freeze the Operating Accounts as set forth in this Section 5(a), then HPD may freeze the Operating Account(s) pursuant to Paragraph 18(b) of the HPD Regulatory Agreement and, provided that there are sufficient funds in the Operating Account(s), allow for withdrawal therefrom, (i) payments due under the Loan Documents, and (ii) payment of reasonable and customary operating and maintenance expenses for the Premises.

6.    Notwithstanding anything contained in the HPD Regulatory Agreement or the Loan Documents, neither HPD nor any of the Mortgagees may assume responsibility for management of the Premises or designate a third party to manage the Affordable Units without the consent of the other. If, in the exercise of its remedies under

525 West 52nd Street
Taconic

IH Agreement - R10 and Designated Areas

the HPD Regulatory Agreement, HPD notifies Mortgagees of its intention to install a replacement manager of the Affordable Units, then Mortgagees' consent to such manager shall not be unreasonably withheld or delayed. If, in the exercise of its remedies under the Loan Documents, any of the Mortgagees notifies HPD of its intention to install a replacement manager of the Affordable Units, then HPD's consent to such manager shall not be unreasonably withheld or delayed; provided, however, that the aforesaid provisions shall apply to management of the Premises (and not only management of the Affordable Units) if it is not feasible or practical for the Affordable Units to be managed separately from the rest of the Premises.

7.    Upon a casualty to a building on the Premises,

(i) In the event of a casualty, HPD agrees that, subject to the terms and conditions set forth in this Section 7 below and 12 of the HPD Regulatory Agreement, the proceeds of the insurance on the Project shall be utilized as may be determined by the Mortgagees in accordance with the Loan Documents.

(ii)(A) In the event of a partial casualty, to the extent that any additional floor area created pursuant to the HPD Regulatory Agreement continues to exist or is reconstructed after such casualty, the Affordable Units (as defined in the HPD Regulatory Agreement) shall be reconstructed so as to maintain in the Building (as defined in the HPD Regulatory Agreement) the same ratio of Affordable Units to the additional floor area as existed prior to such casualty, notwithstanding the availability of, or priority of payment of, insurance proceeds, and the terms of the HPD Regulatory Agreement shall remain in full force and effect.

(B) If the Applicant and Mortgagees determine that due to the nature of the casualty and the condition of the remaining structure that it is not practicable to include the Affordable Units as originally configured in the replacement building, then the Affordable Units may be reconstructed in a location other than the Premises in accordance with the requirements of the HPD Regulatory Agreement and the Program.

(iii) In the event of a total casualty, where all additional floor area created pursuant to the HPD Regulatory Agreement ceases to exist and the Applicant elects not to utilize the additional floor area in the restored building, if any, then all insurance proceeds shall be applied in accordance with the Loan Documents.

(iv) If the building containing the Affordable Units is reconstructed as provided in this Section 7 and Section 12(ii) of the HPD Regulatory Agreement, then: (A) at such time as the restored portion of the Building or any new building is ready for occupancy, the Affordable Units on each restored floor shall be made available for occupancy and re-rented concurrently with the market rate units in the Building; (B) the Affordable Units shall be restored, repaired, replaced, rebuilt, altered or otherwise improved in accordance with the HPD Regulatory Agreement and the Program in effect as of the date hereof; (C) any such construction shall be free of all violations under the New York City Building Code, the New York State Multiple Dwelling Law and the New York City Housing Maintenance Code and (D) the HPD Regulatory Agreement shall, upon request of the Department, be amended to reflect any changes to the number, configuration or location of the Affordable Units in any replacement building or off site location made in accordance with this Section or Section 12 of the HPD Regulatory Agreement.

8.    No failure to exercise and no delay in exercising, on the part of HPD, of any right, power or privilege under this Agreement shall operate as a waiver thereof; nor shall any single or partial exercise of any right, power or privilege operate as a waiver of any other right, power or privilege under this Agreement.

9.    The covenants, provisions and terms of this Agreement and the rights and obligations of the parties hereunder shall be governed by and construed and interpreted in accordance with the laws of the State of New York, and shall be binding upon and inure to the benefit of Mortgagees, HPD, and their respective successors, transferees, and assigns.

525 West 52nd Street                           38
Taconic

IH Agreement - R10 and Designated Areas

10.      Neither this Agreement nor any provision hereof (including this paragraph) may be changed, modified, amended, waived, supplemented, discharged, abandoned, or terminated orally except by an instrument in writing signed by the party against whom enforcement of the change, modification, amendment, waiver, discharge, abandonment, or termination is sought.

