Office copy

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
BERNADETTE SKORUPSKA,

                                    Plaintiff,

            -against-                        20 Civ. 2831 (KPF)

525 WEST 52 PROPERTY OWNER LLC, CITY OF
NEW YORK, PHIPPS HOUSING DEVELOPMENT
CORPORATION, and TACONIC MANAGEMENT LLC,

                                  Defendants.
------------------------------------------------------------------- x

**DEFENDANT CITY'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

                                          Hon. SYLVIA O. HINDS-RADIX
                                          Corporation Counsel of the
                                            City of New York
                                          Attorney for Defendant City of New York
                                          100 Church Street (Admin. Law. Div.)
                                          New York, NY  10007
                                          (212) 356-2180

MICHELLE GOLDBERG-CAHN,
AVE MARIA BRENNAN,
LOUISE MOED,
    Of Counsel.

March 28, 2022

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................2

    POINT I

        PLAINTIFF FAILS TO DISPUTE THE MATERIAL FACTS SET FORTH IN THE CITY'S 56.1 STATEMENT.......................................................................................2

    POINT II

        PLAINTIFF'S NUMEROUS ARGUMENTS DO NOT DISPUTE THE MATERIAL FACTS SET FORTH IN THE CITY'S 56.1 STATEMENT............................................. 5

        A. Rent Voucher Amount............................................................................. 5

        B. Occupancy of a One-Bedroom Unit By a Mother and Minor Son is Not Prohibited by the Applicable Laws or Rules................................................ 6

        C. According to Plaintiff's Application, a Set-Aside Unit for a Household That Included Someone with a Hearing Disability Was an Appropriate Unit for Plaintiff's Household........................................ 6

        D. Plaintiff's Inability to Obtain a Two-Bedroom Unit After the Initial Lease-Up Is Not Evidence of Unlawful Discrimination.................................. 6

    POINT III

        PLAINTIFF ERRONEOUSLY ATTRIBUTES TO HPD VARIOUS ACTIONS BY PHIPPS................................................... 8

        A. HPD Does Not Review the Credit Reports Obtained by Marketing Agents............................................................. 8

        B. HPD Does Not Enter Data Into Lottery Logs....................................... 9

|  | Page |
|---|---|
| POINT IV | |
| THIS COURT SHOULD DISREGARD THE UNRELATED CASES FOR WHICH PLAINTIFF ANNEXED PORTIONS AS EXHIBITS. | 9 |
| CONCLUSION | 10 |

Case 1:20-cv-02831-KPF   Document 153   Filed 03/28/22   Page 6 of 16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
BERNADETTE SKORUPSKA,

                              Plaintiff,

          -against-                        20 Civ. 2831 (KPF)

525 WEST 52 PROPERTY OWNER LLC, CITY OF
NEW YORK, PHIPPS HOUSING DEVELOPMENT
CORPORATION, and TACONIC MANAGEMENT LLC,

                              Defendants.
------------------------------------------------------------------------ x

### DEFENDANT CITY'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

        Pursuant to Federal Rule of Civil Procedure 56, defendant THE CITY OF NEW YORK (the "City"), by its attorney, Hon. SYLVIA O. HINDS-RADIX, Corporation Counsel of the City of New York, submits this reply memorandum in further support of its motion for summary judgment on all of the claims in the complaint herein.

### PRELIMINARY STATEMENT

        This reply memorandum responds to the statements made by plaintiff in her March 7, 2022 letter to this Court [Doc. No. 139, hereinafter "March 7, 2022 letter"],[1] which was filed in opposition to the City's motion for summary judgment and that plaintiff characterizes as follows: "The summary of facts listed below is an outline to dispute the facts listed by the City."

        In brief, at issue in this case is the initial lease-up of the housing development located at 525 West 52nd Street, Manhattan (the "subject development"), which is owned by defendant 525 West 52 Property Owner LLC (the "developer/owner"). Defendant Taconic Management LLC is its managing agent. Defendant Phipps Houses Services, Inc. ("Phipps")

---

[1] "Doc. No." references refer to entries on this case's electronic docket.

was the marketing agent directly responsible for administering the lottery by which the affordable dwelling units were offered to eligible applicants including plaintiff.

A statement by the City of the indisputable material facts can be found in the City's 56.1 Statement [Doc. No. 132]. Support for those facts are set forth in the Declaration of Rona Reodica [Doc. No. 126] and the Declaration of Monica Morgan [Doc. No. 127]. The relevant law can be found in the City's Memorandum of Law [Doc. No. 128].