11.      All notices, approvals, requests, waivers, consents or other communications given or required to be given under this Agreement shall be in writing and sent or transmitted as follows:

If to HPD, in duplicate, to:  Department of Housing Preservation and Development
100 Gold Street
New York, NY  10038
Attn:  Assistant Commissioner, Housing Incentives
Facsimile (212) 863-5899

and:          Department of Housing Preservation and Development
100 Gold Street
New York, NY  10038
Attn:  General Counsel
Facsimile (212) 863-8375

[If to HFA, in duplicate, to:New York State Housing Finance Agency
641 Lexington Avenue
New York, NY  10022
Attn:  Senior Vice President for Housing
Facsimile 917-274-0385

and:          New York State Housing Finance Agency
641 Lexington Avenue
New York, NY  10022
Attn:  Senior Vice President/Counsel
Facsimile 917-274-0385

[If to HDC, in duplicate, to:      The New York City Housing Development Corporation
110 William Street
New York, NY 10038
Attn:  Senior Vice President for Housing
Facsimile (212) 863-_____

and:          The New York City Housing Development Corporation
110 William Street
New York, NY 10038
Attn:  General Counsel
Facsimile (212) 863-_____]

If to Bank, in duplicate, to:      _____
_____
_____
Attn: _____
Facsimile (___) ___-_____

with a copy to:      _____
_____
_____
Attn: _____
Facsimile (___) ___-_____

525 West 52nd Street
Taconic

IH Agreement - R10 and Designated Areas

If to Trustee, in duplicate to: _____
                                _____
                                _____
                                Attn: _____
                                Facsimile (___) ___-_____

with a copy to:                 _____
                                _____
                                _____
                                Attn: _____
                                Facsimile (___) ___-_____

Notices must be hand delivered, transmitted via facsimile, or by overnight delivery (e.g., FEDEX) or sent by certified or registered U.S. mail, return receipt requested. Notice shall be deemed to have been given upon (i) delivery if sent by hand delivery, U.S. mail or overnight delivery, and (ii) confirmed receipt, if sent by facsimile, to both the addressee and the person entitled to receive a copy thereof. Each party named above may designate a change of address by written notice to all of the other parties.

12.    This Agreement shall be recorded against the Premises immediately after the execution hereof, in the Office of the City Register for the County in which the Premises are located and the Applicant [and/or Owner] shall pay all required fees and taxes in connection therewith.

13.    This Agreement may be executed in any number of counterparts, each of which shall, when executed, be deemed to be an original and all of which shall be deemed to be one and the same instrument.

14.    During the period that the Affordable Units are also subject to the HFA Regulatory Agreement, then, (a) in the event of any conflict or ambiguity between the provisions of the HPD Regulatory Agreement and the HFA Regulatory Agreement, the more restrictive of the applicable provisions of the HPD Regulatory Agreement and the HFA Regulatory Agreement shall govern, and (b) nothing therein, including, but not limited to, Sections 7, 8 and 11 of the HPD Regulatory Agreement, shall limit, reduce or affect in any way the duration of any restrictions imposed on the operation or occupancy of the Affordable Units by the HPD Regulatory Agreement.

**[No further text - signatures on the next page]**

525 West 52nd Street                    40
Taconic

IH Agreement - R10 and Designated Areas

**IN WITNESS WHEREOF**, the undersigned have duly executed this Subordination and Non-Disturbance Agreement as of the day and year first above written.

**[NEW YORK STATE HOUSING FINANCE AGENCY**

By: _____

            Marian Zucker
            Executive Vice President]

**OR**

**[NEW YORK CITY HOUSING
DEVELOPMENT CORPORATION**

By: _____

            Joan Tally
            Senior Vice President]

**[BANK]**

By:_____

            Name:
            Title:

**[TRUSTEE]**

By:_____

            Name:
            Title:

## THE CITY OF NEW YORK

By:    **DEPARTMENT OF HOUSING
PRESERVATION AND DEVELOPMENT**

By: _____

            Miriam Colón
            Assistant Commissioner,
            Housing Incentives

APPROVED AS APPROVED AS TO FORM BY
STANDARD TYPE OF CLASS
UNTIL __October 31, 2015_____

By: _Steve Stein Cushman_____

**ACKNOWLEDGEMENTS**

STATE OF NEW YORK   )