For the reasons set forth in the City's motion, summary judgment should be granted to the City and the complaint dismissed as against the City.

## ARGUMENT

### POINT I

**PLAINTIFF FAILS TO DISPUTE THE MATERIAL FACTS SET FORTH IN THE CITY'S 56.1 STATEMENT.**

Plaintiff's response to the City's summary judgment motion makes numerous arguments but fails to set forth evidence that disputes the material facts set forth in the City's 56.1 Statement. Plaintiff references only seven statements [2] out of the 25 statements in the City's 56.1 Statement (numbered 101 through 125), makes arguments and expresses opinions about those statements, but fails to point to any legal authority or evidence to substantiate her disagreement with those statements of indisputable fact.

Plaintiff purports to "object" to the indisputable facts in Statements 102 and 103 regarding the ownership and control of the subject development, only by expressing her opinion that HPD manages the affordable units at the subject development and has an ownership role (March 7, 2022 letter at 10). She points to no basis for those erroneous assertions.

---

[2] Plaintiff quotes Statement 109 but does not purport to dispute it (March 7, 2022 at 13).

In response to Statements 108 and 113, plaintiff argues that the list of set-aside units provided by the developer/owner's architect fails to match the set-aside units rented to the six applicants whose households included a person with a disability, and that more than the required number of set-asides should have been made available to such applicants (March 7, 2022 letter at 12). This argument does not dispute the material fact that HPD records show that the subject development contains the required number of affordable set-aside units (six) and six applicants with documentary validation of the disability of someone in their household were offered those six units, thus fulfilling the requirement of Section 504 of the Rehabilitation Act of 1973 ("Section 504"). Plaintiff points to no legal basis for deeming it unlawful for the developer/owner and/or marketing agent to have changed which units were the set-aside units. HPD relies on the certification by architects retained by developers/owners that such units have been set aside. See the previously submitted Declaration of Rona Reodica, HPD's Assistant Commissioner for the Division of Building and Land Development Services [Doc. No. 126], ¶¶ 5-14 and Exhibits 6, 7, 9, and 10.

In response to Statement 114, plaintiff argues that not every household that was offered a set-aside unit had sufficient documentation of disability (March 7, 2022 at 13). That assertion is demonstrably false. The City has annexed to its motion the records in HPD files that show sufficient documentation of disability for each of the six households that was offered and accepted a set-aside unit at the subject development (Morgan Dec. ¶ 35, 53, and 54, and Ex. 12). Plaintiff also raises a question about the disability documents included in the application files for Log # 5804 showing two different birth years for the applicant's mother. The computer-generated documents reflecting what the *applicant* entered show the birth year to be 1927. The

birth year 1926 appears on two handwritten forms used by Phipps, and the wrong year may have been written in by a Phipps employee. This disparity between 1927 and 1926 is immaterial.

Plaintiff does not dispute Statement 118 that nothing in plaintiff's application file indicated that she had requested a "reasonable accommodation" to be offered a two-bedroom unit instead of a one-bedroom unit. She argues that she should not have had to request a reasonable accommodation during the lease-up process. But she also points to another applicant whose file *did* contain such a request (March 7, 2022 at 13-14), showing that such a procedure was available.

In response to Statement 119, plaintiff argues that it was unlawful to offer her a unit that was set aside for someone with a hearing disability (March 7, 2022 letter at 7). She points to one document in her application file that stated that her son did not need an accommodation for a hearing disability (March 7, 2022 letter at 14). However, plaintiff's application file also contained a "Disabled Verification" signed by plaintiff's son's pediatrician (Ex. 11, page 1) and a "Certification of Eligibility for Disability Set Aside Unit" signed by plaintiff herself (Ex. 11, page 3), both indicating that her son had a hearing disability.[3] Therefore, the evidence in the record supports the fact that it was lawful for the Marketing Agent to offer plaintiff a unit set aside for someone with a hearing disability.

Plaintiff fails to dispute the material facts contained in the City's 56.1 Statement, and her mere argument without evidence and/or legal authority fails to raise a question of fact. For this reason, summary judgment should be granted to the City.

---

[3] Contrary to plaintiff's assertion (March 7, 2022 letter at 7), HPD does not "argue" that hearing and vision units are interchangeable. Section 504 requires 2% of the units to be to accommodate vision *or* hearing disabilities.