525 West 52nd Street
Taconic

IH Agreement - R10 and Designated Areas

                ) ss.:
COUNTY OF NEW YORK )

On the ___ day of _____ in the year 20___ before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

                                      _____
                                      Notary Public

STATE OF NEW YORK   )
                     ) ss.:
COUNTY OF NEW YORK )

On the ___ day of _____ in the year 20___ before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

                                        _____
                                      Notary Public

STATE OF NEW YORK   )
                     ) ss.:
COUNTY OF NEW YORK )

On the ___ day of _____ in the year 20___ before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

                                        _____
                                      Notary Public

525 West 52nd Street
Taconic

IH Agreement - R10 and Designated Areas

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK )

On the ___ day of _____ in the year 20___ before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


_____
Notary Public

525 West 52nd Street
Taconic

43

IH Agreement - R10 and Designated Areas

### SCHEDULE A

**Property Description**

All those certain plots, pieces and parcels of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of the _____, in the City and State of New York, designated as:

<u>Block</u>          <u>Lots</u>                                             <u>Address</u>

Borough:
Address:

525 West 52nd Street                    44
Taconic

IH Agreement - R10 and Designated Areas

---

## SUBORDINATION AND NON-DISTURBANCE AGREEMENT

---

by and among

### THE CITY OF NEW YORK

-and-

**[NEW YORK STATE HOUSING FINANCE AGENCY] OR**
**[NEW YORK CITY HOUSING DEVELOPMENT CORPORATION**

and

**[BANK]**

and

**[TRUSTEE]**

---

The property affected by this written instrument lies within the:

Block          Lots                    Address

County: Borough:

<u>RECORD AND RETURN TO:</u>

[Lender's Counsel]

525 West 52nd Street
Taconic

45

IH Agreement - R10 and Designated Areas

REGULATORY AGREEMENT

BETWEEN

THE CITY OF NEW YORK

AND

525 WEST 52 PROPERTY OWNER LLC

AND

525 WEST 52 LI PROPERTY OWNER LLC

| Block(s) | Lot(s) |
|----------|--------|
| 1081 | 1 * |
| | 16 ** |

* formerly known as part of lot 1
* formerly known as Lots 1001-1008

County:    New York

RECORD AND RETURN TO:
Department of Housing Preservation
   and Development
Office of Legal Affairs
100 Gold Street, Room 5S4
New York, NY  10038

525 West 52nd Street
Taconic

## FIRST AMENDMENT TO REGULATORY AGREEMENT

**THIS FIRST AMENDMENT TO REGULATORY AGREEMENT** (this "Amendment") is made as of June ___14___, 2018 by and between **525 West 52 Property Owner LLC**, ("Owner LLC"), **525 West 52 LI Property Owner LLC**, ("AHO LLC"; Owner LLC and AHO LLC collectively referred to as "Applicant") each a New York limited liability company formed pursuant to the laws of the State of New York, and each having an office at c/o Taconic Investment Partners, 111 Eighth Avenue, Suite 1500, New York, New York 10011, and **THE CITY OF NEW YORK** (the "City"), a municipal corporation acting by and through its **DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT** (the "Department"), having an office at 100 Gold Street, New York New York 10038.

**WHEREAS**, Owner is the owner of certain real property described in <u>Schedule A</u> attached hereto and made a part hereto (the "Premises");

**WHEREAS**, the parties hereto entered into that certain Regulatory Agreement dated May 4, 2015 and recorded against the Premises on May 13, 2015 under City Register File Number 201505000160273 in the Office of the City Register for New York County (the "Regulatory Agreement"); and

**WHEREAS**, pursuant to the Regulatory Agreement, Applicant has agreed to rehabilitate occupied units on the Premises, which rehabilitation will constitute Preservation Affordable Housing within the meaning of <u>Section 23-911</u> of the New York City Zoning Resolution and the Inclusionary Housing Program Guidelines; and

**WHEREAS**, the parties hereto wish to amend the Regulatory Agreement to reflect the change in Exhibit D as provided herein.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises contained herein, the parties hereto agree as follows:

1.    Exhibit D of the Regulatory Agreement is hereby deleted in its entirety and is replaced by amended Exhibit D, attached hereto and made a part hereof.

2.    Except as otherwise expressly set forth herein, all the other provisions of the Regulatory Agreement remain unmodified and in full force and effect and all capitalized terms used herein but not defined herein shall have the meanings ascribed to them in the Regulatory Agreement.