City's Reply Memorandum of Law in
Further Support of Summary Judgment      - 4 -

## POINT II

### PLAINTIFF'S NUMEROUS ARGUMENTS DO NOT DISPUTE THE MATERIAL FACTS SET FORTH IN THE CITY'S 56.1 STATEMENT.

Given that plaintiff did not systematically address each fact in the City's 56.1 Statement or the declarations and exhibits submitted in support of its summary judgment motion, this memorandum will address some of the additional arguments contained in plaintiff's March 7, 2022 letter.

**A.    Rent Voucher Amount**

Alice Wong, a Phipps employee in 2017, stated in a declaration submitted herein by Phipps that she interpreted plaintiff's two voucher letters to indicate that plaintiff did not have a sufficient rent voucher for a two-bedroom unit [Doc. No. 119 ¶¶ 9-12]. HPD leaves those determinations to the marketing agents (Morgan Dec. ¶ 38) and had no reason to question the fact that plaintiff had accepted Phipps' offer of a one-bedroom unit (Morgan Dec. ¶ 50).

The Marketing Handbook's statement on which plaintiff relies about not disqualifying voucher holders on the basis of income (March 7, 2022 letter at 3) does not contradict the requirement that the applicant's rent voucher be sufficient to cover the rent. Morgan Dec. ¶ 39 ("the term "qualifying" in the cited provision signifies that the rent voucher must qualify, that is, be sufficient to cover the portion of the rent that the particular voucher is structured to cover").

The fact that plaintiff (Log # 5589) was being offered a one-bedroom unit, and a household comprised of a middle-aged mother and her elderly mother (Log #5804) was being offered a two-bedroom unit was not, on its face, a violation of the lottery order, any leasing rule prescribed by the Marketing Handbook, or any applicable local or federal law.

### B. Occupancy of a One-Bedroom Unit By a Mother and Minor Son is Not Prohibited by the Applicable Laws or Rules.

Plaintiff argues without support that it was inappropriate for her and her son to be given a one-bedroom unit and that HPD should have objected to that proposed occupancy (March 7, 2022 letter at 5 and 7). However, she does not dispute the City's 56.1 Statement 120, which pointed to the occupancy standards section of the Marketing Handbook that cautions against making "social judgments on a family's sleeping arrangement" (Morgan Dec. ¶ 43 and Exhibit 4 at 53, § 5-7). In fact, plaintiff points to no legal authority prohibiting the occupancy of her and her son in a one-bedroom unit.

### C. According to Plaintiff's Application, a Set-Aside Unit for a Household That Included Someone with a Hearing Disability Was an Appropriate Unit for Plaintiff's Household.

As is set forth hereinabove at 4, plaintiff's application file contained two documents certifying that her son had a hearing disability. It was thus appropriate for her to be offered a set-aside unit for a hearing disabled occupant.

Contrary to plaintiff's belief, neither Section 504 nor its rules give preference to applicants with more than one disability, nor do they authorize the ranking of applicants' disabilities by severity (Morgan Dec. ¶ 36). Contrary to plaintiff's unsupported assertion (March 7, 2022 letter at 9), there is no indication that her application was given *less* favorable treatment than any other application for any reason, including that her son had multiple disabilities.

### D. Plaintiff's Inability to Obtain a Two-Bedroom Unit After the Initial Lease-Up Is Not Evidence of Unlawful Discrimination.

Plaintiff objects to the fact that HPD received referrals from social service agencies of fifteen homeless households, who were then referred to Phipps so as to obtain units in the subject development (March 7, 2022 letter at 9 and Morgan Dec. ¶¶ 16 and 24). On the

basis of those referrals taking place outside the lottery process, she argues that HPD could have provided *her* with a two-bedroom unit in the subject development when she first complained to HPD in May 2018 (after the building was completely leased-up), that she was in a one-bedroom unit (Morgan Dec. ¶ 46 and Ex. 13).[4]

Affordable units serve a range of needs: households in which there is a disabled person, households that include a veteran, homeless households, households that already live in the same Community District, households in which a member is a municipal employee, and households not in one of those categories. Plaintiff argues that it constituted discrimination against disabled applicants for homeless households to be given two-bedroom units when there were none remaining among the six set-aside units for households that included a disabled person (March 7, 2022 at 9). But Section 504 does not mandate that a disabled applicant have priority over homeless households to the units that have been allocated to homeless households. There is an allocation for each category of applicant, and the allocation of some units for homeless households did not diminish the legally required number of set-aside units for people with disabilities. Moreover, plaintiff does not have standing to challenge the other allocations of affordable units in the subject development, including those units rented to homeless households. There is no legal principle that provides for plaintiff to claim one of those two-bedroom units for her household over a homeless household that qualified for a two-bedroom unit and for which an allocation of units had been set.