3.    Applicant shall cause this Amendment to be recorded against the Premises upon execution hereof, in the Office of the City Register for the County in which the Premises are located and shall pay all required fees and taxes in connection therewith.

4.    This Amendment shall be govered by and interpreted in accordance with the laws of the State of New York

5.    This Amendment may be executed in counterparts, each of which shall be deemed an original but all of which together shall be deemed one and the same instrument.

**[Signature Page Follows]**

**IN WITNESS WHEREOF**, the parties hereto have executed this Amendment as of the day and year first above written.

**THE CITY OF NEW YORK**

By:    DEPARTMENT OF HOUSING
       PRESERVATION AND DEVELOPMENT

By:_____

       Louise Carroll, Associate Commissioner for
       Housing Incentives

STATE OF NEW YORK   )
                    ) SS:
COUNTY OF NEW YORK)

On this 14th day of June, 2018, before me, the undersigned, a Notary Public in and for said State, personally appeared LOUISE CARROLL, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to in the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
          NOTARY PUBLIC

WON J PARK
Notary Public, State of New York
No. 02PA6354576
Qualified in Kings County
Commission Expires February 13, 2021

Signature Page – First Amendment to Regulatory Agreement -166 East 2nd Street

**525 WEST 52 PROPERTY OWNER LLC**,

By:   525 West 52nd Street Development LP,
its sole member

By:   Taconic 525 West 52 Street GP LLC,
its general partner

By: _____
Name:   **Charles R. Bendit**
Title:   **Authorized Signatory**


STATE OF NEW YORK  )
                  ) SS:
COUNTY OF NEW YORK)

On this 14th day of June, 2018, before me, the undersigned, a Notary Public in and for said State, personally appeared _Charles Bendit_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to in the within instrument and acknowledged to me that [s]he executed the same in [her]his capacity, and that by [her]his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

SARAH K. COX
Notary Public, State of New York
Reg. No. 01CO6345971
Qualified in Queens County
Commission Expires August 1, 2020

Signature Page – First Amendment to Regulatory Agreement -166 East 2nd Street

**525 West 52 Property LI OWNER LLC,**

By:    525 West 52nd Street Development LP,
       its sole member

By:    Taconic 525 West 52 Street GP LLC,
       its general partner

By:    _____

       Name:    Charles R. Bendit
       Title:    Authorized Signatory


STATE OF NEW YORK   )
                    ) SS:
COUNTY OF NEW YORK)

On this 14th day of June, 2018, before me, the undersigned, a Notary Public in and for said State, personally appeared _Charles Bendit_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to in the within instrument and acknowledged to me that [s]he executed the same in [her]his capacity, and that by [her]his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC
SARAH K. COX
Notary Public, State of New York
Reg. No. 01CO6345971
Qualified in Queens County
Commission Expires August 1, 20 20

Signature Page – First Amendment to Regulatory Agreement -166 East 2nd Street

## **SCHEDULE A**

All those certain plots, pieces and parcels of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, in the City and State of New York, designated as:

| Block(s) | Lot(s) | Address(es) |
|----------|--------|-------------|
| 1081 | 1301 | 525 West 52nd Street |