---

[4] In her March 7, 2022 letter at 11, plaintiff cites to City Charter § 1802, which sets forth the powers of the HPD Commissioner. The reference at the end of that section to "the relocation of tenants of real property" pertain to the relocation of people who are being vacated from a premises pursuant to a vacate order issued by a City agency because of an unsafe condition that warrants immediate vacatur. Pursuant to that authority, occupants are relocated to temporary single-room-occupancy hotels until they find permanent housing.

City's Reply Memorandum of Law in
Further Support of Summary Judgment      - 7 -

Plaintiff argues that nothing prevented the marketing agent from giving her (or any disabled applicant) a unit beyond the required number of set-aside units (March 7, 2022 letter at 12). Contrary to plaintiff's argument, Section 504 does not mandate that disabled applicants should have priority over other applicants for units that have been allocated to other categories of applicants. There is no question that the need for affordable units is much greater than the number of available units, as evidenced by the fact that the lottery for the subject development received 75,321 applications for a total of 79 affordable units.

## POINT III

### PLAINTIFF ERRONEOUSLY ATTRIBUTES TO HPD VARIOUS ACTIONS BY PHIPPS.

**A.     HPD Does Not Review the Credit Reports Obtained by Marketing Agents.**

Plaintiff erroneously argues that the credit check Phipps performed for her application "was included in the file sent to HPD" as if that would constitute "proof" that the file HPD reviewed contained evidence that plaintiff was supposedly going to be offered a two-bedroom unit (March 7, 2022 letter at 3-4). Exhibit 8 to the City's summary judgment motion contains the complete application file sent by Phipps to HPD for plaintiff. It does not contain any credit check. HPD does not review the credit-worthiness of applicants who have satisfied the marketing agent's review on that issue. The subject development is a privately-owned building, and only the developer/owner of that building or its marketing agent, not HPD, make decisions about the credit-worthiness of people who apply to become renters in that building.

The Marketing Handbook's rules are not violated by the marketing agent running a credit check based on the rent for the largest apartment that the applicant could have been offered. The material plaintiff quotes from the Marketing Handbook (City's Ex. 4 at 27 [F(3)(d)]) doesn't restrict credit checks to the rent amount of the particular size unit that *will* be

offered to the applicant. Rather, it allows the running of credit checks *only* for applicants for whom "*a* unit will be available if the applicant is approved" (emphasis added).

**B.    HPD Does Not Enter Data Into Lottery Logs.**

Plaintiff is incorrect in stating that HPD wrote "Credit OK...." in the lottery log (March 7, 2022 letter at 4). After the lottery log is computer-generated from the applications received by HPD for a particular development, the lottery log is filled in exclusively by the marketing agent and/or developer/owner. HPD does not insert any data into the lottery log (Morgan Dec. ¶¶ 10, 16, and 57).

## POINT IV

**THIS COURT SHOULD DISREGARD THE UNRELATED CASES FOR WHICH PLAINTIFF ANNEXED PORTIONS AS EXHIBITS.**

In her March 7, 2022 letter at 10, plaintiff points to her Exhibits 56 and 57 to supposedly demonstrate the City's "blind eye" toward the "indiscretions of developers [and] marketing agents." However, those exhibits demonstrate nothing remotely relevant to the instant matter. Based on the excerpts from the complaints that plaintiff has annexed, neither case concerns the lease-up of affordable apartments that have been constructed with assistance from HPD and leased-up by developers/owners and/or marketing agents. Therefore, these cases bear no relevance whatsoever to the instant case.

## CONCLUSION

For all of the reasons set forth herein and in the papers previously submitted by the City, summary judgment should be granted to the City in all respects and the complaint dismissed as against the City.

Dated:     New York, New York
           March 28, 2022

                                    Hon. SYLVIA O. HINDS-RADIX
                                    Corporation Counsel of the
                                      City of New York
                                    Attorney for Defendant City of New York

                            By:     _____/s/ Louise Moed_____
                                    LOUISE MOED, Assistant Corporation Counsel
                                    Admin Law & Reg. Litig.
                                    100 Church Street
                                    New York, NY 10007
                                    (212) 356-2180
                                    LMOED@LAW.NYC.GOV

MICHELLE GOLDBERG-CAHN,
AVE MARIA BRENNAN,
LOUISE MOED,
    Of Counsel.