County:    New York

**EXHIBIT D**
**LIST OF AFFORDABLE HOUSING UNITS**

**525 WEST 52ND STREET**                                                                **EXHIBIT D**

| Apartments - North Tower | | | |
|---|---|---|---|
| Construction Floor | Marketing Floor | Apt # | # Bedrooms |
| 2 | 2 | 2E-N | 0 |
| 2 | 2 | 2G-N | 1 |
| 2 | 2 | 2J-N | 0 |
| 2 | 2 | 2M-N | 2 |
| 3 | 3 | 3B-N | 1 |
| 3 | 3 | 3E-N | 0 |
| 3 | 3 | 3G-N | 1 |
| 3 | 3 | 3J-N | 0 |
| 3 | 3 | 3M-N | 2 |
| 3 | 3 | 3P-N | 1 |
| 4 | 4 | 4B-N | 1 |
| 4 | 4 | 4E-N | 0 |
| 4 | 4 | 4G-N | 1 |
| 4 | 4 | 4J-N | 0 |
| 4 | 4 | 4M-N | 2 |
| 4 | 4 | 4P-N | 1 |
| 5 | 5 | 5B-N | 1 |
| 5 | 5 | 5E-N | 0 |
| 5 | 5 | 5G-N | 1 |
| 5 | 5 | 5J-N | 0 |
| 5 | 5 | 5M-N | 2 |
| 5 | 5 | 5P-N | 1 |
| 6 | 6 | 6B-N | 1 |
| 6 | 6 | 6E-N | 0 |
| 6 | 6 | 6G-N | 1 |
| 6 | 6 | 6J-N | 0 |
| 6 | 6 | 6M-N | 2 |
| 6 | 6 | 6P-N | 1 |
| 7 | 7 | 7B-N | 1 |
| 7 | 7 | 7G-N | 1 |
| 7 | 7 | 7J-N | 0 |
| 7 | 7 | 7M-N | 2 |
| 7 | 7 | 7P-N | 1 |
| 8 | 8 | 8B-N | 1 |
| 8 | 8 | 8G-N | 1 |
| 8 | 8 | 8M-N | 2 |
| 8 | 8 | 8P-N | 1 |
| 9 | 9 | 9B-N | 1 |
| 9 | 9 | 9G-N | 1 |
| 9 | 9 | 9M-N | 2 |
| 9 | 9 | 9P-N | 1 |

| Unit Summary | |
|---|---|
| # Bedrooms | # Units |
| Studios | 19 |
| 1 Bedroom | 39 |
| 2 Bedrooms | 21 |
| Total | 79 |

**525 WEST 52ND STREET**                                                      **EXHIBIT D**

| Apartments - North Tower | | | |
|---|---|---|---|
| Construction Floor | Marketing Floor | Apt # | # Bedrooms |
| 10 | 10 | 10G-N | 1 |
| 10 | 10 | 10M-N | 2 |
| 10 | 10 | 10P-N | 1 |
| 11 | 11 | 11M-N | 2 |
| 11 | 11 | 11P-N | 1 |
| 12 | 12 | 12M-N | 2 |
| 12 | 12 | 12P-N | 1 |
| 13 | 14 | 14H-N | 2 |
| 13 | 14 | 14K-N | 1 |
| 14 | 15 | 15J-N | 1 |
| 15 | 16 | 16J-N | 1 |
| 16 | 17 | 17I-N | 1 |
| 17 | 18 | 18C-N | 0 |
| 18 | 19 | 19C-N | 0 |
| 19 | 20 | 20C-N | 0 |

| Apartments - South Tower | | | |
|---|---|---|---|
| Construction Floor | Marketing Floor | Apt # | # Bedrooms |
| 3 | 3 | 3A-S | 2 |
| 3 | 3 | 3B-S | 0 |
| 3 | 3 | 3J-S | 1 |
| 4 | 4 | 4A-S | 2 |
| 4 | 4 | 4B-S | 0 |
| 4 | 4 | 4J-S | 1 |
| 5 | 5 | 5A-S | 2 |
| 5 | 5 | 5B-S | 0 |
| 5 | 5 | 5J-S | 1 |
| 6 | 6 | 6A-S | 2 |
| 6 | 6 | 6B-S | 0 |
| 6 | 6 | 6J-S | 1 |
| 7 | 7 | 7A-S | 2 |
| 7 | 7 | 7B-S | 0 |
| 7 | 7 | 7J-S | 1 |
| 8 | 8 | 8A-S | 2 |
| 8 | 8 | 8J-S | 1 |
| 9 | 9 | 9A-S | 2 |
| 9 | 9 | 9J-S | 1 |
| 10 | 10 | 10A-S | 2 |
| 10 | 10 | 10J-S | 1 |
| 11 | 11 | 11A-S | 2 |
| 11 | 11 | 11J-S | 1 |

| Super/Resident Manager Unit(s) | | | |
|---|---|---|---|
| Construction Floor | Marketing Floor | Apt # | # Bedrooms |
| 3 | 3 | 3H-S | 2 |

**FIRST AMENDMENT TO REGULATORY AGREEMENT**

---

**BETWEEN**

**THE CITY OF NEW YORK**

**AND**

**525 WEST 52 PROPERTY OWNER LLC**

**AND**

**525 WEST 52 LI PROPERTY OWNER LLC**

---

Block(s)          Lot(s)
1081              1301


County:           New York


Address(es):      525 West 52nd Street




**RECORD AND RETURN TO:**

NYC Department of Housing Preservation
and Development
Office of Legal Affairs
100 Gold Street, Room 5U-9
New York, NY 10038